1  Lionel Z. Glancy (#134180)
2  Robert V. Prongay (#270796)
   Lesley F. Portnoy (#304851)
3  Charles H. Linehan (#307439)
   Pavithra Rajesh (#323055)
4  **GLANCY PRONGAY & MURRAY LLP**
5  1925 Century Park East, Suite 2100
   Los Angeles, California 90067
6  Telephone: (310) 201-9150
7  Facsimile: (310) 201-9160
   Email: info@glancylaw.com
8
9  *Attorneys for Plaintiff Michael Chupa*

10
11            **UNITED STATES DISTRICT COURT**
12   **CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION**

13

14  MICHAEL CHUPA, Individually and       Case No. 19-cv-09840
15  On Behalf of All Others Similarly
    Situated,                            **CLASS ACTION COMPLAINT**
16                                        **FOR VIOLATIONS OF THE**
17              Plaintiff,                **FEDERAL SECURITIES LAWS**

18          v.

19  ARMSTRONG FLOORING, INC.,
20  MICHEL VERMETTE, DONALD
    MAIER, LARRY McWILLIAMS,
    DOUGLAS BINGHAM, and RONALD
21  FORD,
22
            Defendants.
23

24
25
26
27
28

                     CLASS ACTION COMPLAINT

Plaintiff Michael Chupa ("Plaintiff"), individually and on behalf of all others similarly situated, by and through her attorneys, alleges the following upon information and belief, except as to those allegations concerning Plaintiff, which are alleged upon personal knowledge. Plaintiff's information and belief is based upon, among other things, her counsel's investigation, which includes without limitation: (a) review and analysis of regulatory filings made by Armstrong Flooring, Inc. ("Armstrong Flooring" or the "Company") with the United States ("U.S.") Securities and Exchange Commission ("SEC"); (b) review and analysis of press releases and media reports issued by and disseminated by Armstrong Flooring; and (c) review of other publicly available information concerning Armstrong Flooring.

## NATURE OF THE ACTION AND OVERVIEW

1.     This is a class action on behalf of persons and entities that purchased or otherwise acquired Armstrong Flooring securities between March 6, 2018 and November 4, 2019, inclusive (the "Class Period"). Plaintiff pursues claims against the Defendants under the Securities Exchange Act of 1934 (the "Exchange Act").

2.     Armstrong Flooring manufactures and sells resilient and wood flooring products primarily used in the construction and renovation of commercial, residential, and institutional buildings.

3.     On May 3, 2019, Armstrong Flooring's Chief Executive Officer abruptly resigned.

4.     On this news, the Company's stock price fell $1.75, nearly 12%, to close at $13.14 per share on May 3, 2019, on unusually heavy trading volume.

5.     On November 5, 2019, before the market opened, the Company reported $165.6 million net sales for third quarter 2019, a nearly 21% decline year-over-year, and a net loss of $31.4 million. The Company also cut its full year 2019 guidance for adjusted EBITDA to a range of $20 million to $25 million, from prior guidance range of $46 million to $54 million.

CLASS ACTION COMPLAINT
1

6.     On this news, the Company's stock price fell $2.90 per share, or nearly 44%, to close at $3.70 per share on November 5, 2019, on unusually heavy trading volume.

7.     Throughout the Class Period, Defendants made materially false and/or misleading statements, as well as failed to disclose material adverse facts about the Company's business, operations, and prospects. Specifically, Defendants failed to disclose to investors: (1) that the Company had engaged in channel stuffing to artificially boost sales; (2) that the Company's internal control over inventory levels was not effective; and (3) that, as a result of the foregoing, Defendants' positive statements about the Company's business, operations, and prospects, were materially misleading and/or lacked a reasonable basis.

8.     As a result of Defendants' wrongful acts and omissions, and the precipitous decline in the market value of the Company's securities, Plaintiff and other Class members have suffered significant losses and damages.

## JURISDICTION AND VENUE

9.     The claims asserted herein arise under Sections 10(b) and 20(a) of the Exchange Act (15 U.S.C. §§ 78j(b) and 78t(a)) and Rule 10b-5 promulgated thereunder by the SEC (17 C.F.R. § 240.10b-5).

10.     This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1331 and Section 27 of the Exchange Act (15 U.S.C. § 78aa).

11.     Venue is proper in this Judicial District pursuant to 28 U.S.C. § 1391(b) and Section 27 of the Exchange Act (15 U.S.C. § 78aa(c)). Substantial acts in furtherance of the alleged fraud or the effects of the fraud have occurred in this Judicial District.  Many of the acts charged herein, including the dissemination of materially false and/or misleading information, occurred in substantial part in this Judicial District. The Company has offices and a manufacturing facility in this District.

12.     In connection with the acts, transactions, and conduct alleged herein, Defendants directly and indirectly used the means and instrumentalities of interstate commerce, including the United States mail, interstate telephone communications, and the facilities of a national securities exchange.

## PARTIES

13.     Plaintiff Michael Chupa, as set forth in the accompanying certification, incorporated by reference herein, purchased Armstrong Flooring securities during the Class Period, and suffered damages as a result of the federal securities law violations and false and/or misleading statements and/or material omissions alleged herein.

14.     Defendant Armstrong Flooring is incorporated under the laws of Delaware with its principal executive offices located in Lancaster, Pennsylvania. Armstrong Flooring's common stock trades on the New York Stock Exchange ("NYSE") under the symbol "AFI."

15.     Defendant Michel Vermette ("Vermette") has been the Company's Chief Executive Officer ("CEO") since September 11, 2019.

16.     Defendant Donald Maier ("Maier") was the CEO from March 2016 to May 2, 2019.

17.     Defendant Larry McWilliams ("McWilliams") was the Interim CEO from May 3, 2019 to September 11, 2019.

18.     Defendant Douglas Bingham ("Bingham") has been the Company's Chief Financial Officer ("CFO") since January 4, 2019.

19.     Defendant Ronald Ford ("Ford") was the CFO from September 2017 to January 4, 2019.

20.     Defendants Vermette, Maier, McWilliams, Bingham, and Ford (collectively the "Individual Defendants"), because of their positions with the Company, possessed the power and authority to control the contents of the Company's reports to the SEC, press releases and presentations to securities

analysts, money and portfolio managers and institutional investors, *i.e.*, the market. The Individual Defendants were provided with copies of the Company's reports and press releases alleged herein to be misleading prior to, or shortly after, their issuance and had the ability and opportunity to prevent their issuance or cause them to be corrected.  Because of their positions and access to material non-public information available to them, the Individual Defendants knew that the adverse facts specified herein had not been disclosed to, and were being concealed from, the public, and that the positive representations which were being made were then materially false and/or misleading.  The Individual Defendants are liable for the false statements pleaded herein.

## SUBSTANTIVE ALLEGATIONS

### Background

21.     Armstrong Flooring manufactures and sells resilient and wood flooring products primarily used in the construction and renovation of commercial, residential, and institutional buildings.

### Materially False and Misleading
### Statements Issued During the Class Period

22.     The Class Period begins on March 6, 2018. On that day, the Company filed its annual report on Form 10-K for the period ended December 31, 2017 (the "2017 10-K") in which it reported $1.13 billion net sales and $41.8 million net loss.

23.     Regarding industry capacity for products, the 2017 10-K stated, in relevant part:

> ***We compete with numerous flooring manufacturers in highly competitive markets. Competition can affect customer preferences, reduce demand for our products, negatively affect our product sales mix, leverage greater financial resources, or cause us to lower prices.***
>
> Our markets are highly competitive. We compete for sales of flooring products with many manufacturers of resilient and wood flooring as well as with manufacturers who also produce other types of flooring products. Some of our competitors have greater financial resources than we do. Competition can reduce demand for our products, negatively affect our product sales mix or cause us to lower prices. Our failure to compete effectively through management of our product portfolio, by

meeting consumer preferences, maintaining market share positions in our legacy product categories and gaining market leadership in growth product categories such as LVT, could have a material adverse effect on our financial condition, liquidity or results of operations. Our customers consider our products' performance, product styling, customer service and price when deciding whether to purchase our products. Shifting consumer preference in our highly competitive markets whether for performance or styling preferences or our inability to develop and offer new competitive performance features, could have an adverse effect on our sales.

In addition, excess industry capacity for certain products in several geographic markets could lead to industry consolidation and/or increased price competition. We are also subject to potential increased price competition from overseas competitors, which may have lower cost structures.

24. The 2017 10-K also stated that the Company's CEO and CFO had concluded Armstrong Flooring's disclosure controls and procedures were effective.

25. On May 8, 2018, the Company filed its quarterly report on Form 10-Q with the SEC for the period ended March 31, 2018, reporting $257.9 million net sales and $10.4 million net loss. It also stated that the Company's CEO and CFO had concluded Armstrong Flooring's disclosure controls and procedures were effective.

26. On August 7, 2018, the Company filed its quarterly report on Form 10-Q with the SEC for the period ended June 30, 2018, reporting $306 million net sales and $10.5 million net income. It also stated that the Company's CEO and CFO had concluded Armstrong Flooring's disclosure controls and procedures were effective.

27. On November 6, 2018, the Company filed its quarterly report on Form 10-Q with the SEC for the period ended September 30, 2018, reporting $309.7 million net sales and $7.9 million net income. It also stated that the Company's CEO and CFO had concluded Armstrong Flooring's disclosure controls and procedures were effective.

28. On March 5, 2019, the Company filed its annual report on Form 10-K with the SEC for the period ended December 31, 2018 (the "2018 10-K"), reporting $728.2 million net sales and $163.0 million net loss.

29.    Regarding industry capacity for products, the 2018 10-K stated, in relevant part:

> ***We compete with numerous flooring manufacturers in highly competitive markets. Competition can affect customer preferences, reduce demand for our products, negatively affect our product sales mix, leverage greater financial resources, or cause us to lower prices.***
>
> Our markets are highly competitive. We compete for sales of flooring products with many manufacturers and independent distributors of resilient flooring as well as with manufacturers who also produce other types of flooring products. Some of our competitors have greater financial resources than we do. Competition can reduce demand for our products, negatively affect our product sales mix or cause us to lower prices. Our failure to compete effectively through management of our product portfolio, by meeting consumer preferences, maintaining market share positions in our traditional categories and gaining market leadership in growth product categories such as LVT, could have a material adverse effect on our financial condition, liquidity or results of operations. Our customers consider our products' performance, product styling, customer service and price when deciding whether to purchase our products. Shifting consumer preference in our highly competitive markets whether for performance or styling preferences or our inability to develop and offer new competitive performance features, could have an adverse effect on our sales.
>
> In addition, excess industry capacity for certain products in several geographic markets could lead to industry consolidation and/or increased price competition. We are also subject to potential increased price competition from overseas competitors, which may have lower cost structures.

30.    The 2018 10-K also stated that the Company's CEO and CFO had concluded Armstrong Flooring's disclosure controls and procedures were effective.

31.    The above statements identified in ¶¶ 22-30 were materially false and/or misleading, and failed to disclose material adverse facts about the Company's business, operations, and prospects.  Specifically, Defendants failed to disclose to investors: (1) that the Company had engaged in channel stuffing to artificially boost sales; (2) that the Company's internal control over inventory levels was not effective; and (3) that, as a result of the foregoing, Defendants' positive statements about the Company's business, operations, and prospects, were materially misleading and/or lacked a reasonable basis

32.     The truth began to emerge on May 3, 2019 when Defendant Maier abruptly resigned from his positions. In a Form 8-K filed with the SEC, the Company disclosed that "pursuant to a mutual agreement between the Company and Donald R. Maier, Mr. Maier's employment with the Company ceased and he resigned as a member of the Board of Directors."

33.     On this news, the Company's stock price fell $1.75, nearly 12%, to close at $13.14 per share on May 3, 2019, on unusually heavy trading volume.

34.     On May 7, 2019, the Company filed its quarterly report on Form 10-Q for the period ended March 31, 2019, reporting $141.7 million net sales and $16.7 million net loss. It also stated that the Company's CEO and CFO had concluded Armstrong Flooring's disclosure controls and procedures were effective.

35.     On August 6, 2019, the Company filed its quarterly report on Form 10-Q with the SEC for the period ended June 30, 2019, reporting $177.7 million net sales and $14.7 million net income. It also stated that the Company's CEO and CFO had concluded Armstrong Flooring's disclosure controls and procedures were effective.

36.     The above statements identified in ¶¶ 32, 34-35 were materially false and/or misleading, and failed to disclose material adverse facts about the Company's business, operations, and prospects.  Specifically, Defendants failed to disclose to investors: (1) that the Company had engaged in channel stuffing to artificially boost sales; (2) that the Company's internal control over inventory levels was not effective; and (3) that, as a result of the foregoing, Defendants' positive statements about the Company's business, operations, and prospects, were materially misleading and/or lacked a reasonable basis.

**Disclosures at the End of the Class Period**

37.     On November 5, 2019, before the market opened, the Company reported $165.6 million net sales for third quarter 2019, a nearly 21% decline year-over-year, and a net loss of $31.4 million. The Company also cut its full year 2019

guidance for adjusted EBITDA to a range of $20 million to $25 million, from prior guidance range of $46 million to $54 million. The Company's press release stated, in relevant part:

> In the third quarter of 2019, net sales decreased 20.7% to $165.6 million from $208.9 million in the third quarter of 2018, including an adverse currency impact of 90 basis points. The decrease in net sales was primarily due to unfavorable volumes and mix. Lower volumes in the third quarter of 2019 primarily reflected an unfavorable comparison in 2018 due to significant customer purchases in the distribution channel in anticipation of U.S. tariffs along with what the Company believes to be weaker performance by several distributors in 2019. *Volume was below expectations due to further inventory reductions combined with share loss in some categories within the distribution channel, and mix was driven by lower relative LVT sales as a result of distributor stocking activity in the prior year quarter.*

(Emphasis added.)

38.    The same day, the Company held a conference call to discuss these results, and, in an exchange with an analyst, defendant Vermette attributed the lowered guidance to inventory reductions by distributors:

> **Analyst**: [O]n guidance, can you just bridge for us what specifically caused the reduction since 2Q?
>
> **Vermette:** The biggest piece has been the continued declines that we've had in sales and I'd point to the further reductions in inventory in the channel. Some of our distributors, we mentioned have shown weaker performance than what we expected. And then we've also had some share loss in some categories, which have combined to make tougher sales environment than what we anticipated.

39.    Still, analysts questioned whether the trends had been present when the Company previously provided guidance:

> **Analyst**: [T]he last time you gave guidance you were five weeks into the quarter. I realize things obviously [don't] work out as expected, but the magnitude is fairly large, so I want to go into how, what kind of assumptions do you make when you provide forward guidance given that you had been through the second quarter you were five weeks through the third quarter and you're cutting guidance by a significant amount[.]
>
> **Vermette**: . . . *I think what we've seen is that there were larger distributor movements on inventory.* So we were expecting that it was a tough comp with the activity that happened last year but we weren't necessarily expecting a kind of sequential reduction in inventory in the distribution channel and we did see that in the third quarter.

CLASS ACTION COMPLAINT

In addition, the performance of our distributors, we believe that they were that they were doing fairly well in the first part of the year and as we've had further conversations and then we'll work it. It's clear that there is some challenges with some of our distributors that have caused us to revisit our outlook.

**Analyst**: So, during the first five weeks of the third quarter there were not reducing inventory or what change just because you would think, five weeks then you have some color into those trends.

**Vermette**: Yeah. We saw more of the movements it as we got into September.

40.    On this news, the Company's stock price fell $2.90 per share, or nearly 44%, to close at $3.70 per share on November 5, 2019, on unusually heavy trading volume.

## CLASS ACTION ALLEGATIONS

41.    Plaintiff brings this action as a class action pursuant to Federal Rule of Civil Procedure 23(a) and (b)(3) on behalf of a class, consisting of all persons and entities that purchased or otherwise acquired Armstrong Flooring securities between March 6, 2018 and November 4, 2019, inclusive, and who were damaged thereby (the "Class").  Excluded from the Class are Defendants, the officers and directors of the Company, at all relevant times, members of their immediate families and their legal representatives, heirs, successors, or assigns, and any entity in which Defendants have or had a controlling interest.

42.    The members of the Class are so numerous that joinder of all members is impracticable.  Throughout the Class Period, Armstrong Flooring's common shares actively traded on the NYSE.  While the exact number of Class members is unknown to Plaintiff at this time and can only be ascertained through appropriate discovery, Plaintiff believes that there are at least hundreds or thousands of members in the proposed Class.  Millions of Armstrong Flooring common stock were traded publicly during the Class Period on the NYSE.  Record owners and other members of the Class may be identified from records maintained by Armstrong Flooring or its transfer agent and may be notified of the pendency of this

action by mail, using the form of notice similar to that customarily used in securities class actions.

43.     Plaintiff's claims are typical of the claims of the members of the Class as all members of the Class are similarly affected by Defendants' wrongful conduct in violation of federal law that is complained of herein.

44.     Plaintiff will fairly and adequately protect the interests of the members of the Class and has retained counsel competent and experienced in class and securities litigation.

45.     Common questions of law and fact exist as to all members of the Class and predominate over any questions solely affecting individual members of the Class.  Among the questions of law and fact common to the Class are:

(a)     whether the federal securities laws were violated by Defendants' acts as alleged herein;

(b)     whether statements made by Defendants to the investing public during the Class Period omitted and/or misrepresented material facts about the business, operations, and prospects of Armstrong Flooring; and

(c)     to what extent the members of the Class have sustained damages and the proper measure of damages.

46.     A class action is superior to all other available methods for the fair and efficient adjudication of this controversy since joinder of all members is impracticable.  Furthermore, as the damages suffered by individual Class members may be relatively small, the expense and burden of individual litigation makes it impossible for members of the Class to individually redress the wrongs done to them.  There will be no difficulty in the management of this action as a class action.

## UNDISCLOSED ADVERSE FACTS

47.     The market for Armstrong Flooring's securities was open, well-developed and efficient at all relevant times.  As a result of these materially false and/or misleading statements, and/or failures to disclose, Armstrong Flooring's

securities traded at artificially inflated prices during the Class Period.  Plaintiff and other members of the Class purchased or otherwise acquired Armstrong Flooring's securities relying upon the integrity of the market price of the Company's securities and market information relating to Armstrong Flooring, and have been damaged thereby.

48.    During the Class Period, Defendants materially misled the investing public, thereby inflating the price of Armstrong Flooring's securities, by publicly issuing false and/or misleading statements and/or omitting to disclose material facts necessary to make Defendants' statements, as set forth herein, not false and/or misleading.  The statements and omissions were materially false and/or misleading because they failed to disclose material adverse information and/or misrepresented the truth about Armstrong Flooring's business, operations, and prospects as alleged herein.

49.    At all relevant times, the material misrepresentations and omissions particularized in this Complaint directly or proximately caused or were a substantial contributing cause of the damages sustained by Plaintiff and other members of the Class.  As described herein, during the Class Period, Defendants made or caused to be made a series of materially false and/or misleading statements about Armstrong Flooring's financial well-being and prospects.  These material misstatements and/or omissions had the cause and effect of creating in the market an unrealistically positive assessment of the Company and its financial well-being and prospects, thus causing the Company's securities to be overvalued and artificially inflated at all relevant times.  Defendants' materially false and/or misleading statements during the Class Period resulted in Plaintiff and other members of the Class purchasing the Company's securities at artificially inflated prices, thus causing the damages complained of herein when the truth was revealed.

1

**LOSS CAUSATION**

2    50.    Defendants' wrongful conduct, as alleged herein, directly and
3  proximately caused the economic loss suffered by Plaintiff and the Class.

4    51.    During the Class Period, Plaintiff and the Class purchased Armstrong
5  Flooring's securities at artificially inflated prices and were damaged thereby.  The
6  price    of    the    Company's    securities    significantly    declined    when    the
7  misrepresentations made to the market, and/or the information alleged herein to
8  have been concealed from the market, and/or the effects thereof, were revealed,
9  causing investors' losses.

10

**SCIENTER ALLEGATIONS**

11    52.    As alleged herein, Defendants acted with scienter since Defendants
12  knew that the public documents and statements issued or disseminated in the name
13  of the Company were materially false and/or misleading; knew that such statements
14  or documents would be issued or disseminated to the investing public; and
15  knowingly and substantially participated or acquiesced in the issuance or
16  dissemination of such statements or documents as primary violations of the federal
17  securities laws.  As set forth elsewhere herein in detail, the Individual Defendants,
18  by virtue of their receipt of information reflecting the true facts regarding Armstrong
19  Flooring, their control over, and/or receipt and/or modification of Armstrong
20  Flooring's allegedly materially misleading misstatements and/or their associations
21  with the Company which made them privy to confidential proprietary information
22  concerning Armstrong Flooring, participated in the fraudulent scheme alleged
23  herein.

24

**APPLICABILITY OF PRESUMPTION OF RELIANCE**
**(FRAUD-ON-THE-MARKET DOCTRINE)**

25

26    53.    The market for Armstrong Flooring's securities was open, well-
27  developed and efficient at all relevant times.  As a result of the materially false
28  and/or misleading statements and/or failures to disclose, Armstrong Flooring's

securities traded at artificially inflated prices during the Class Period. On September 20, 2018, the Company's share price closed at a Class Period high of $20.11 per share. Plaintiff and other members of the Class purchased or otherwise acquired the Company's securities relying upon the integrity of the market price of Armstrong Flooring's securities and market information relating to Armstrong Flooring, and have been damaged thereby.

54. During the Class Period, the artificial inflation of Armstrong Flooring's shares was caused by the material misrepresentations and/or omissions particularized in this Complaint causing the damages sustained by Plaintiff and other members of the Class. As described herein, during the Class Period, Defendants made or caused to be made a series of materially false and/or misleading statements about Armstrong Flooring's business, prospects, and operations. These material misstatements and/or omissions created an unrealistically positive assessment of Armstrong Flooring and its business, operations, and prospects, thus causing the price of the Company's securities to be artificially inflated at all relevant times, and when disclosed, negatively affected the value of the Company shares. Defendants' materially false and/or misleading statements during the Class Period resulted in Plaintiff and other members of the Class purchasing the Company's securities at such artificially inflated prices, and each of them has been damaged as a result.

55. At all relevant times, the market for Armstrong Flooring's securities was an efficient market for the following reasons, among others:

(a) Armstrong Flooring shares met the requirements for listing, and was listed and actively traded on the NYSE, a highly efficient and automated market;

(b) As a regulated issuer, Armstrong Flooring filed periodic public reports with the SEC and/or the NYSE;

(c)     Armstrong Flooring regularly communicated with public investors via established market communication mechanisms, including through regular dissemination of press releases on the national circuits of major newswire services and through other wide-ranging public disclosures, such as communications with the financial press and other similar reporting services; and/or

(d)     Armstrong Flooring was followed by securities analysts employed by brokerage firms who wrote reports about the Company, and these reports were distributed to the sales force and certain customers of their respective brokerage firms.  Each of these reports was publicly available and entered the public marketplace.

56.     As a result of the foregoing, the market for Armstrong Flooring's securities promptly digested current information regarding Armstrong Flooring from all publicly available sources and reflected such information in Armstrong Flooring's share price. Under these circumstances, all purchasers of Armstrong Flooring's securities during the Class Period suffered similar injury through their purchase of Armstrong Flooring's securities at artificially inflated prices and a presumption of reliance applies.

57.     A Class-wide presumption of reliance is also appropriate in this action under the Supreme Court's holding in *Affiliated Ute Citizens of Utah v. United States*, 406 U.S. 128 (1972), because the Class's claims are, in large part, grounded on Defendants' material misstatements and/or omissions.  Because this action involves Defendants' failure to disclose material adverse information regarding the Company's business operations and financial prospects—information that Defendants were obligated to disclose—positive proof of reliance is not a prerequisite to recovery.  All that is necessary is that the facts withheld be material in the sense that a reasonable investor might have considered them important in making investment decisions.  Given the importance of the Class Period material misstatements and omissions set forth above, that requirement is satisfied here.

CLASS ACTION COMPLAINT

14

1

## NO SAFE HARBOR

2      58.   The statutory safe harbor provided for forward-looking statements
3 under certain circumstances does not apply to any of the allegedly false statements
4 pleaded in this Complaint. The statements alleged to be false and misleading herein
5 all relate to then-existing facts and conditions. In addition, to the extent certain of
6 the statements alleged to be false may be characterized as forward looking, they
7 were not identified as "forward-looking statements" when made and there were no
8 meaningful cautionary statements identifying important factors that could cause
9 actual results to differ materially from those in the purportedly forward-looking
10 statements. In the alternative, to the extent that the statutory safe harbor is
11 determined to apply to any forward-looking statements pleaded herein, Defendants
12 are liable for those false forward-looking statements because at the time each of
13 those forward-looking statements was made, the speaker had actual knowledge that
14 the forward-looking statement was materially false or misleading, and/or the
15 forward-looking statement was authorized or approved by an executive officer of
16 Armstrong Flooring who knew that the statement was false when made.

17

## FIRST CLAIM

18

**Violation of Section 10(b) of The Exchange Act and
Rule 10b-5 Promulgated Thereunder
Against All Defendants**

19

20      59.   Plaintiff repeats and re-alleges each and every allegation contained
21 above as if fully set forth herein.

22      60.   During the Class Period, Defendants carried out a plan, scheme and
23 course of conduct which was intended to and, throughout the Class Period, did: (i)
24 deceive the investing public, including Plaintiff and other Class members, as alleged
25 herein; and (ii) cause Plaintiff and other members of the Class to purchase
26 Armstrong Flooring's securities at artificially inflated prices.  In furtherance of this
27 unlawful scheme, plan and course of conduct, Defendants, and each defendant, took
28 the actions set forth herein.

61.     Defendants (i) employed devices, schemes, and artifices to defraud; (ii) made untrue statements of material fact and/or omitted to state material facts necessary to make the statements not misleading; and (iii) engaged in acts, practices, and a course of business which operated as a fraud and deceit upon the purchasers of the Company's securities in an effort to maintain artificially high market prices for Armstrong Flooring's securities in violation of Section 10(b) of the Exchange Act and Rule 10b-5. All Defendants are sued either as primary participants in the wrongful and illegal conduct charged herein or as controlling persons as alleged below.

62.     Defendants, individually and in concert, directly and indirectly, by the use, means or instrumentalities of interstate commerce and/or of the mails, engaged and participated in a continuous course of conduct to conceal adverse material information about Armstrong Flooring's financial well-being and prospects, as specified herein.

63.     Defendants employed devices, schemes and artifices to defraud, while in possession of material adverse non-public information and engaged in acts, practices, and a course of conduct as alleged herein in an effort to assure investors of Armstrong Flooring's value and performance and continued substantial growth, which included the making of, or the participation in the making of, untrue statements of material facts and/or omitting to state material facts necessary in order to make the statements made about Armstrong Flooring and its business operations and future prospects in light of the circumstances under which they were made, not misleading, as set forth more particularly herein, and engaged in transactions, practices and a course of business which operated as a fraud and deceit upon the purchasers of the Company's securities during the Class Period.

64.     Each of the Individual Defendants' primary liability and controlling person liability arises from the following facts: (i) the Individual Defendants were high-level executives and/or directors at the Company during the Class Period and

members of the Company's management team or had control thereof; (ii) each of these defendants, by virtue of their responsibilities and activities as a senior officer and/or director of the Company, was privy to and participated in the creation, development and reporting of the Company's internal budgets, plans, projections and/or reports; (iii) each of these defendants enjoyed significant personal contact and familiarity with the other defendants and was advised of, and had access to, other members of the Company's management team, internal reports and other data and information about the Company's finances, operations, and sales at all relevant times; and (iv) each of these defendants was aware of the Company's dissemination of information to the investing public which they knew and/or recklessly disregarded was materially false and misleading.

65.   Defendants had actual knowledge of the misrepresentations and/or omissions of material facts set forth herein, or acted with reckless disregard for the truth in that they failed to ascertain and to disclose such facts, even though such facts were available to them. Such defendants' material misrepresentations and/or omissions were done knowingly or recklessly and for the purpose and effect of concealing Armstrong Flooring's financial well-being and prospects from the investing public and supporting the artificially inflated price of its securities. As demonstrated by Defendants' overstatements and/or misstatements of the Company's business, operations, financial well-being, and prospects throughout the Class Period, Defendants, if they did not have actual knowledge of the misrepresentations and/or omissions alleged, were reckless in failing to obtain such knowledge by deliberately refraining from taking those steps necessary to discover whether those statements were false or misleading.

66.   As a result of the dissemination of the materially false and/or misleading information and/or failure to disclose material facts, as set forth above, the market price of Armstrong Flooring's securities was artificially inflated during the Class Period.  In ignorance of the fact that market prices of the Company's

securities were artificially inflated, and relying directly or indirectly on the false and misleading statements made by Defendants, or upon the integrity of the market in which the securities trades, and/or in the absence of material adverse information that was known to or recklessly disregarded by Defendants, but not disclosed in public statements by Defendants during the Class Period, Plaintiff and the other members of the Class acquired Armstrong Flooring's securities during the Class Period at artificially high prices and were damaged thereby.

67.     At the time of said misrepresentations and/or omissions, Plaintiff and other members of the Class were ignorant of their falsity, and believed them to be true.  Had Plaintiff and the other members of the Class and the marketplace known the truth regarding the problems that Armstrong Flooring was experiencing, which were not disclosed by Defendants, Plaintiff and other members of the Class would not have purchased or otherwise acquired their Armstrong Flooring securities, or, if they had acquired such securities during the Class Period, they would not have done so at the artificially inflated prices which they paid.

68.     By virtue of the foregoing, Defendants violated Section 10(b) of the Exchange Act and Rule 10b-5 promulgated thereunder.

69.     As a direct and proximate result of Defendants' wrongful conduct, Plaintiff and the other members of the Class suffered damages in connection with their respective purchases and sales of the Company's securities during the Class Period.

## SECOND CLAIM

### Violation of Section 20(a) of The Exchange Act
### Against the Individual Defendants

70.     Plaintiff repeats and re-alleges each and every allegation contained above as if fully set forth herein.

71.     Individual Defendants acted as controlling persons of Armstrong Flooring within the meaning of Section 20(a) of the Exchange Act as alleged herein.

By virtue of their high-level positions and their ownership and contractual rights, participation in, and/or awareness of the Company's operations and intimate knowledge of the false financial statements filed by the Company with the SEC and disseminated to the investing public, Individual Defendants had the power to influence and control and did influence and control, directly or indirectly, the decision-making of the Company, including the content and dissemination of the various statements which Plaintiff contends are false and misleading. Individual Defendants were provided with or had unlimited access to copies of the Company's reports, press releases, public filings, and other statements alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected.

72.     In particular, Individual Defendants had direct and supervisory involvement in the day-to-day operations of the Company and, therefore, had the power to control or influence the particular transactions giving rise to the securities violations as alleged herein, and exercised the same.

73.     As set forth above, Armstrong Flooring and Individual Defendants each violated Section 10(b) and Rule 10b-5 by their acts and omissions as alleged in this Complaint. By virtue of their position as controlling persons, Individual Defendants are liable pursuant to Section 20(a) of the Exchange Act. As a direct and proximate result of Defendants' wrongful conduct, Plaintiff and other members of the Class suffered damages in connection with their purchases of the Company's securities during the Class Period.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff prays for relief and judgment, as follows:

a)     Determining that this action is a proper class action under Rule 23 of the Federal Rules of Civil Procedure;

---

1    b)    Awarding compensatory damages in favor of Plaintiff and the other
2   Class members against all defendants, jointly and severally, for all damages
3   sustained as a result of Defendants' wrongdoing, in an amount to be proven at trial,
4   including interest thereon;

5    c)    Awarding Plaintiff and the Class their reasonable costs and expenses
6   incurred in this action, including counsel fees and expert fees; and

7    d)    Such other and further relief as the Court may deem just and proper.

## **JURY TRIAL DEMANDED**

9   Plaintiff hereby demands a trial by jury.

10  DATED:  November 15, 2019        **GLANCY PRONGAY & MURRAY LLP**

By:   *s/ Lesley F. Portnoy*
Lionel Z. Glancy
Robert V. Prongay
Lesley F. Portnoy
Charles H. Linehan
Pavithra Rajesh
1925 Century Park East, Suite 2100
Los Angeles, California 90067
Telephone: (310) 201-9150
Facsimile: (310) 201-9160
Email: info@glancylaw.com

*Attorneys for Plaintiff Michael Chupa*

## SWORN CERTIFICATION OF PLAINTIFF

## ARMSTRONG FLOORING, INC. SECURITIES LITIGATION

I, Michael Chupa, certify that:

1.     I have reviewed the Complaint and authorize its filing and/or the filing of a Lead Plaintiff motion on my behalf.

2.     I did not purchase the Armstrong Flooring, Inc. securities that are the subject of this action at the direction of plaintiff's counsel or in order to participate in any private action arising under this title.

3.     I am willing to serve as a representative party on behalf of a class and will testify at deposition and trial, if necessary.

4.     My transactions in Armstrong Flooring, Inc. securities during the Class Period set forth in the Complaint are as follows:

       (See attached transactions)

5.     I have not sought to serve, nor served, as a representative party on behalf of a class under this title during the last three years.

6.     I will not accept any payment for serving as a representative party, except to receive my pro rata share of any recovery or as ordered or approved by the court, including the award to a representative plaintiff of reasonable costs and expenses (including lost wages) directly relating to the representation of the class.

I declare under penalty of perjury that the foregoing are true and correct statements.

DocuSigned by:

*Michael Chupa*

24D220A0C80C485...

11/15/2019
_____                    _____
Date                                        Michael Chupa

**Michael Chupa's Transactions in Armstrong Flooring, Inc. (AFI)**

| Date | Transaction Type | Quantity | Unit Price |
|------|------------------|----------|------------|
| 9/13/2019 | Bought | 100 | $7.3100 |