**LEVI & KORSINSKY, LLP**
Adam M. Apton (SBN 316506)
445 South Figueroa Street, 31st Floor
Los Angeles, CA 90071
Tel:  (213) 985-7290
Email: aapton@zlk.com

*Attorneys for Movant Harry Lerner*

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| MICHAEL CHUPA, Individually and on Behalf of All Others Similarly Situated,<br><br>Plaintiff,<br><br>v.<br><br>ARMSTRONG FLOORING, INC., MICHEL VERMETTE, DONALD MAIER, LARRY McWILLIAMS, DOUGLAS BINGHAM, and RONALD FORD,<br><br>Defendants. | No. 2:19-cv-09840-CAS<br><br>**MEMORDANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO COMPETING MOVANTS FOR APPOINTMENT AS LEAD PLAINTIFF AND APPROVAL OF SELECTION OF COUNSEL**<br><br>Judge: Christina A. Snyder<br>Date:  February 24, 2020<br>Time: 10:00 a.m.<br>Courtroom #8D |

## TABLE OF CONTENTS

I.    PRELIMINARY STATEMENT ................................................................ 1

II.   ARGUMENT ........................................................................................ 3

    A.   The Procedure Required by the PSLRA. ......................................... 3

    B.   Mr. Lerner Is the Most Adequate Plaintiff to Serve as Lead Plaintiff Because Mr. Marker Is a Convicted Felon for Armed Robbery Using a Bomb with No Real Investing Experience. .................................. 4

    C.   No Other Movant Can Contest Mr. Lerner's Adequacy or Typicality. ................................................................................... 7

    D.   Limited Discovery Should Be Granted If Mr. Lerner Is Not Appointed as Lead Plaintiff. ........................................................ 8

    E.   Approval of Mr. Lerner's Choice of Counsel is Appropriate .......... 9

III.  CONCLUSION .................................................................................. 10

# TABLE OF AUTHORITIES

**Cases**

*Abrams v. Intuitive Surgical, Inc.,*
No. 5:13-CV-01920-EJD, 2013 U.S. Dist. LEXIS 165873 (N.D. Cal. Nov. 18, 2013) .......................................................................................................... 3, 4

*Broadfoot v. Barrick Gold Corp.,*
No. 17 CIV. 3507 (NRB), 2017 WL 3738444 (S.D.N.Y. Aug. 9, 2017) ........... 9

*In re Cavanaugh,*
306 F.3d 726 (9th Cir. 2002) ................................................................... passim

*In re Cendant Corp. Litig.,*
264 F.3d 201 (3d Cir. 2001) ............................................................................. 1

*Doherty v. Pivotal Software, Inc.,*
No. 3:19-cv-03589-CRB, 2019 U.S. Dist. LEXIS 195360 (N.D. Cal. Nov. 8, 2019) ................................................................................................................ 3

*Fischler v. AmSouth Bancorporation,*
No. 95-1567-Civ-T-17A, 1997 WL 118429 (M.D. Fla. Feb. 6, 1997) .............. 9

*Hanlon v. Chrysler Corp.,*
150 F.3d 1011 (9th Cir. 1998) ..................................................................... 2, 5

*In re Network Assocs. Inc., Sec. Litig.,*
76 F. Supp. 2d 1017 (N.D. Cal. 1999) .............................................................. 8

*Pena v. iBio, Inc.,*
2015 U.S. Dist. LEXIS 10686 (D. Del. Jan. 30, 2015) ..................................... 9

*Sanders v. VeriFone Sys.,*
No. 5:13-CV-01038-EJD, 2013 U.S. Dist. LEXIS 145000 (N.D. Cal. Oct. 7, 2013) .............................................................................................................. 10

*In re Silver Wheaton Corp. Sec. Litig.,*
No. 2:15-cv-05146-CAS (JEMx), 2017 U.S. Dist. LEXIS 72787, at *20-21 (C.D. Cal. May 11, 2017) .................................................................................. 2

*In re Stitch Fix, Inc. Sec. Litig.,*
393 F. Supp. 3d 833 (N.D. Cal. 2019) .............................................................. 3

*Smyth v. China Agritech, Inc.,*

No. CV 13-03008-RGK (PJWx), 2013 WL 12136605 (C.D. Cal. Sept. 26, 2013) ................................................................................................................5

*Springer v. Code Rebel Corp.,*
   No. 16-cv-3492-AJN, 2017 U.S. Dist. LEXIS 29983 (S.D.N.Y. Mar. 2, 2017) 7

*In re Surebeam Corp. Sec. Litig.,*
   No. 03-cv-1721-JM-POR, 2003 U.S. Dist. LEXIS 25022 (S.D. Cal. Dec. 31, 2003) ................................................................................................................7

*In re Vaxgen Sec. Litig.,*
   No. C 03-1129 JSW, 2004 U.S. Dist. LEXIS 29812 (N.D. Cal. Apr. 14, 2004) 8

**I.    PRELIMINARY STATEMENT**

The Court should grant Mr. Harry Lerner's motion. Of the three shareholders seeking appointment as lead plaintiff, Mr. Lerner is the one with the largest financial interest in the litigation that also meets the adequacy requirements under Rule 23 and the PSLRA. He sustained a loss of approximately $23,000 and, as demonstrated in his accompanying declaration, Mr. Lerner is a sophisticated investor with the aptitude required to understand the claims in this complex litigation and properly oversee counsel during the course of this lawsuit. He is committed to this litigation and will do everything in his power to ensure the largest financial recovery for himself and the class he represents.

Congress enacted the PSLRA to ensure that investors, not their attorneys, retain control of class action securities litigation matters. *See* H.R. Conf. Rep. No. 104-369 (1995), *reprinted in* 1995 U.S.C.C.A.N. 730. To this end, the PSLRA requires courts to examine a plaintiff's financial interest in the litigation as well as his or her adequacy to oversee the litigation and fufill the duties associated with serving as lead plaintiff. *See In re Cavanaugh,* 306 F.3d 726, 729-30 (9th Cir. 2002); *In re Cendant Corp. Litig.*, 264 F.3d 201, 264-65 (3d Cir. 2001). In this case, while Mr. Randy Marker claims a slightly larger loss than that of Mr. Lerner, information contained within his motion papers raises a serious question as to whether he will be able to properly oversee this action through to completion.

Mr. Marker's opening brief discloses that he has only "2 years" of investment experience after having spent the past two decades dealing with a conviction and prison sentence for "armed robbery." Marker Brief (ECF No. 16), p. 1 & n.1. Mr. Marker's disclosure, as candid as it was, concealed several key, disturbing pieces of information. His "armed robbery" was in fact a bank robbery that Mr. Marker commissioned with the use of a bomb. After fleeing from the bank with the stolen money, Mr. Marker drove for nearly five miles down a busy interstate highway while throwing money from his vehicle in an attempt to evade authorities. The

pursuit ended after Mr. Marker rolled his vehicle several times and crashed into a highway median. Mr. Marker was convicted of bank robbery and a federal court ultimately sentenced Mr. Marker to 97 months in prison.

Mr. Marker's prison sentence included a 19-month enhancement for his decision to use a bomb in the course of the crime. Though Mr. Marker appealed the sentence on this issue, the U.S. Court of Appeals for the Eleventh Circuit affirmed. As the appeals court explained, "[t]he use of a bomb takes Marker's case outside of the heartland of bank robberies because such a 'weapon of mass destruction' is not contemplated by the relevant sentencing guideline . . . . The detonation of one bomb is capable of killing or seriously injuring more people than is the discharge of a firearm. In addition, bombs wreak death and destruction indiscriminately. Because a bomb likely poses a greater threat of danger than does a firearm, the penalty for using one during a robbery likewise should be increased . . . ."

Mr. Marker's past shows a startling lack of judgment and potentially a number of other deep-seated emotional issues, issues that prevent him from making the *prima facie* showing of adequacy required for lead plaintiff purposes under the PSLRA. As this Court has previously held, "[t]o establish adequacy of representation, the issue is whether . . . 'the named plaintiffs and their counsel will prosecute the action vigorously on behalf of the class.'" *In re Silver Wheaton Corp. Sec. Litig.*, No. 2:15-cv-05146-CAS (JEMx), 2017 U.S. Dist. LEXIS 72787, at *20-21 (C.D. Cal. May 11, 2017) (quoting *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1020 (9th Cir. 1998)). Even if Mr. Marker has, as his counsel claims, "been reformed and become a contributing member of society" (Marker Brief (ECF No. 16), p. 1 & n.1), it is far from certain just how steady he currently is in terms of day-to-day life and whether he has the mental capacity to serve as lead plaintiff. The added commitment and stress of serving as a lead plaintiff or class representative is almost certainly not part his plan for rehabilitation. Absent some additional evidentiary showing from Mr. Marker with respect to his current state and ability

to serve, unnamed class members should not be subjected to the potential volatility and risk that would come with entrusting Mr. Marker as the lead plaintiff.

Mr. Lerner, through counsel, attempted to obtain evidence from Mr. Marker on this point, as permitted explicitly by the PSLRA. By letter dated January 24, 2020, Mr. Lerner requested that Mr. Marker provide additional information concerning his criminal record, treatment, and investing experience. Mr. Marker categorically refused to provide any information whatever. With nothing else to rely on other than the articles about Mr. Marker's offenses and his criminal court filings, the Court should share Mr. Lerner's deep concerns over Mr. Marker serving as lead plaintiff and deny his motion. Consequently, as the movant with the next largest financial interest in the litigation that otherwise meets the adequacy requirements of Rule 23, the Cout should grant Mr. Lerner's motion in its entirety. *See In re Cavanaugh*, 306 F.3d at 729-30.

## II.    ARGUMENT

### A.    The Procedure Required by the PSLRA.

Under the PSLRA, this Court is directed to "appoint as lead plaintiff the member or members of the purported plaintiff class that the court determines to be the most capable of adequately representing the interests of class members." 15 U.S.C. § 78u-4(a)(3)(B)(i). The PSLRA establishes the procedure for appointment of the lead plaintiff in "each private action arising under [the Exchange Act] that is brought as a plaintiff class action pursuant to the Federal Rules of Civil Procedure." 15 U.S.C. § 78u-4(a) and (a)(3)(B).

In interpreting the PSLRA, the Ninth Circuit formulated a clear process for selecting a lead plaintiff. See *Doherty v. Pivotal Software, Inc.,* No. 3:19-cv-03589-CRB, 2019 U.S. Dist. LEXIS 195360, at *12-13 (N.D. Cal. Nov. 8, 2019); *In re Stitch Fix, Inc. Sec. Litig.,* 393 F. Supp. 3d 833 (N.D. Cal. 2019); *Abrams v. Intuitive Surgical, Inc.,* No. 5:13-CV-01920-EJD, 2013 U.S. Dist. LEXIS 165873, at *5 (N.D. Cal. Nov. 18, 2013) (citing *In re Cavanaugh*, 306 F.3d at 729-30). "[T]he

court must compare the financial stakes of the various plaintiffs, determine which has the most to gain from the lawsuit, and determine whether that plaintiff satisfies Rule 23, particularly its typicality and adequacy requirements." *Id*. (citing *In re Cavanaugh*, 306 F.3d at 730). The movant with the largest financial interest and satisfies Rule 23, is then the "presumptive lead plaintiff." *See* 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I); *In re Cavanaugh*, 306 F.3d at 730. "If the plaintiff with the greatest financial stake does not satisfy the Rule 23(a) criteria, the court must repeat the inquiry, this time considering the plaintiff with the next-largest financial stake, until it finds a plaintiff who is both willing to serve and satisfies the requirements of Rule 23." *Id.* Third, the court must then consider any competing lead plaintiff movants attempts to rebut the presumptive lead plaintiff's showing that it satisfies Rule 23. *Id*.

> **B. Mr. Lerner Is the Most Adequate Plaintiff to Serve as Lead Plaintiff Because Mr. Marker Is a Convicted Felon for Armed Robbery Using a Bomb with No Real Investing Experience.**

As the following table demonstrates, Mr. Lerner possesses the second largest financial interest in the Action, but unlike Marker, does meet the requirements of Rule 23:

| Movant | Claimed Loss |
| --- | --- |
| 1. Randy Marker | $ 30,403.18 |
| 2. Harry Lerner | $ 22,774.63 |
| 3. David Swee | $ 4,204.43 |

While Mr. Marker claims a greater loss than Mr. Lerner, Mr. Marker is not otherwise adequate to represent the Class, and therefore the Court must consider the movant with the next largest financial interest: Mr. Lerner. *See In re Cavanaugh*, 306 F.3d at 729-30.

To fulfill the "adequacy" requirement, the lead plaintiff must demonstrate the ability to "fairly and adequately protect the interests of the class." FED. R. CIV.

P. 23(a). This requirement is not trivial, as it is based upon due process concerns because "absent class members must be afforded adequate representation before entry of a judgment which binds them." *Hanlon*, 150 F.3d at 1020. To satisfy Rule 23(a)(4), a class representative must "prosecute the action vigorously on behalf of the class." *Id*. Personal factors evidencing an inability to properly oversee the litigation weigh in favor of disqualifying a class representative as inadequate. *Smyth v. China Agritech, Inc.*, No. CV 13-03008-RGK (PJWx), 2013 WL 12136605, at *6 (C.D. Cal. Sept. 26, 2013) (plaintiff failed to carry his burden to "affirmatively demonstrate" a class representative's "present willingness and ability to vigorously litigate" the action where class representative was "unavailable" and exhibited a "lack of engagement"). A "district court has latitude as to what information it will consider in determining typicality and adequacy." *In re Cavanaugh,* 306 F.3d at 732.

Given the context surrounding Mr. Marker's past crime, the Court would be well within its right to consider the following when deciding the pending motions. In particular, Mr. Marker in March of 2001 robbed the First Union Bank in Gainesville, Florida, by placing a bomb on the counter and demanding money. *See* Declaration of Adam M. Apton ("Apton Decl."), filed herewith, Ex. A (news article). He then fled the scene in a vehicle driving southbound on Interstate 75 towards Ocala, Florida. *Id*. As he drove, he threw stolen money from his vehicle window in an effort to evade authorities in pursuit. *Id*. Mr. Marker continued for about five miles before losing control of the vehicle, rolling it several times, and crashing into the highway median. *Id*. Mr. Marker's actions endangered a countless number of lives as other drivers stopped on the highway and exited their vehicles in an attempt to collect the stolen money. *Id*.

On June 1, 2001, Mr. Marker pled guilty to bank robbery. The United States District Court for the Northern District of Florida senteneced Mr. Marker to 97 months in prison. The sentence included an enhancement due to his use of a bomb

in the course of the robbery "[b]ecause th[e] robbery guideline does not deal with threat of death or serious bodily injury to more than one victim . . . ." Apton Decl. Ex. B, p. 1 (Report and Recommendation) (internal quotations omitted). Mr. Marker appealed the sentence, but the U.S. Court of Appeals for the Eleventh Circuit affirmed. In pertinent part, the appeals court held:

> After a review of the record, the parties' briefs, and the Presentence Investigation Report, we find no reversible error. The use of a bomb takes Marker's case outside of the heartland of bank robberies because such a "weapon of mass destruction" is not contemplated by the relevant sentencing guideline . . . . The detonation of one bomb is capable of killing or seriously injuring more people than is the discharge of a firearm. In addition, bombs wreak death and destruction indiscriminately. Because a bomb likely poses a greater threat of danger than does a firearm, the penalty for using one during a robbery likewise should be increased . . . .

> Marker's contention that his bomb may not have detonated is immaterial . . . .

> Based upon the foregoing, the district court did not abuse its discretion in departing upward from the applicable guidelines range.

*Id*. at 2.

The fact that Mr. Marker committed this crime in 2001 does not lessen the blow of this serious situation. Mr. Marker spent the better part of the following decade in prison and, although he is now free, the Court and the parties are left with no information as to his current state of living. Indeed, the fact of the matter is that Mr. Marker has a demonstrated history of extreme anti-social behavior. How are we to now trust that he will act in the best interest of the class, knowing he so carelessly and recklessly disregarded the lives of others in the past? For instance, a little over year before Mr. Marker's robbery, he maintained a "supervised evening child care facility" named "Parents Nite Out Inc." Then, at some point shortly thereafter, Mr. Marker waivered and decided to rob a bank with a bomb. *See* Apton Decl. Ex. C (corporate documents). Without any other information at this point as

to Mr. Marker's current state, the Court should have serious doubts as to whether Mr. Marker will turn back to violent crime. Mr. Marker should not be allowed to make decisions on behalf of others, let alone a class of people he does not know in a complex securities fraud matter.

Courts have rejected plaintiffs being inadequate because of prior bad acts, but adequacy must be determined on a case by case, plaintiff by plaintiff basis – because the lead plaintiff must satisfy Rule 23 based on their specific circumstances, not just because others with criminal backgrounds have been appointed lead. *See Springer v. Code Rebel Corp.,* No. 16-cv-3492-AJN, 2017 U.S. Dist. LEXIS 29983, at *6 (S.D.N.Y. Mar. 2, 2017) (Lead plaintiff movants are required to affirmatively make "a sufficient preliminary showing that they can satisfy the relevant requirements of Federal Rule of Civil Procedure 23.") "On more than one occasion courts have found that an individual is an inadequate lead plaintiff due to unrelated misconduct which implicates the individual's ability to serve as a fiduciary." *In re Surebeam Corp. Sec. Litig.,* No. 03 CV 1721 JM (POR), 2003 U.S. Dist. LEXIS 25022, at *21-22 (S.D. Cal. Dec. 31, 2003) (citing cases). Mr. Marker's actions are far more than just "unsavory," "unethical," or even just "illegal conduct." The class currently has no way of knowing if Mr. Marker is in fact rehabilitated, and the argument that the crime happened almost twenty years ago fails to provide any information in response.

### C.    No Other Movant Can Contest Mr. Lerner's Adequacy or Typicality.

Following the process of appointing a lead plaintiff under *Cavanaugh*, because Mr. Marker does not meet the requirements of Rule 23, the Court must then analyze the typicality and adequacy of the movant with the next-largest financial stake – Mr. Lerner. *In re Cavanaugh*, 306 F.3d at 730. Mr. Lerner, unlike Mr. Marker, unequivocally meets the requirements of Rule 23. He does not have a criminal background which would cause one to question his adequacy. He is also a

sophisticated investor having been investing in the stock market for over **55** years, with an accomplished business background as the Chairman of Lerner Publishing Group, a company he founded in 1959. *See* Declaration of Harry Lerner, filed herewith, ¶¶2-4. Since Mr. Lerner satisfies both requirements, the presumption of lead plaintiff is triggered in his favor.

Once again, for illustrative purposes, Mr. Lerner's background is substantially different than Mr. Marker's background. Mr. Marker provided barely any information, in the form of a declaration or otherwise, to meet the adequacy or typicality requirements under Rule 23. The only information Mr. Marker provided thus far has been more representative of why he does ***not*** meet the Rule 23 requirements rather than why he does; namely his negligible two-year investing experience and his previous conviction. The allegations at hand in this matter are complex and require a heightened degree of competency and experience, and Mr. Marker's lack of trading experience should be taken into account. *See*, *e.g.*, *In re Vaxgen Sec. Litig.*, No. C 03-1129 JSW, 2004 U.S. Dist. LEXIS 29812, at *17-18 (N.D. Cal. Apr. 14, 2004) (granting motion for lead plaintiff where movant provided declaration "describing his professional background as a partner and consultant for Theodore Williams Construction company, his knowledge of securities trading, and his understanding of the duties incumbent on a lead plaintiff").

**D.     Limited Discovery Should Be Granted If Mr. Lerner Is Not Appointed as Lead Plaintiff.**

The PSLRA explicitly provides that a class member may conduct discovery into the adequacy of a plaintiff upon the showing of a reasonable basis for a finding that he or she is incapable of adequately representing the class. 15 U.S.C. § 78u-4(a)(3)(B)(iv). Numerous courts have ordered a proposed lead plaintiff to submit to discovery in similar circumstances. *See In re Network Assocs. Inc., Sec. Litig.*, 76 F. Supp. 2d 1017, 1024 (N.D. Cal. 1999) (authorizing a four-hour deposition of two lead plaintiff movants and finding the discovery "illuminating" as to why they were

inadequate to represent the class); *Broadfoot v. Barrick Gold Corp.*, No. 17 CIV. 3507 (NRB), 2017 WL 3738444, at *1 (S.D.N.Y. Aug. 9, 2017) (granting competing movant's request for discovery based on evidence contained in the certification regarding potential unique defenses); *Fischler v. AmSouth Bancorporation*, No. 95-1567-Civ-T-17A, 1997 WL 118429, at *3 (M.D. Fla. Feb. 6, 1997) ("uncertainty" or "unanswered questions" about a putative lead plaintiff's ability to properly represent the class are sufficient to trigger the PSLRA's lead plaintiff discovery provision); *Pena v. iBio, Inc.*, 2015 U.S. Dist. LEXIS 10686, at *2-3 (D. Del. Jan. 30, 2015).

If the Court is not inclined to appoint Mr. Lerner as a lead plaintiff, a reasonable basis exists to justify limited discovery concerning Mr. Marker's adequacy. As set forth above, Mr. Marker has a violent criminal past which has presumably precluded him from gaining any real substantial investing experience. This will undoubtedly subject the proposed class to an unnecessary risk and direct the focus of the litigation on issues individual to Mr. Marker at a critical point in the litigation, especially if Mr. Marker's criminal background includes more than just bank robbery. Thus, the Court should first allow Mr. Lerner to undertake limited discovery to investigate the extent of the potential unique defenses that will undoubtedly be raised against Mr. Marker if he is appointed as the lead plaintiff. *See Pena*, 2015 U.S. Dist. LEXIS 10686, at *2-3 (requiring lead plaintiff movant to personally appear to allow the Court to evaluate the adequacy of the presumptive lead plaintiff as his certification raised issues of inadequacy).[1]

### E.    Approval of Mr. Lerner's Choice of Counsel is Appropriate

The PSLRA vests authority in the lead plaintiff to select and retain lead counsel, subject to Court approval. 15 U.S.C. § 78u-4(a)(3)(B)(v). The Court should

---

[1] The discovery granted should include: a deposition of Mr. Marker; records relating to any treatment received in the wake of his conviction; and records relating to his investment experience. Mr. Lerner, through counsel, requested this information in writing on January 24, 2020. *See* Apton Decl. Ex. D.

interfere with the lead plaintiff's selection of counsel only when necessary "to protect the interests of the class." 15 U.S.C. § 78u-4(a)(3)(B)(iii)(II)(aa); *Sanders v. VeriFone Sys.*, No. 5:13-CV-01038-EJD, 2013 U.S. Dist. LEXIS 145000, at *11 (N.D. Cal. Oct. 7, 2013) ("'The district court does not select class counsel at all', and typically approves the lead plaintiff's selection of counsel") (citing *In re Cavanaugh*, 306 F.3d at 732-34).

Mr. Lerner selected and retained Levi & Korsinsky to serve as Lead Counsel for the Class. As Levi & Korsinsky has extensive experience in litigating securities class actions, his choice of lead counsel should be approved. *See* Dkt. No. 10-4.

## III.    CONCLUSION

For the foregoing reasons, Mr. Lerner respectfully requests the Court grant his Motion and enter an order: (1) appointing Mr. Lerner as Lead Plaintiff for the Class in the Action; (2) approving Levi & Korsinsky as Lead Counsel for the Class; and (3) granting whatever other relief the Court deems proper.

Dated: February 3, 2020                    Respectfully submitted,

**LEVI & KORSINSKY, LLP**

 /s/ *Adam M. Apton*
Adam M. Apton (SBN 316506)
445 South Figueroa Street, 31st Floor
Los Angeles, CA 90071
Tel: (213) 985-7290
Email: aapton@zlk.com

*Attorneys for Harry Lerner*

## CERTIFICATE OF SERVICE

I, Adam M. Apton, hereby declare under penalty of perjury as follows:

I am an attorney at Levi & Korsinsky, LLP, with offices at 445 South Figueroa Street, 31st Floor, Los Angeles, CA 90071. I am over the age of eighteen.

On February 3, 2020, I electronically filed the following **MEMORDANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO COMPETING MOVANTS FOR APPOINTMENT AS LEAD PLAINTIFF AND APPROVAL OF SELECTION OF COUNSEL** with the Clerk of the Court using the CM/ECF system which sent notification of such filing to counsel of record.

Executed on February 3, 2020.

          */s/ Adam M. Apton*
          Adam M. Apton