PETER B. MORRISON (SBN 230148)
peter.morrison@skadden.com
ZACHARY M. FAIGEN (SBN 294716)
zack.faigen@skadden.com
SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
300 South Grand Avenue, Suite 3400
Los Angeles, California 90071-3144
Telephone:   (213) 687-5000
Facsimile:   (213) 687-5600

ROBERT A. FUMERTON (*pro hac vice*)
robert.fumerton@skadden.com
CHRISTOPHER R. FREDMONSKI (*pro hac vice*)
christopher.fredmonski@skadden.com
SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
One Manhattan West
New York, New York 10001
Telephone:   (212) 735-3000
Facsimile:   (212) 735-2000

Attorneys for Defendants Armstrong Flooring, Inc.,
Michel Vermette, Larry McWilliams and Dominic Rice

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| MICHAEL CHUPA, Individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>ARMSTRONG FLOORING, INC., MICHEL VERMETTE, DONALD MAIER, LARRY McWILLIAMS, DOUGLAS BINGHAM, DOMINIC RICE, and RONALD FORD,<br><br>Defendants. | CASE NO.: 2:19-cv-09840 CAS (MRWx)<br><br>**(1) REQUEST FOR INCORPORATION BY REFERENCE AND JUDICIAL NOTICE IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS AMENDED COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS;**<br><br>**(2) DECLARATION OF ZACHARY M. FAIGEN IN SUPPORT THEREOF; and**<br><br>**(3) [PROPOSED] ORDER (lodged under separate cover).**<br><br>The Honorable Christina A. Snyder<br><br>Hearing Date:    December 7, 2020<br>Hearing Time:    10:00 a.m.<br>Courtroom:        8D |

REQUEST FOR INCORPORATION BY REFERENCE AND JUDICIAL NOTICE

**TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:**

Defendants Armstrong Flooring, Inc. ("Armstrong" or the "Company"), Michel Vermette, Larry McWilliams and Dominic Rice (collectively, "Defendants") respectfully request that the Court consider, in connection with Defendants' Motion to Dismiss Amended Complaint for Violations of the Federal Securities Laws (the "Motion"), Exhibits 1 through 13 attached to the Declaration of Zachary M. Faigen (the "Faigen Declaration"):

Exhibit 1: A true and correct copy of excerpts of the Form 10-K filed by Armstrong with the Securities & Exchange Commission ("SEC") on March 6, 2018.

Exhibit 2: A true and correct copy of a transcript of Armstrong's first quarter 2018 earnings call on May 8, 2018.

Exhibit 3: A true and correct copy of a transcript of Armstrong's second quarter 2018 earnings call on August 7, 2018.

Exhibit 4: A true and correct copy of excerpts of the Form 10-Q filed by Armstrong with the SEC on November 6, 2018.

Exhibit 5: A true and correct copy of a transcript of Armstrong's third quarter 2018 earnings call on November 6, 2018.

Exhibit 6: A true and correct copy of Exhibit 99.1 to the Form 8-K filed by Armstrong with the SEC on March 5, 2019.

Exhibit 7: A true and correct copy of excerpts of the Form 10-K filed by Armstrong with the SEC on March 5, 2019.

Exhibit 8: A true and correct copy of a transcript of Armstrong's fourth quarter and full year 2018 earnings call on March 5, 2019.

Exhibit 9: A true and correct copy of Exhibit 99.1 to the Form 8-K filed by Armstrong with the SEC on August 6, 2019.

Exhibit 10: A true and correct copy of a transcript of Armstrong's second quarter 2019 earnings call on August 6, 2019.

Exhibit 11: A true and correct copy of Exhibit 99.1 to the Form 8-K filed by Armstrong with the SEC on March 3, 2020.

Exhibit 12: A true and correct copy of a transcript of Armstrong's fourth quarter and full year 2019 earnings call on March 3, 2020.

Exhibit 13: A true and correct copy of excerpts of the Schedule 14A proxy statement Armstrong filed with the SEC on April 24, 2019.

Each of these Exhibits may be properly considered by the Court in connection with Defendants' Motion because each Exhibit is (i) incorporated by reference in, and integral to, the Amended Complaint for Violations of the Federal Securities Laws (the "AC"), and/or (ii) subject to judicial notice under Federal Rule of Evidence 201.

DATED: August 17, 2020

SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP

By:  _____/s/  Peter B. Morrison_____
                Peter B. Morrison

Attorneys for Defendants Armstrong Flooring, Inc., Michel Vermette, Larry McWilliams and Dominic Rice

ii

REQUEST FOR INCORPORATION BY REFERENCE AND JUDICIAL NOTICE

In assessing securities fraud claims, "courts must consider the complaint in its entirety, as well as other sources courts ordinarily examine when ruling on Rule 12(b)(6) motions to dismiss, in particular, documents incorporated into the complaint by reference, and matters of which a court may take judicial notice." *Tellabs, Inc. v. Makor Issues & Rts., Ltd.*, 551 U.S. 308, 322 (2007); *see also Xu v. ChinaCache Int'l Holdings Ltd.*, 2016 WL 4370030, at *1 n.2 (C.D. Cal. Aug. 15, 2016) (Snyder, J.) ("Although a motion to dismiss is ordinarily limited to only the allegations in the complaint, other documents may be considered if their '"authenticity . . . is not contested' and 'the plaintiff's complaint necessarily relies" on them.'").[1] "Although often conflated, the doctrine of incorporation by reference is distinct from judicial notice." *Gammel v. Hewlett-Packard Co.*, 905 F. Supp. 2d 1052, 1061 (C.D. Cal. 2012); *see also Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988, 998 (9th Cir. 2018) (stating "the incorporation-by-reference doctrine, and judicial notice under Federal Rule of Evidence 201" both "permit district courts to consider materials outside a complaint, but each does so for different reasons and in different ways").

Here, Defendants respectfully request that the Court consider Exhibits 1 through 13 to the Faigen Declaration because each Exhibit is either incorporated by reference in the AC, subject to judicial notice, or both.

## I.    THE COURT SHOULD CONSIDER EXHIBITS 1-10 AND 12-13 BECAUSE THEY ARE INCORPORATED BY REFERENCE IN THE AC

In ruling on a motion to dismiss, the "incorporation by reference doctrine . . . permits a district court to consider documents whose contents . . . are not physically attached to the plaintiff's pleading." *In re Silicon Graphics Inc. Sec. Litig.*, 183 F.3d 970, 986 (9th Cir. 1999), *abrogated in part on other grounds as stated in S. Ferry LP, No. 2 v. Killinger*, 542 F.3d 776 (9th Cir. 2008); *see also Swartz v. KPMG LLP*, 476 F.3d 756, 763 (9th Cir. 2007) (to "prevent plaintiffs from surviving a Rule 12(b)(6) motion by deliberately omitting . . . documents upon which their claims are based, a court may consider a writing referenced

---

[1] All emphases are added and internal citations, quotations and alterations are omitted unless otherwise stated.

in a complaint but not explicitly incorporated therein if the complaint relies on the document and its authenticity is unquestioned").

"[T]he incorporation-by-reference doctrine is designed to prevent artful pleading by plaintiffs." *Khoja*, 899 F.3d at 1003. It "treats certain documents as though they are part of the complaint itself," and, in doing so, "prevents plaintiffs from selecting only portions of documents that support their claims, while omitting portions of those very documents that weaken—or doom—their claims." *Id.* at 1002 (citing *Parrino v. FHP, Inc.*, 146 F.3d 699, 706 (9th Cir. 1998)). The Court may consider a document incorporated by reference when a plaintiff "refers extensively to the document or the document forms the basis of the plaintiff's claim." *Id.* If, in a federal securities case, the document "contains [one of the] alleged misrepresentation[s]," the document necessarily "forms the basis of" the claim, and can be considered as incorporated by reference into the complaint. *Id.* at 1005.

"Once a document is deemed incorporated by reference, the entire document is assumed to be true for purposes of a motion to dismiss, and both parties—and the Court— are free to refer to any of its contents." *In re NVIDIA Corp. Sec. Litig.*, 768 F.3d 1046, 1058 n.10 (9th Cir. 2014).

Here, Exhibits 1-10 and 12-13 are incorporated by reference in the AC. Those exhibits are referenced or relied upon in the following paragraphs:

| Exhibit No. and Description | Paragraph(s) of the AC |
|---|---|
| Ex. 1: Form 10-K filed on March 6, 2018. | ¶¶ 31-34, 38-40, 47, 70. |
| Ex. 2: Armstrong first quarter 2018 earnings call transcript, dated May 8, 2018. | ¶¶ 7, 58, 65, 74-76, 78-79, 81-82. |
| Ex. 3: Armstrong second quarter 2018 earnings call transcript, dated August 7, 2018. | ¶¶ 60, 66, 84. |
| Ex. 4: Form 10-Q filed on November 6, 2018. | ¶ 10; *see also* ¶¶ 71, 73, 77, 80, 83, 85, 88, 91, 98, 100, 102, 111, 114, 119 (referring back to ¶ 10). |
| Ex. 5: Armstrong third quarter 2018 earnings call transcript, dated November 6, 2018. | ¶¶ 50-51, 89-90, 143. |

2

| Exhibit No. and Description | Paragraph(s) of the AC |
|---|---|
| Ex. 6: Exhibit 99.1 to the Form 8-K filed on March 5, 2019. | ¶¶ 93, 96-97, 157. |
| Ex. 7: Form 10-K filed on March 5, 2019. | ¶¶ 31-34, 38-40, 47, 101, 157. |
| Ex. 8: Armstrong fourth quarter and full year 2018 earnings call transcript, dated March 5, 2019. | ¶¶ 67, 99, 157. |
| Ex. 9: Exhibit 99.1 to the Form 8-K filed on August 6, 2019. | ¶ 115. |
| Ex. 10: Armstrong second quarter 2019 earnings call transcript, dated August 6, 2019. | ¶¶ 52-54, 117-18. |
| Ex. 12: Armstrong fourth quarter and full year 2019 earnings call transcript, dated March 3, 2020. | ¶¶ 127-31, 160. |
| Ex. 13: Schedule 14A filed on April 24, 2019. | ¶¶ 145-46. |

The Court should incorporate all of these Exhibits by reference for two reasons. *First*, as the chart above makes clear, the AC references or relies upon Exhibits 1-8, 10 and 12-13 "extensively," which provides a sufficient basis for incorporation by reference. *Khoja*, 899 F.3d at 1002; *see also Coto Settlement v. Eisenberg*, 593 F.3d 1031, 1038 (9th Cir. 2010) ("We have extended the doctrine of incorporation by reference to consider documents in situations where . . . the contents of the document are alleged in a complaint."); *In re Apple Inc. Sec. Litig.*, 2020 WL 2857397, at *5 (N.D. Cal. June 2, 2020) (incorporating by reference document cited multiple times in complaint); *In re Intel Corp. Sec. Litig.*, 2019 WL 1427660, at *6 (N.D. Cal. Mar. 29, 2019) (incorporating by reference document "cited in two paragraphs of the" complaint and another document that was "quoted or referenced in three paragraphs" of the complaint).

*Second*, each of Exhibits 1-10 and 12-13 forms the basis of Plaintiff's claims, a separate and independent basis for the Court to incorporate these Exhibits by reference. *Khoja*, 899 F.3d at 1002, 1005; *Coto Settlement*, 593 F.3d at 1038; *see also In re Eventbrite, Inc. Sec. Litig.*, 2020 WL 2042078, at *7 (N.D. Cal. Apr. 28, 2020) ("[N]othing in *Khoja* prevents th[e] Court from analyzing an alleged false statement in context."). The AC alleges that Exhibits 1-3 , 5-10 and 12 contain the alleged false or misleading statements at

3

issue, constitute a corrective disclosure that purportedly revealed the alleged fraud, or both. (*See* AC ¶¶ 70, 74-76, 78-79, 81-82, 84, 89-90, 93, 96-97, 99, 101, 115, 117-18, 127-31, 143, 145-46, 157, 160.) Because each of these Exhibits "forms the basis of the plaintiff's claim," each is properly incorporated by reference. *Khoja*, 899 F.3d at 1002; *see also id.* at 1004 (holding that document containing alleged misstatement that "maintain[ed] the artificial price inflation in [defendant's] securities" was necessarily "part of [defendant's] [alleged] scheme to inflate its stock values" and therefore "formed the basis of the scheme" and was properly incorporated by reference); *Apple Inc.*, 2020 WL 2857397, at *5 (incorporating by reference "SEC filings" and "transcripts of shareholder/analyst calls" alleged to "contain[] misleading statements" because they "form[ed] the basis of plaintiff's claims"); *Azar v. Yelp, Inc.*, 2018 WL 6182756, at *5 (N.D. Cal. Nov. 27, 2018) (incorporating by reference earnings call transcripts where "Plaintiffs rely extensively on these transcripts in their complaint to allege that Defendants made fraudulent statements").

The Court can also incorporate Exhibits 4 and 13 by reference on the grounds that they, too, form the basis of Plaintiff's claims. Regarding Exhibit 13, Armstrong's 2019 Proxy Statement, the AC relies on this document in its attempt to establish scienter. (*See* AC ¶¶ 145-50.) Specifically, Plaintiff alleges that Armstrong's Proxy Statement "revealed that the Individual Defendants received substantial grants of RSUs." (*Id.* ¶ 146.) Plaintiff alleges that these RSUs "provided motive for the Defendants" to defraud investors. (*Id.* ¶ 147.) Indeed, Plaintiff specifically quotes from Exhibit 13 on this point. (*Id.* ¶ 145.) Accordingly, Exhibit 13 "forms the basis of" Plaintiff's claim, and is properly incorporated by reference. *Khoja*, 899 F.3d at 1002. As for Exhibit 4, Armstrong's November 6, 2018 Form 10-Q, the AC references the disclosure made therein concerning "a 2018 potential escalation of the price of flooring materials from China due to tariffs (an increase in cost, which the Company passed on by increasing the price of their products)" (AC ¶ 10) as support for the falsity of almost every single one of the statements alleged in the complaint. (*See id.* ¶¶ 71, 73, 77, 80, 83, 85, 88, 91, 98, 100, 102, 111, 114, 119.) Exhibit 4 thus should be incorporated by reference for this additional reason. *See Khoja*, 899 F.3d at 1002; *In re*

4

*SunPower Corp. Sec. Litig.*, 2018 WL 4904904, at \*3 n.2 (N.D. Cal. Oct. 9, 2018) (incorporating exhibits by reference where "plaintiffs refer to all the motion to dismiss exhibits . . . as the ground for [defendant's] false statements and scienter").

Accordingly, the Court should consider Exhibits 1-10 and 12-13 of the Faigen Declaration under the incorporation-by-reference doctrine.

## II.    <u>THE COURT SHOULD TAKE JUDICIAL NOTICE OF EXHIBITS 1-12</u>

Federal Rule of Evidence 201 provides that a fact is subject to judicial notice if it is one not subject to reasonable dispute in that it is either "(1) . . . generally known within the trial court's territorial jurisdiction; or (2) can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b). "[F]acts subject to judicial notice may be considered on a motion to dismiss." *Mullis v. U.S. Bankr. Ct.*, 828 F.2d 1385, 1388 (9th Cir. 1987).

Here, Exhibits 1-12 are the proper subject of judicial notice because the documents have been filed with the SEC, are publicly available records, the contents of which "can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned," Fed. R. Evid. 201(b), or both.

*First*, the Court may take judicial notice of Exhibits 1, 4, 6-7, 9 and 11 because these documents have been filed with the SEC. Courts regularly take judicial notice of a company's SEC filings. *See, e.g.*, *In re New Century*, 588 F. Supp. 2d 1206, 1219 (C.D. Cal. 2008) ("It is well-established that courts may take judicial notice of SEC filings." (citing *Dreiling v. Am. Express Co.*, 458 F.3d 942, 946 n.2 (9th Cir. 2006))); *see also In re Am. Apparel, Inc. S'holder Litig.*, 855 F. Supp. 2d 1043, 1060-61 (C.D. Cal. 2012) (in a motion to dismiss, "[c]ourts can consider securities offerings and corporate disclosure documents that are publicly available" (citing *Metzler Inv. GMBH v. Corinthian Colls. Inc.*, 540 F.3d 1049, 1064 n.7 (9th Cir. 2008))); *In re Amgen Inc. Sec. Litig.*, 544 F. Supp. 2d 1009, 1023 (C.D. Cal. 2008) (same); *In re Wet Seal, Inc. Sec. Litig.*, 518 F. Supp. 2d 1148, 1157-58 (C.D. Cal. 2007) (same).

*Second*, the Court may take judicial notice of Exhibits 1-12 because they are public

5

records, the contents of which "can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b); *see also Lyon v. Gila River Indian Cmty.*, 626 F.3d 1059, 1075 (9th Cir. 2010). Each Exhibit is a publicly available (i) SEC filing or (ii) transcript of an investor conference call. "Courts hearing securities fraud cases routinely take judicial notice of documents with unquestioned authenticity that . . . demonstrate the information available to the market during the class period." *In re Nuvelo, Inc., Sec. Litig.*, 2008 WL 5114325, at *2 (N.D. Cal. Dec. 4, 2008); *see also Plevy v. Haggery*, 38 F. Supp. 2d 816, 821 (C.D. Cal. 1998) (taking judicial notice of "press releases, analysts' reports [and] news articles" because the "contents of these exhibits are capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned").

Here, Defendants ask the Court to take judicial notice of the fact that certain specific statements in Exhibits 1-12 were made to the market during the relevant time period. Whether Armstrong disclosed certain information to the market during the alleged class period is indisputably a proper subject for judicial notice in a federal securities action. *See, e.g.*, *In re Silver Wheaton Corp. Sec. Litig.*, 2019 WL 1512269, at *8 (C.D. Cal. Mar. 25, 2019) (Snyder, J.) (taking judicial notice of SEC filings "for the fact that those filings contained certain disclosures regarding [a government tax audit] and a risk of a material adverse impact on [the company's] financial performance in the event of a [tax] reassessment"); *Prodanova v. H.C. Wainwright & Co.*, 2018 WL 8017791, at *5 (C.D. Cal. Dec. 11, 2018) (taking judicial notice of press release "solely to show that [the company] provided information to the public"); *Patel v. Parnes*, 253 F.R.D. 531, 547 (C.D. Cal. 2008) (taking judicial notice of "conference call transcripts" to "provide the full context in which information was disclosed to the market"); *Brodsky v. Yahoo! Inc.*, 630 F. Supp. 2d 1104, 1111-12 (N.D. Cal. 2009) (taking judicial notice of defendant's press releases, news articles and third-party analyst reports, but "not for the truth of their contents"); *accord Risto v. Screen Actors Guild – Am. Fed'n of Television & Radio Artists*, 2018 WL 7016345, at *5 (C.D. Cal. Nov. 6, 2018) (Snyder, J.) (taking judicial notice of publicly available

6

annual reports for the fact that certain information was disclosed to the public).

Specifically, Defendants request that the Court take judicial notice of the fact that the following information was disclosed to the market during the time period alleged in the AC. Defendants do not ask the Court to take judicial notice of the truth of the information.

| Exhibit No. and Description | Fact(s) for Which Notice Is Requested |
|---|---|
| Ex. 1: Form 10-K filed on March 6, 2018. | Armstrong disclosed to the market that its "channel partners raise or lower their inventory levels according to their expectations of market demand and consumer preferences, which directly affects our sales." (Ex. 1 at 20.) |
| Ex. 2: Armstrong first quarter 2018 earnings call transcript, dated May 8, 2018. | Armstrong disclosed to the market numerous "strategic priorities," one of which was the "go-to-market" strategy. (Ex. 2 at 6.) |
| Ex. 3: Armstrong second quarter 2018 earnings call transcript, dated August 7, 2018. | Armstrong disclosed to the market that it had a "wide range of targeted initiatives in motion" and that it did not expect to see any "positive impacts" from the "go-to-market" strategy until the "back-end [of 2018], if not 2019." (Ex. 3 at 4, 13.) |
| Ex. 4: Form 10-Q filed on November 6, 2018. | Armstrong disclosed to the market (i) that statements in its Form 10-Q "may constitute forward-looking statements" that "are subject to various risks and uncertainties;" (ii) that words such as "anticipate," "expect," "intend," "plan," "target," "project," "predict," "believe," "may," "will," "would," "could," "should," "seek," "estimate" and similar expressions "are intended to identify such forward-looking statements;" (iii) that these statements "are based on management's current expectations and beliefs and are subject to a number of factors that could lead to actual results materially different from those described in the forward-looking statements;" and (iv) "[f]actors that could have a material adverse effect on our financial condition, liquidity, results of operations or future prospects or which could cause actual results to differ materially from our expectations." (Ex. 4 at 1.)<br><br>Armstrong disclosed to the market that the U.S. government had announced a 10% tariff on certain flooring products imported to the U.S. from China, effective September 24, 2018, with an increase to 25% effective January 1, 2019. (Ex. 4 at 23.) |

7

REQUEST FOR INCORPORATION BY REFERENCE AND JUDICIAL NOTICE

| Exhibit No. and Description | Fact(s) for Which Notice Is Requested |
|---|---|
| | Armstrong disclosed to the market that it would be implementing price increases effective in the fourth quarter of 2018 to offset the impact of the tariffs, and that it "expect[ed] to implement additional price increases in the first quarter of 2019" in connection with the tariff step up. (Ex. 4 at 23.)<br><br>Armstrong disclosed to the market that "[h]igher than normal inventory levels at distributors could impact sales in the fourth quarter, as could continued uncertainty around tariffs from products imported from China." (Ex. 4 at 22-23.) |
| Ex. 5: Armstrong third quarter 2018 earnings call transcript, dated November 6, 2018. | Armstrong disclosed to the market that (i) its earnings call would include "forward-looking statements that involve risks and uncertainties;" (ii) "[a]ctual outcomes may differ materially from those expected or implied;" and (iii) its SEC filings contained "a more detailed discussion of the risks and uncertainties that may affect Armstrong." (Ex. 5 at 4.)<br><br>Armstrong disclosed to the market that "We do believe that as the announced tariffs came out at the end of Q3, that, that did drive some buying behavior towards the end of the quarter." (Ex. 5 at 8.)<br><br>Armstrong disclosed to the market that "it would be reasonable to anticipate a similar sort of surge in the fourth quarter." (Ex. 5 at 8.) |
| Ex. 6: Exhibit 99.1 to the Form 8-K filed on March 5, 2019. | Armstrong disclosed to the market that, "[f]or the full year 2019, [it] expects adjusted EBITDA to be in the range of $58 million to $66 million," and that it projected that growth would be "heavily weighted to the second half [of the year] as the overall market improves and elevated inventory levels in the channel are worked down." (Ex. 6 at 2.)<br><br>Armstrong disclosed to the market (i) that disclosures in its earnings release "contain forward-looking statements" that "address matters that are uncertain and involve risks because they relate to events and depend on circumstances that may or may not occur in the future;" (ii) that words such as "anticipate," "estimate," "expect," "project," "intend," "plan," "believe," "outlook," "target," "predict," "may," "will," "would," "could," "should," "seek" and |

8

REQUEST FOR INCORPORATION BY REFERENCE AND JUDICIAL NOTICE

| Exhibit No. and Description | Fact(s) for Which Notice Is Requested |
|---|---|
| | "other words or phrases of similar meaning" are intended to identify such forward-looking statements; (iii) that "actual results may differ materially from our expected results and from those expressed in our forward looking statements;" and (iv) "[a] more detailed discussion of the risks and uncertainties that could cause our actual results to differ materially from those projected, anticipated or implied is included in our reports filed with the [SEC]." (Ex. 6 at 3.) |
| Ex. 7: Form 10-K filed on March 5, 2019. | Armstrong disclosed to the market (i) that certain statements in its Form 10-K "may constitute forward-looking statements" that "are subject to various risks and uncertainties;" (ii) that words such as "anticipate," "expect," "intend," "plan," "target," "project," "predict," "believe," "may," "will," "would," "could," "should," "seek," "estimate" and similar expressions "are intended to identify such forward-looking statements;" (iii) that these statements "are based on management's current expectations and beliefs and are subject to a number of factors that could lead to actual results materially different from those described in the forward-looking statements;" and (iv) "[f]actors that could have a material adverse effect on our financial condition, liquidity, results of operations or future prospects or which could cause actual results to differ materially from our expectations." (Ex. 7 at 1.)<br><br>Armstrong disclosed to the market that its "channel partners raise or lower their inventory levels according to their expectations of market demand and consumer preferences, which directly affects our sales." (Ex. 7 at 19.)<br><br>Armstrong disclosed to the market that "Higher than normal inventory levels at distributors could impact sales in the first quarter of 2019, as could continued uncertainty around tariffs from products imported from China." (Ex. 7 at 19.) |
| Ex. 8: Armstrong fourth quarter and full year 2018 earnings call transcript, dated March 5, 2019. | Armstrong disclosed to the market that (i) its earnings call would include "forward-looking statements that involve risks and uncertainties;" (ii) "[a]ctual outcomes may differ materially from those expected or implied;" and (iii) its SEC filings contained "a more detailed discussion of the risks and uncertainties that may |

9

| Exhibit No. and Description | Fact(s) for Which Notice Is Requested |
|---|---|
| | affect Armstrong." (Ex. 8 at 4.)<br><br>Armstrong disclosed to the market that the tariffs on certain flooring products imported to the U.S. from China "had a large impact on customer buying behavior," including "significant customer purchases pulled forward in the third quarter of 2018" that caused "elevated inventory levels in the distributor channel during the fourth quarter." (Ex. 8 at 6-7.) |
| Ex. 9: Exhibit 99.1 to the Form 8-K filed on August 6, 2019. | Armstrong disclosed to the market that "[i]nventory levels in the distributor channel [had] decreased sequentially compared to the first quarter 2019 but remained moderately elevated at the end of the quarter." (Ex. 9 at 1.) |
| Ex. 10: Armstrong second quarter 2019 earnings call transcript, dated August 6, 2019. | Armstrong disclosed to the market that "the general uncertainty around the ultimate outcome of U.S.-China trade negotiations has continued to influence normal seasonal buying patterns." (Ex. 10 at 5.) |
| Ex. 11: Exhibit 99.1 to the Form 8-K filed on March 3, 2020. | Armstrong disclosed to the market that, "[f]ollowing a comprehensive review of the business," Armstrong had "established a multi-year strategic roadmap to transform and modernize its operations to become a leaner, faster growing and more profitable business." (Ex. 11 at 2.) |
| Ex. 12: Armstrong fourth quarter and full year 2019 earnings call transcript, dated March 3, 2020. | Armstrong disclosed to the market that Armstrong had conducted a "thorough[] review[]" of its "business and strategic direction," and that it would be "investing in underserved sales segments." (Ex. 12 at 5.)<br><br>Armstrong disclosed to the market that its business review had revealed "significant complexities in [its] processes that are fit for a much larger company versus a company our size." (Ex. 12 at 6.) |

Upon proper notice, the Court is required to take judicial notice of the Exhibits listed above. *See* Fed. R. Evid. 201(c)(2) ("The court . . . must take judicial notice if a party requests it and the court is supplied with the necessary information."); *accord Lyon*, 626 F.3d at 1075. Here, Defendants have requested judicial notice and furnished the Court with the necessary information.

10

## III.    <u>CONCLUSION</u>

Defendants respectfully request that the Court consider, in ruling on Defendants' Motion, the Exhibits attached to the Faigen Declaration, filed herewith.

DATED:      August 17, 2020

SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP

By:      */s/  Peter B. Morrison*
Peter B. Morrison

Attorneys for Defendants Armstrong Flooring, Inc., Michel Vermette, Larry McWilliams and Dominic Rice

11

REQUEST FOR INCORPORATION BY REFERENCE AND JUDICIAL NOTICE