David Kistenbroker (*admitted pro hac vice*)
david.kistenbroker@dechert.com
Joni S. Jacobsen (*admitted pro hac vice*)
joni.jacobsen@dechert.com
Melanie C. MacKay (*admitted pro hac vice*)
melanie.mackay@dechert.com
DECHERT LLP
35 West Wacker Drive, Suite 3400
Chicago, IL 60601
Telephone:  (312) 646-5800
Facsimile: (312) 646-5858

Anna Do (No. 281327)
anna.do@dechert.com
DECHERT LLP
633 West 5th Street, Suite 4900
Los Angeles, CA 90071-2032
Telephone: (213) 808-5700
Facsimile: (213) 808-5760

*Counsel for Defendant Ronald Ford*

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION

| | |
|---|---|
| MICHAEL CHUPA, Individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>ARMSTRONG FLOORING, INC., et al.,<br><br>Defendants. | Case No. 2:19-cv-09840-CAS<br><br>**DEFENDANT RONALD FORD'S REPLY IN SUPPORT OF HIS MOTION TO DISMISS PLAINTIFF'S AMENDED COMPLAINT  FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS**<br><br>Judge: Hon. Christina A. Snyder<br>Hearing Date: December 7, 2020<br>Hearing Time: 10:00 a.m.<br>Courtroom: 8D – 8th Floor |

# TABLE OF CONTENTS

ARGUMENT ..........................................................................................................2

I.   PLAINTIFF FAILS TO ALLEGE MR. FORD MADE A MATERIALLY
     MISLEADING STATEMENT OR OMISSION ......................................................2

II.  PLAINTIFF FAILS TO ALLEGE PARTICULARIZED FACTS CREATING A
     STRONG INFERENCE OF SCIENTER .............................................................4

CONCLUSION .....................................................................................................8

DEFENDANT RONALD FORD'S REPLY IN SUPPORT OF HIS MOTION TO DISMISS THE AMENDED COMPLAINT

# TABLE OF AUTHORITIES

**CASES**

*Berry v. Valence Tech., Inc.*,
175 F.3d 699 (9th Cir. 1999) ...................................................................................3

*Brendon v. Allegiant Travel Co.*,
412 F. Supp. 3d 1244 (D. Nev. 2019) ......................................................................5

*Brodsky v. Yahoo! Inc.*,
592 F. Supp. 2d 1192 (N.D. Cal. 2008) ...................................................................5

*Evanston Police Pension Fund v. McKesson Corp.*,
411 F. Supp. 3d 580 (N.D. Cal. 2019) .....................................................................6

*Gordon v. U.S. Bank Nat'l Ass'n*,
No. CV155537DMGPLAX, 2017 WL 6551144 (C.D. Cal. Aug. 28, 2017) ...................................................................................................................3

*In re Am. Funds Sec. Litig.*,
493 F. Supp. 2d 1103 (C.D. Cal. 2007) ...................................................................8

*In re Autodesk, Inc. Sec. Litig.*,
132 F. Supp. 2d 833 (N.D. Cal. 2000) .....................................................................5

*In re Countrywide Fin. Corp. Sec. Litig.*,
588 F. Supp. 2d 1132 (C.D. Cal. 2008) ...................................................................3

*In re Cutera Sec. Litig.*,
610 F.3d 1103 (9th Cir. 2010) .................................................................................4

*In re CytRx Corp. Sec. Litig.*,
No. CV 14-1956-GHK, 2015 WL 5031232 (C.D. Cal. July 13, 2015) .....................3

*In re Downey Sec. Litig.*,
No. CV 08–3261–JFW, 2009 WL 2767670 (C.D. Cal. Aug. 21, 2009) ....................5

*In re Hansen Nat. Corp. Sec. Litig.*,
527 F. Supp. 2d 1142 (C.D. Cal. 2007) ...................................................................6

*In re JDS Uniphase Corp. Sec. Litig*,
238 F. Supp. 2d 1127 (N.D. Cal. 2002) ................................................................7, 8

*In re Rigel Pharm., Inc. Sec. Litig.*,
    697 F.3d 869 (9th Cir. 2012) ......................................................................... 6

*In re Solarcity Corp. Sec. Litig.*,
    274 F. Supp. 3d 972 (N.D. Cal. 2017) ........................................................... 3

*Janus Cap. Grp., Inc. v. First Derivative Traders*,
    564 U.S. 135 (2011) ...................................................................................... 3

*Nguyen v. Endologix, Inc.*,
    962 F.3d 405 (9th Cir. 2020) ......................................................................... 6

*Police Ret. Sys. of St. Louis v. Intuitive Surgical, Inc.*,
    759 F.3d 1051 (9th Cir. 2014) ....................................................................... 5

*Reyes v. Wells Fargo Bank, Nat'l Ass'n*,
    No. EDCV 17-909-JFW(KKX), 2017 WL 11568871 (C.D. Cal. Aug. 17,
    2017) ............................................................................................................. 3

*SG Cowen Sec. Corp. v. U.S. Dist. Court for N. Dist. of CA*,
    189 F.3d 909 (9th Cir. 1999) ......................................................................... 7

*Stichting Pensioenfonds ABP v. Countrywide Fin. Corp.*,
    802 F. Supp. 2d 1125 (C.D. Cal. 2011) ......................................................... 3

*Waterford Twp. Police v. Mattel, Inc.*,
    321 F. Supp. 3d 1133 (C.D. Cal. 2018) ......................................................... 4

*Zucco Partners, LLC v. Digimarc Corp.*,
    552 F.3d 981 (9th Cir. 2009) ......................................................................... 6

**STATUTES**

Private Securities Litigation Reform Act ................................................................*passim*

Securities Exchange Act of 1934
    § 10(b) ........................................................................................................... 7
    § 20(a) ........................................................................................................... 7

DEFENDANT RONALD FORD'S REPLY IN SUPPORT OF HIS MOTION TO DISMISS THE AMENDED COMPLAINT

The feeble claims against Mr. Ford must be dismissed because they do not come close to satisfying the stringent pleading requirements of the PSLRA.[1] Remarkably, Plaintiff did not respond to most of the arguments asserted in Mr. Ford's Motion to Dismiss. Instead, Plaintiff declares in a footnote that all pending motions to dismiss assert "similar arguments" with the only exception being "the time periods for which each Defendant is liable," which according to Plaintiff, need not be "pars[ed]." Opp. at 3 n.2. Not so. Mr. Ford asserted numerous arguments related *solely* to him, and Plaintiff's failure to respond to those arguments constitutes waiver. Nor did Mr. Ford merely dispute "the time period[]" for which he is liable; instead Mr. Ford argued that Plaintiff has not alleged a viable claim against him *at all*. For the reasons herein, the claims against Mr. Ford should be dismissed in their entirety with prejudice.

Plaintiff's claims against Mr. Ford are premised on only three disclosures—none of which is actionable. First, Plaintiff wrongly attributed to Mr. Ford statements made in a 2018 Form 10-K. But as Plaintiff now *admits*, Opp. at 10 n.5, Mr. Ford did not sign that SEC filing. As a result, he did not "make" any statements contained in that filing and, as a matter of law, cannot be held liable for those statements. Nor did Mr. Ford play any role in issuing the 2018 Form 10-K, as he resigned from the Company before it was issued. Second, although Plaintiff attempts to hold Mr. Ford liable for statements made during an Earnings Call, Plaintiff only challenges statements on that Call made by *others*, and—as demonstrated in Mr. Ford's Motion and herein—Mr. Ford cannot be liable for securities fraud based on statements he did not make. Third, Plaintiff contends that the 2017 Form 10-K misled investors about distributors' purchasing patterns. However, the 2017 10-K was issued six months *before* the tariffs were announced, and Plaintiff does not allege that distributors altered their purchasing patterns before the tariffs were announced, let alone that Mr. Ford was aware of any such changes. *Plaintiff failed to respond to any of these arguments*, and the issues are thus now waived. Accordingly, the claims against Mr. Ford should be dismissed for failure to allege an actionable misstatement or omission.

---

[1] Capitalized terms and Exhibits referenced herein are defined in Mr. Ford's Memorandum in Support of his Motion to Dismiss Plaintiff's Amended Complaint for Violations of the Federal Securities laws. The term "Reply" refers to this Reply in support of Mr. Ford's Motion to Dismiss, which hereby incorporates by reference the arguments asserted in the Company's Reply in Support of Motion to Dismiss Plaintiff's Amended Complaint For Violations of the Federal Securities Laws.

DEFENDANT RONALD FORD'S REPLY IN SUPPORT OF HIS MOTION TO DISMISS THE AMENDED COMPLAINT

Additionally, the claims against Mr. Ford fail because Plaintiff did not allege particularized facts showing that Mr. Ford acted with scienter, *i.e.*, an intent to defraud shareholders. Nor can Plaintiff avoid his obligation to plead with factual particularity by lumping all Defendants together, generally accusing unidentified "Defendants" of unspecified fraud, and then slapping Mr. Ford's name on the caption. Such "group pleading" is not permitted under the PSLRA—an issue Plaintiff once again failed to address and is thus now waived.

Moreover, as Plaintiff concedes, an inference of scienter is sufficient *only* if that inference is at least as compelling as the opposing inference of non-fraudulent intent. Opp. at 17. This inherently comparative inquiry requires the court to weigh the strength of competing inferences. Here, Plaintiff relies solely on the fact that Mr. Ford was CFO, signed one SEC filing, and received some RSUs. Such meager allegations could be asserted against almost any CFO of any public company, and thus do not satisfy the strict pleading requirements of securities fraud claims under the PSLRA. The far more compelling inference is that Mr. Ford honestly believed his statements, had no knowledge of the tariffs before they were announced—much less that distributors changed their purchasing patterns based on those unannounced tariffs—and did not intend to defraud shareholders.

The Amended Complaint wholly fails to allege particularized facts showing that Mr. Ford made an actionable misstatement or omission with the intent to defraud shareholders. Accordingly, the claims against Mr. Ford should be dismissed in their entirety with prejudice.

## ARGUMENT

### I. PLAINTIFF FAILS TO ALLEGE MR. FORD MADE A MATERIALLY MISLEADING STATEMENT OR OMISSION

As shown in Mr. Ford's Motion to Dismiss, Plaintiff attempts to base his claims against Mr. Ford on just three disclosures. However, none of those disclosures is actionable, and the claims against Mr. Ford fail as a matter of law.

Plaintiff now admits—as he must—that Mr. Ford did not sign the 2018 Form 10-K, and that he left the Company before that 10-K was even issued. Opp. 10 at n. 5 (admitting Mr. Ford did not sign the 2018 Form 10-K filed March 5, 2019); Am. Compl. ¶ 28 (admitting Mr. Ford resigned in

January 2019). Accordingly, there is *no dispute* that Mr. Ford had *no involvement whatsoever* in the 2018 Form 10-K, and he therefore did not and could not have *made* the statements contained in that document.[2] The claims against him must be dismissed to the extent they are based on that SEC filing. *See Berry v. Valence Tech., Inc.*, 175 F.3d 699, 707 (9th Cir. 1999) (affirming dismissal of claim based on post-resignation statements); *In re Countrywide Fin. Corp. Sec. Litig.*, 588 F. Supp. 2d 1132, 1189 (C.D. Cal. 2008) (dismissing claim based on misstatements after the defendant resigned).

Plaintiff's claims also fail to the extent they are based on the March 6, 2018 Earnings Call because Mr. Ford did not "make" any of the challenged statements on that Call. *See Janus*, 564 U.S. at 142–45; *In re CytRx Corp. Sec. Litig.*, No. CV 14-1956-GHK, 2015 WL 5031232 at * 5–7 (C.D. Cal. July 13, 2015) (applying *Janus*). Instead, the challenged statements were made by *others* during the Earnings Call. Mot. at 6-7; *In re Solarcity Corp. Sec. Litig.*, 274 F. Supp. 3d 972, 1006 (N.D. Cal. 2017). *Plaintiff does not respond to this argument*. As a result, the issue is now waived. *See Stichting Pensioenfonds ABP v. Countrywide Fin. Corp.*, 802 F. Supp. 2d 1125, 1132 (C.D. Cal. 2011) ("[F]ailure to respond in an opposition brief to an argument put forward in an opening brief constitutes waiver or abandonment in regard to the uncontested issue."); *Reyes v. Wells Fargo Bank, Nat'l Ass'n*, No. EDCV 17-909-JFW(KKX), 2017 WL 11568871, at *5 (C.D. Cal. Aug. 17, 2017) (in failing to respond to argument, plaintiff "conceded" the argument); *Gordon v. U.S. Bank Nat'l Ass'n*, No. CV155537DMGPLAX, 2017 WL 6551144, at *4 (C.D. Cal. Aug. 28, 2017) ("[Plaintiff's] Opposition brief did not address this theory of [defendant's] defense at all, and [plaintiff] has therefore waived this argument."), *aff'd*, 741 F. App'x 455 (9th Cir. 2018).

Plaintiff also challenged one statement in the 2017 Form 10-K: "[o]ur distributors carry inventory as needed to meet local or rapid delivery requirements, which varies across our . . . segments." Am. Compl. ¶ 70. Plaintiff argues that the 2017 Form was purportedly misleading because "distributors were not purchasing inventory on an 'as needed' basis" but instead "stocked up on inventory in advance of proposed tariffs." Opp. at 10. Plaintiff is confusing the timeline of

---

[2] *See Janus Cap. Grp., Inc. v. First Derivative Traders*, 564 U.S. 135, 142–45 (2011); *In re CytRx Corp. Sec. Litig.*, No. CV 14-1956-GHK (PJWx), 2015 WL 5031232, at ** 5–7 (C.D. Cal. July 13, 2015) (applying *Janus*).

3

DEFENDANT RONALD FORD'S REPLY IN SUPPORT OF HIS MOTION TO DISMISS THE AMENDED COMPLAINT

events.  As noted in Mr. Ford's Motion, the 2017 Form 10-K was filed six months *before* the U.S. government announced the proposed tariffs and, thus, at least six months *before* distributors purportedly began stocking up on inventory.  Ex. 1, U.S.T.R. Announcement.  Plaintiff does not— and cannot—allege that any distributor changed its purchasing patterns or were "excessive[ly] buying" inventory before the tariffs were announced, let alone that Mr. Ford was aware of any such altered purchase patterns.  Accordingly, Plaintiff fails to allege the 2017 Form 10-K contains a materially false or misleading statement or omission.  ***Plaintiff does not respond to this argument***, and the issue is thus now waived.

Accordingly, Plaintiff has not alleged that Mr. Ford made any actionable misstatement or omission, and the claims against Mr. Ford fail for this (now undisputed) reason.[3]

## II.   PLAINTIFF FAILS TO ALLEGE PARTICULARIZED FACTS CREATING A STRONG INFERENCE OF SCIENTER

As Plaintiff admits, the Amended Complaint must be dismissed unless it pleads facts "with particularity," creating a "strong inference" that Mr. Ford intended to defraud shareholders.  Opp. at 17.  Plaintiff further concedes that to be sufficiently "strong" the inference of scienter must be at least as strong as any inference of non-fraudulent intent.  *Id.*  Yet the Amended Complaint is devoid of any facts—let alone particularized facts—creating a strong inference that Mr. Ford acted with scienter.

***First***, Plaintiff relies on the defunct "group pleading" technique, lumping all defendants together and summarily declaring that "Defendants" acted with fraudulent intent.  But courts in this Circuit routinely reject the group pleading doctrine because the strict pleading requirements of the PSLRA require Plaintiff to allege scienter with respect to ***each*** individual defendant.  Mot. at 9.  Plaintiff ***does not dispute*** this.  Instead, he simply ignores it, thereby waiving the issue.  *Supra* at 3.

---

[3] As noted in the Company's Reply in support of its Motion to Dismiss, the PSLRA also protects "forward-looking statements" that contain "projection of revenues, income (including income loss), earnings (including earnings loss) per share, capital expenditures, dividends, capital structure, or other financial items."  *Waterford Twp. Police v. Mattel, Inc.*, 321 F. Supp. 3d 1133, 1149 (C.D. Cal. 2018) (citing *In re Cutera Sec. Litig.*, 610 F.3d 1103, 1111 (9th Cir. 2010)).  Contrary to Plaintiff's self-serving assertion, Opp. at 16, the Amended Complaint contains no particularized facts showing that any forward-looking statement was made while knowingly false.  *Id.*

4

DEFENDANT RONALD FORD'S REPLY IN SUPPORT OF HIS MOTION TO DISMISS THE AMENDED COMPLAINT

Because Plaintiff fails to allege scienter as to Mr. Ford specifically, the claims against him fail as a matter of law and must be dismissed in their entirety.

*Second*, as shown in Mr. Ford's Motion, his signature on one SEC filing (the 2017 Form 10-K) cannot create an inference of scienter. Instead, where a plaintiff relies on the mere fact that a defendant signed a challenged SEC filing, he must allege with factual particularity that the defendant signed the public filing while knowing it was misleading. Mot. at 9-10 (citing *In re Downey Sec. Litig.*, No. CV 08–3261–JFW, 2009 WL 2767670 (C.D. Cal. Aug. 21, 2009) ("*Downey*"); *Brodsky v. Yahoo! Inc.*, 592 F. Supp. 2d 1192, 1205 (N.D. Cal. 2008)). Indeed, "if it were true that simply alleging that the Individual Defendants' signatures appearing on various [] public filings creates a strong inference of scienter, scienter would be established in every case where there was [an alleged misstatement] made by a publicly traded company, thereby eviscerating the pleading requirements for scienter set forth in the PSLRA." *Downey*, 2009 WL 2767670, at *9 (internal quotations omitted). Here, Plaintiff fails to allege any facts suggesting distributors purchased more inventory than needed six months before the tariffs were even announced—let alone that Mr. Ford had any such knowledge. Plaintiff's attempt to suggest an inference of scienter from Mr. Ford's mere signature on one SEC filing fails as a matter of law. Further, because Plaintiff failed to respond to this argument, he once again waived the issue. *See supra* at 3.

*Third*, as demonstrated in the Company's Motion to Dismiss, it is well-established that Plaintiff cannot establish scienter based on Mr. Ford's position as CFO. *See In re Autodesk, Inc. Sec. Litig.*, 132 F. Supp. 2d 833, 844 (N.D. Cal. 2000) ("[P]laintiffs must do more than allege that [] key officers had the requisite knowledge by virtue of their 'hands on' positions, because that would eliminate the necessity for specially pleading scienter, as any corporate officer could be said to possess the requisite knowledge by virtue of his or her position.").[4] While Plaintiff summarily

---

[4] As shown in the Company's Motion to Dismiss and Reply in support of that motion, Plaintiff also fails to allege scienter through the core operations doctrine. *See Police Ret. Sys. of St. Louis v. Intuitive Surgical, Inc.*, 759 F.3d 1051, 1062-63 (9th Cir. 2014) ("*Intuitive Surgical*") (rejecting plaintiff's reliance on the core operations doctrine and holding that plaintiff failed to plead particularized facts "linking specific reports and their contents to the executives" or linking the witness accounts to specific executives). Plaintiff's lone citation to *Brendon* (Opp. at 21, n.12) does not change this result; unlike here, the plaintiff in that case alleged particularized facts showing that the defendants actually knew about the alleged fraud. *Brendon v. Allegiant Travel Co.*, 412 F. Supp. 3d 1244, 1261 (D. Nev. 2019).

DEFENDANT RONALD FORD'S REPLY IN SUPPORT OF HIS MOTION TO DISMISS THE AMENDED COMPLAINT

declares that Mr. Ford's position gave him "access to information that alerted [him] to the falsity" of his statements, Opp. at 20, this conclusory assertion is devoid of any facts—let alone particularized facts—and is entitled to no weight. *See In re Hansen Nat. Corp. Sec. Litig.*, 527 F. Supp. 2d at 1158–59 (finding the "high rank" of defendants at the company was insufficient to infer scienter).

**Fourth**, the issuance of restricted stock units ("RSUs") cannot support an inference of scienter. Am. Compl. ¶ 145–47; *see In re Rigel Pharm., Inc. Sec. Litig.*, 697 F.3d 869, 884 (9th Cir. 2012); *Zucco Partners, LLC*, 552 F.3d at 1005 ("If simple allegations of pecuniary motive were enough to establish scienter, virtually every company in the United States that experiences a downturn in stock price could be forced to defend securities actions."). The case on which Plaintiff relies confirms the point. As acknowledged in *McKesson*, "it is common for executive compensation, including stock options and bonuses, to be based partly on the executive's success in achieving key corporate goals," and courts thus "generally ***will not conclude*** that there is fraudulent intent merely because a defendant's compensation was based in part on such successes." *Evanston Police Pension Fund v. McKesson Corp.*, 411 F. Supp. 3d 580, 603 (N.D. Cal. 2019) (emphasis added). Although a court might overlook that general rule when a plaintiff alleges "[p]articularized allegations regarding the correlation between the financial results and stock options or cash bonuses," no such correlation is alleged here, since the RSUs were not in any way tied to the alleged fraudulent scheme and Plaintiff has made no attempt to show how the RSUs could have motivated Mr. Ford (or anyone else) to commit fraud. *Id.*; Mot. at 11. Moreover, the Amended Complaint admits that Mr. Ford received a "substantially smaller" RSU grant than the other Defendants, Am. Compl. ¶ 146, further undermining any allegations of scienter with respect to Mr. Ford—a fact Plaintiff continues to ignore.

**Finally**, even if Plaintiff had alleged *some* inference of scienter—which he has not—Plaintiff certainly has not alleged a strong, cogent inference of scienter that is at least as plausible as any inference of non-fraudulent intent, as required by the PSLRA's stringent pleading standards. *See* Mot. at 12; *Nguyen*, 962 F.3d at 414 (to be sufficiently strong, the inference of scienter must be "cogent and at least as compelling as any opposing inference one could draw from the facts

alleged"). Instead, Plaintiff alleges only that Mr. Ford held the position of CFO, signed the 2017 Form 10-K, and received some RSUs (though far fewer than other Defendants). Nothing in those facts suggests fraud. Further, Plaintiff ignores that (i) Mr. Ford left the Company months before the 2018 Form 10-K was filed, (ii) did not make any challenged statements on the Earnings Call or the Form 2018 10-K, and (iii) the 2017 Form 10-K was filed *six months before* the U.S. government announced the tariffs and just *one month after* the Company announced the launch of the go-to-market strategy, and no facts show Mr. Ford could predict the impact of either of those initiatives. Plaintiff's generic and conclusory allegations do not give rise to a strong inference of scienter, and the far more compelling inference to draw is that Mr. Ford was not secretly perpetrating a fraud on investors for which he received no benefit. Plaintiff's claims against Mr. Ford fail in their entirety and should be dismissed.[5]

Attempting to avoid dismissal with prejudice, Plaintiff half-heartedly suggests that the Court should lift the PSLRA's mandatory stay of discovery so that Plaintiff can buttress his insufficient allegations with information obtained through discovery. Opp. at 23. However, the PSLRA was specifically designed to prevent plaintiffs from seeking discovery for that purpose. Instead, as explained by the Ninth Circuit, the automatic stay of discovery "clearly contemplates that 'discovery should be permitted in securities class actions *only after the court has sustained the legal sufficiency of the complaint*." *SG Cowen Sec. Corp. v. U.S. Dist. Court for N. Dist. of CA*, 189 F.3d 909, 913 (9th Cir. 1999) (emphasis added in original) (quoting S.Rep. No. 104–98, at 14 (1995) reprinted in U.S.C.C.A.N. 693). Although an exception can be made where the plaintiff establishes "undue prejudice," such as the need to preserve evidence, the "failure to muster facts sufficient to meet the [PSLRA's] pleading requirement's cannot constitute the requisite 'undue prejudice' to the plaintiff justifying a lift of the discovery stay." *Id.* Here, Plaintiff identifies no prejudice except for his desire to lift the stay so that he can meet his pleading obligations.[6] That is precisely the type of

---

[5] Plaintiff's "control person" claims against Mr. Ford under § 20(a) fail because Plaintiff has not alleged a primary violation under § 10(b). *See* Mot. at 12 n.6.

[6] The case on which Plaintiff relies, *In re JDS Uniphase Corp. Sec. Litig*, 238 F. Supp. 2d 1127 (N.D. Cal. 2002), did not involve a request to lift the stay of discovery mandated by the PSLRA nor involve scienter. In fact, the court in that case expressly confirmed that "[b]y filing this motion [] plaintiffs are *not* seeking discovery." *Id.* at 1133 (emphasis added). Rather than seeking discovery, the plaintiffs argued that certain provisions within confidentiality agreements with defendants'

discovery the PSLRA prohibits. *See e.g., In re Am. Funds Sec. Litig.*, 493 F. Supp. 2d 1103, 1105 (C.D. Cal. 2007) (no undue prejudice where there was no need to preserve evidence or other exceptional circumstances).

## CONCLUSION

For the foregoing reasons, Defendant Ronald Ford respectfully requests that the Court dismiss with prejudice all claims asserted against Mr. Ford.

Dated: November 2, 2020                     Respectfully submitted,


                                            DECHERT LLP


                                            /s/ David H. Kistenbroker _____
                                            David H. Kistenbroker (*admitted pro hac vice*)
                                            Joni S. Jacobsen (*admitted pro hac vice*)
                                            Melanie C. MacKay (*admitted pro hac vice*)
                                            Anna Do

                                            *Counsel for Ronald Ford*

---

former employees violated public policy. The court narrowly ruled that plaintiffs could ask former employees of the defendant company to voluntarily answer a specific list of predetermined questions. In contrast, Plaintiff is complaining about his inability to get employees of a non-party company to cooperate with his lawyers and suggesting that this inability somehow raises an inference of scienter. The court's opinion in *In re JDS* is thus inapposite.

8

DEFENDANT RONALD FORD'S REPLY IN SUPPORT OF HIS MOTION TO DISMISS THE AMENDED COMPLAINT