SHEPPARD, MULLIN, RICHTER & HAMPTON LLP
  A Limited Liability Partnership
  Including Professional Corporations
DAVID A. SCHWARZ, Cal. Bar No. 159376
dschwarz@sheppardmullin.com
JOHN M. LANDRY, Cal. Bar No. 194374
jlandry@sheppardmullin.com
CHUNG H. CHAN, Cal. Bar. No. 328854
333 South Hope Street, 43rd Floor
Los Angeles, California 90071-1422
Telephone:  213.620.1780
Facsimile:   213.620.1398

Attorneys for DONALD MAIER

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION

| | |
|---|---|
| MICHAEL CHUPA, Individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>ARMSTRONG FLOORING, INC., MICHEL VERMETTE, DONALD MAIER, LARRY McWILLIAMS, DOUGLAS BINGHAM, DOMINIC RICE, and RONALD FORD,<br><br>Defendants. | Case No. 2:19-cv-09840-CAS<br><br>**DEFENDANT DONALD MAIER'S REPLY IN SUPPORT OF MOTION TO DISMISS THE AMENDED COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS**<br><br>The Hon. Christina A. Snyder<br><br>Hearing Date:      December 7, 2020<br>Hearing Time:     10:00 a.m.<br>Courtroom:          8D |

-1-

DEFENDANT MAIER'S REPLY ISO MOTION TO DISMISS THE AMENDED COMPLAINT

# **TABLE OF CONTENTS:**

TABLE OF AUTHORITIES ........................................................................................3

I. INTRODUCTION ...............................................................................................5

II. ARGUMENT ......................................................................................................6

A.   Plaintiff Never Addresses The AC's Failure To Allege How Mr. Maier's Statements Were False Or Misleading At The Time They Were Made. ................6

1.   Mr. Vermette's March 3, 2020 Statements Concerning The "Go-to-Market" Strategy Do Not Demonstrate That Statements Made By Mr. Maier More Than One Year Earlier Were False When Made. .....................................6

2.   Plaintiff Fails To Address Deficiencies In Allegations Regarding Distributor Pre-Buying. ......................................................................................8

B.   Plaintiff Fails To Address Deficiencies In The AC's Purported Scienter Allegations. .........................................................................................................10

1.   Plaintiff's Boilerplate Scienter Allegations Fail. ......................................10

2.   Alleged Earning Call Statements Do Not Show Scienter. ........................10

3.   Allegations Concerning Mr. Maier's 2019 Pro-Rated Bonus And RSU Grant Continue To Fall Short. ..........................................................................12

III. CONCLUSION................................................................................................14

SMRH:4848-1059-9119.8
DEFENDANT MAIER'S REPLY ISO MOTION TO DISMISS THE AMENDED COMPLAINT

# TABLE OF AUTHORITIES

Page(s)

Cases

*City of Miami Gen. Employees' & Sanitation Employees' Ret. Tr. V. RH, Inc*
302 F. Supp. 3d 1028 (N.D. Cal. 2018)...............................................................7

*Evanston Police Pension Fund v. McKesson Corp.*
411 F. Supp. 3d 580 (N.D. Cal 2019)................................................................13

*In re Extreme Networks, Inc., Securities Litigation*
2018 WL 1411129 (N.D. Cal., Mar. 21, 2018) ....................................................8

*In re Leapfrog Enterprise, Inc. Securities Litigation*
200 F.Supp.3d 987 (N.D. Cal. 2006)..............................................................9, 10

*In re Read-Rite Corp. Sec. Litig.*
335 F.3d 843 (9th Cir. 2003) ...............................................................................7

*In re Rigel Pharms., Inc. Sec. Litig.*
697 F.3d 869 (9th Cir. 2012) .............................................................................12

*In re Vantive Corp. Sec. Litig.*
283 F.3d 1079 (9th Cir. 2002)..........................................................................7, 9

*Lipton v. Parthogenesis Corp.*
284 F.3d 1027 (9th Cir. 2002)...........................................................................11

*Metzler Inv. GMBH v. Corinthian Colleges, Inc.*
540 F.3d 1049 (9th Cir. 2008).............................................................................6

*Roberts v. Zuora, Inc.*
2020 WL 204244 (N.D. Cal., Apr. 28, 2020)......................................................8

*Ronconi v. Larkin*
253 F.3d 423 (9th Cir. 2001) .....................................................................7, 8, 11

*Tellabs, Inc. v. Makor Issues & Rights Ltd.*
551 U.S. 308 (2007) .............................................................................................7

-3-

DEFENDANT MAIER'S REPLY ISO MOTION TO DISMISS THE AMENDED COMPLAINT

*Zucco Partners, LLC v. Digimarc Corp.*
   552 F.3d 981,1004 (9th Cir. 2009) ........................................................................ 12

Statutes

15 U.S.C. § 78u-4 ................................................................................................... 6

-4-

## I.  INTRODUCTION

As explained in Defendant Donald Maier's opening memorandum in support of his motion to dismiss ("Open. Mem."), the Amended Complaint (the "AC") fails to plead facts sufficient to allege that his statements were false or misleading when made, or that he acted with scienter at the time he made these statements.  Plaintiff's omnibus opposition ("Opp.") largely avoids addressing these arguments.  Instead, the opposition does little more than regurgitate allegations from the AC which, no matter how many times repeated, still fall short of satisfying the pleading requirements to survive a motion to dismiss.

Nor does Plaintiff acknowledge what is evident on the face of his own complaint: The purported theory of liability (*i.e.* the concealment of the financial impact of distributor pre-buying in 2018 and the failure of the "go-to-market" strategy) is directly at odds with the initial complaint's channel stuffing theory and with Plaintiff's continued assertion that "Defendants were aware they were flooding the sales channel with inventory well over customer demand." (*See* Opp. at p. 18.) Plaintiff never addresses the irreconcilable tension between these two conflicting theories, both of which Plaintiff continues to embrace.  (*See* Open. Mem. at pp. 8-9.) Plaintiff's opposition avoids confronting Mr. Maier's plausibility challenge and, in doing so, concedes it.

What is clear from Plaintiff's opposition is that he seeks to hold Mr. Maier accountable for events which occurred and disclosures made long after he left Armstrong Flooring, Inc. ("AF" or the "Company") on May 2, 2019.  Plaintiff offers no plausible theory which would hold Mr. Maier liable for statements or decisions alleged to have been made well after Mr. Maier left the Company.  Plaintiff's theory goes beyond improper fraud by hindsight pleading – it attempts to hold Mr. Maier accountable for events which occurred up to almost a full calendar year after his departure from AF, when Mr. Vermette made statements on March 3, 2020 relating

SMRH:4848-1059-9119.8

to a review of AF's "go-to-market" strategy, initiated months after Mr. Maier's departure.

While Mr. Maier is confident that Plaintiff will not be able to craft an intelligible theory of liability as to his statements or conduct (even with another shot at filing an amended complaint), he is certain that this complaint fails to satisfy the basic requirements of pleading fraud, let alone the more exacting demands of the PSLRA, 15 U.S.C. § 78u-4.

## II.    ARGUMENT

**A.    Plaintiff Never Addresses The AC's Failure To Allege How Mr. Maier's Statements Were False Or Misleading At The Time They Were Made.**

In his motion to dismiss, Mr. Maier explained why the AC fails to satisfy the "exacting requirements of pleading 'falsity.'" *Metzler Inv. GMBH v. Corinthian Colleges, Inc.,* 540 F.3d 1049, 1070 (9th Cir. 2008).  Plaintiff  refuses to engage in any substantive response to these arguments.  Instead, he continues to baldly assert that Mr. Maier's statements concerning the Company's "go-to-market" strategy were false or misleading (Opp. at pp. 7:5-9:22), or that the Company's Form 10-Ks misrepresented AF's distributors as purchasing inventory "as needed."  (Opp. at p.11:7-19.)  These conclusory assertions fall far short of meeting the PSLRA's demanding pleading requirements.[1]

> **1.    Mr. Vermette's March 3, 2020 Statements Concerning The "Go-to-Market" Strategy Do Not Demonstrate That Statements Made By Mr. Maier More Than One Year Earlier Were False When Made.**

[1] Plaintiff argues that some of Mr. Maier's statements are neither puffery nor forward-looking in nature (Opp. at pp. 11-17.)  Those arguments fail for the reasons set forth in AF's reply in support of its motion to dismiss.  (Armstrong Flooring Inc.'s Reply i/s/o/ Motion to Dismiss Amended Complaint for Violations of the Federal Securities Laws ["AF Reply"] at pp. 9-14.)  In any event, Plaintiff's arguments do not remedy his failure to plead falsity under the PSLRA.

-6-

DEFENDANT MAIER'S REPLY ISO MOTION TO DISMISS THE AMENDED
COMPLAINT

Plaintiff's opposition focuses on the following alleged earnings call statements by Mr. Maier (on May 8, 2018, November 6, 2018, and March 5, 2019, respectively): "[AF] began to allocate more of [its] marketing spend to commercial and national accounts" (AC ¶ 90); "in 2018 [AF] completed [its] go-to-market pivot, which has allowed [it] to allocate more of [its] marketing and sales efforts on commercial and national accounts" was false when made (AC ¶ 99); and AF was "working very closely with [its] distributors" and making "good progress" (AC ¶ 79).  To show the falsity of each statement, the opposition relies exclusively on Defendant Vermette's alleged March 3, 2020 earnings call statement, made almost a full year after Mr. Maier left the Company, that AF had only a few persons dedicated to calling on commercial and national accounts and that distributors were given marketing roles for which they were not suited.  (Opp. at p. 8:4-25.)

This is textbook "fraud by hindsight" pleading.  *In re Vantive Corp. Sec. Litig.*, 283 F.3d 1079, 1084-85 (9th Cir. 2002), *abrogated on other grounds by Tellabs, Inc. v. Makor Issues & Rights Ltd.,* 551 U.S. 308 (2007); *see also In re Read-Rite Corp. Sec. Litig.,* 335 F.3d 843, 848 (9th Cir. 2003), *abrogated on other grounds by Tellabs,* 551 U.S. 308 ("It is clearly insufficient for plaintiffs to say that a later, sobering revelation makes an earlier, cheerier statement a falsehood").  The opposition points to no factual allegation in the AC showing Mr. Vermette's alleged March 3, 2020 statement referred to a state of affairs which existed during Mr. Maier's much earlier tenure and therefore fails to "specify facts or evidence that show why [any] statement was *false at the time it was made.*"  *See Ronconi v. Larkin,* 253 F.3d 423, 431 (9th Cir. 2001) (emphasis added).

Plaintiff's cited authorities are easily distinguishable.  In *City of Miami Gen. Employees' & Sanitation Employees' Ret. Tr. V. RH, Inc.*, the complaint alleged contemporaneous facts showing that, contrary to the defendant's statements that "inventory growth" was intended, it was "the result of… product returns stemming from persistent quality issues."  *City of Miami,* 302 F. Supp. 3d 1028, 1039-1041

(N.D. Cal. 2018) (emphasis in original). In *Roberts v. Zuora, Inc.,* the court held that the plaintiff sufficiently alleged that defendants' optimistic statements of belief were misleading because the complaint showed defendants lacked "a reasonable basis to believe" the statements at the time they were made. *Roberts v. Zuora, Inc.,* 2020 WL 204244 at \*9-\*10 (N.D. Cal., Apr. 28, 2020). The plaintiff in *In re Extreme Networks, Inc. Securities Litigation*, 2018 WL 1411129 (N.D. Cal., Mar. 21, 2018) "adequately alleged that the situation on the ground quickly deteriorated" for the defendants at the time it made certain statements that an integration plan was "on track" and "ahead of plan," thus rendering them false or misleading. *In re Extreme Networks, Inc., Securities Litigation*, 2018 WL 1411129 at \*17-18. Unlike the complaints upheld in these cases, the AC never alleges facts showing a statement by Mr. Maier was in fact false or misleading when made.

**2.** **Plaintiff Fails To Address Deficiencies In Allegations Regarding Distributor Pre-Buying.**

In his opposition, Plaintiff continues to argue that AF's Form 10-K statements that AF distributors carried inventory "as needed to meet local or rapid delivery requirements" (AC ¶ 70, 101) were false because distributors "had substantially stocked up on inventory in advance of proposed tariffs and could not sell those goods." (Opp. at p. 10:2-10.)[2] Plaintiff fails to point to any alleged, particularized fact showing how distributors' buying behavior during the Class Period was "necessarily inconsistent" with the statement that distributors carried inventory "as needed." *Ronconi*, 253 F.3d at 432 (citing *Yourish v. California Amplifier*, 191 F.3d 983 (9th Cir. 1999)). Plaintiff also focuses on statements made by individuals other than Mr. Maier regarding AF's guidance and distributors' "work down" of inventory

---

[2] As explained in Mr. Maier's opening memorandum, AF disclosed the fact that distributor pre-buying activity in light of tariff uncertainty could affect 2019 sales in its 2018 Form 10-K. (Open. Mem. at pp. 14:25-15:4.)

-8-

DEFENDANT MAIER'S REPLY ISO MOTION TO DISMISS THE AMENDED COMPLAINT

levels, but those statements were made after Mr. Maier left AF.  (Opp. at pp. 10:11-11:6.)  Such statements concerning events which materialized after Mr. Maier left AF cannot show how Mr. Maier's statements about distributor inventory levels were false or misleading when made.

Plaintiff struggles to articulate how AF's distributors, by pre-buying ahead of potential tariffs, were no longer buying inventory "as needed."  (AC ¶ 70.)  At one point, Plaintiff argues that distributors "stocked up on inventory" which they "could not sell."  (Opp. at p. 10:7-10.)  Then, Plaintiff argues that the statements in AF's Form 10-K's were false or misleading because distributors were "no longer carrying the amount of inventory required to meet their *immediate needs*."  (Opp. at p. 11:7-19) (emphasis added).  Plaintiff himself cannot decide whether he believes that AF's distributors were buying inventory that could not be resold at all, or could only be resold over some unspecified period of time, thus revealing that their allegations lack the "particularity" required to survive a motion to dismiss under the PSLRA.  *In re Vantive Corp.,* 283 F.3d at 1085.[3]

Plaintiff also attempts to sidestep other statements in the 2018 Form 10-K disclosing elevated distributor inventory levels due to tariffs, the potential impact on first quarter 2019 sales, and the continued uncertainty around tariffs.   (Opp. at p.11:7-19 (stating that this "misses the point").)  But in pleading a violation, a securities plaintiff cannot mischaracterize a disclosure by focusing only on one aspect of it.  *In re Leapfrog Enterprise, Inc. Securities Litigation,* 200 F.Supp.3d 987 (N.D. Cal. 2006), for example, plaintiffs alleged that the defendants made misleading statements regarding the level of "carryover inventory at [the defendant's] retailers that required discounts to sell," thereby concealing its future impact.  *Leapfrog,* 200 F.Supp.3d at 1002.  The court held that plaintiff failed to plead falsity, in part because defendants

---

[3] There is no allegation that distributors did not want to purchase what they purchased, or returned the products after the close of a given quarter, or failed to re-sell pre-bought product to customers.

-9-

also issued "public acknowledgments of the hang-over inventory problem" that "put the alleged misleading disclosures in context." *Id.* at 1002-1003.

Like the alleged misstatements in *Leapfrog,* the 2018 Form 10-K statement challenged by Plaintiff was accompanied by a specific statement alerting investors to the distributors' tariff-induced, elevated inventory levels, and their potential impact on first quarter 2019 sales. This disclosure placed the statement regarding distributors buying product "as needed" in complete, up-to-date context. Plaintiff's efforts to ignore this disclosed context mischaracterizes the 2018 Form 10-K. (*See* AF's Memorandum of Points and Authorities i/s/o/ Its Motion to Dismiss ["AF Motion"], pp. 9:21-10:14.)[4]

**B.     Plaintiff Fails To Address Deficiencies In The AC's Purported Scienter Allegations.**

**1.     Plaintiff's Boilerplate Scienter Allegations Fail.**

Plaintiff points to generalized allegations in the AC he claims show the go-to-market strategy's "critical" importance to AF as a "core operation." (Opp. at p. 19.) He also points to the individual defendants' ability to "repeatedly answer[] analyst questions regarding the Go-To-Market Strategy and distributor inventory," and notes that each held senior positions at AF, and so presumably had access to information. (Opp. at 20.) These weak, boilerplate allegations, whether viewed standing alone or collectively, fail to show scienter as to any defendant, including Mr. Maier, for all the reasons set forth in AF's Memorandum of Points and Authorities i/s/o Its Motion to Dismiss. (AF's Motion at pp. 20-23.)

**2.     Alleged Earning Call Statements Do Not Show Scienter.**

---

[4] To the extent Plaintiff claims that AF's 2018 Form 10-K failed to alert investors to the impact that elevated inventory levels would have on other future quarters (*see* Opp. at p. 9:16-19), Plaintiff cites to no authority under the securities laws for such disclosure nor does he allege facts showing that defendants had access to information that would have reasonably allowed such a prediction.

-10-

Plaintiff insists the AC shows Mr. Maier knew on November 6, 2018 that the level of distributor pre-buying in the third quarter of 2018 would affect sales throughout all of 2019. (Opp. at p. 18.)  But Plaintiff does nothing more than continue to point to out-of-context snippets of an earnings call statement Mr. Maier made that day. (*Id.*)  Mr. Maier, however, has already shown his statement concerned the level of AF's own internal orders and purchases from AF's suppliers in China before the late September 2018 tariff went into effect, and it was those orders he declined to quantify. (*See* Open. Mem. at p. 18.)  Even assuming Mr. Maier did know the quantity of pre-bought product AF's distributors had stockpiled, no allegation shows he had access to any additional data that would have enabled him to conclude that distributors would require all of 2019 to sell down pre-bought AF product.  Hence, the AC does not meet the PSLRA's scienter standard as applied in *Ronconi* and *Lipton v. Parthogenesis Corp.  Ronconi v. Larkin*, 253 F.3d at 432; *Lipton v. Parthogenesis Corp.*, 284 F.3d 1027, 1035 (9th Cir. 2002).

Plaintiff also points to a statement by Defendant McWilliams on the May 3, 2019 earnings call (the day after Mr. Maier allegedly left AF) wherein he allegedly stated that 2018 elevated distributor inventory levels had impacted first quarter 2019 sales, as defendants "expected." (Opp. at p. 18.)  But as has already been shown, this alleged statement was not made by Mr. Maier and the AC never identifies Mr. Maier as among those to whom Defendant McWilliams was referring as having had this expectation. (*See* Open. Mem. at p. 19 n. 4.)  But even assuming Mr. Maier himself in fact formed the alleged expectation at some point before the end of the first quarter of 2019, the AC alleges no facts suggesting it occurred before any statement by Mr. Maier (the last of which was allegedly made on March 5, 2019).  These points were advanced by Mr. Maier in his opening memorandum.  Plaintiff simply ignores them because he has no answer to them.

Lastly, Plaintiff points to the AC's allegation that Mr. Maier remarked on the March 5, 2019 earnings call that AF had  "a realignment of our sales and marketing

-11-

DEFENDANT MAIER'S REPLY ISO MOTION TO DISMISS THE AMENDED COMPLAINT

efforts to focus more heavily on commercial and national accounts in 2018." (Open. Mem. at p. 18 (quoting AC ¶ 67).)  He contends Mr. Maier at the time "knew or recklessly disregarded that Armstrong Flooring only had one person calling on commercial national accounts and one person calling on 13,000 independent retailers." (Opp. at p. 18-19 (citing AC ¶ 69).)  Beyond pointing to a statement made almost a full year after Mr. Maier left, Plaintiff provides no facts supporting this bald assertion.  Plaintiff's attempt to establish scienter through Mr. Vermette's March 3, 2020 statement fails because that later statement concerning the "go-to-market" strategy speaks to the results of a business review initiated around September 2019 (*after* Mr. Maier's departure), and therefore has no bearing on Mr. Maier's state of mind in March 2019.  (*See* Declaration of Zachary M. Faigen i/s/o AF's Request for Judicial Notice, Ex. 12 at 5 [Mar. 3, 2020 Earnings Call] ("Over the past 6 months, we have thoroughly reviewed our business and strategic direction…").)  Plaintiff refuses to confront the AC's failure to plead facts showing Mr. Maier possessed this knowledge at any relevant point in time.

### 3.   Allegations Concerning Mr. Maier's 2019 Pro-Rated Bonus And RSU Grant Continue To Fall Short.

Plaintiff argues Mr. Maier was "uniquely motivated to misrepresent Armstrong Flooring's prospects," specifically pointing to the "substantial" (pro-rated) 2019 bonus Mr. Maier allegedly received upon leaving AF before the end of 2019.  (Opp. at 21.)   But Plaintiff points to no alleged facts showing the required "strong correlation" between this pro-rated bonus and any performance condition or metric relevant to a misstatement Mr. Maier allegedly made.  S*ee Zucco Partners, LLC v. Digimarc Corp.*, 552 F.3d 981,1004 (9th Cir. 2009) (requiring particularized facts showing compensation "principally based" on performance metric relevant to the alleged misstatement); *see also In re Rigel Pharms., Inc. Sec. Litig.*, 697 F.3d 869, 864 (9th Cir. 2012) (observing that "it is common for executive compensation, including stock options and bonuses, to be based partly on the executive's success in

-12-

achieving key corporate goals . . . . we will not conclude that there is fraudulent intent merely because a defendant's compensation was based in part on such successes"). The AC's bare-bones, non-particularized, executive compensation allegations do not show scienter.[5]

Plaintiff also asserts that, to obtain the pro-rated 2019 bonus, "Maier strategically left the Company prior to the end of 2019, likely because the overselling of inventory in 2018 and the failure to invest in marketing to commercial and national accounts doomed Armstrong Flooring's financial performance for 2019." (Opp. at pp. 21-22.) This has no factual basis and is pure speculation. It also has no bearing on the scienter issue because nothing in the AC suggests that Mr. Maier, at the time he made any alleged misstatement, contemplated leaving his CEO position in order to collect a bonus.[6]

---

[5] The allegations here stand in sharp contrast to those in *Evanston Police Pension Fund v. McKesson Corp.*, 411 F. Supp. 3d 580 (N.D. Cal 2019), a case on which Plaintiff relies. There, the individual defendants allegedly misreported yearly financial results and the complaint identified "specific stock and cash award multipliers" that tied their compensation to the company's financial performance for the years in question, and showed this extra compensation "far outstripped the individuals' base salaries." *Id.* at 603. Nothing approaching that is alleged here. Indeed, the AC alleges no facts about the components of the 2019 pro-rated bonus, much less facts linking it to a relevant performance condition or metric associated with any alleged misstatement.

[6] Plaintiff also claims Mr. Maier was "motivated to commit fraud as [he] stood to receive substantial compensation from [his] special retention time-based restricted stock units ("RSUs"), which [he] received in connection with the shift to the Go-To-Market Strategy." (Opp. at p. 22.) But as Mr. Maier has already shown, no allegation links Mr. Maier's RSU grant to the success of the go-to-market strategy or its implementation. (*See* Open. Mem. at pp. 21:22-22:3.) Indeed, Plaintiff concedes the RSU grant was not performance-based. (*See* Opp. at p. 22.) This is fatal to his effort to base Mr. Maier's scienter on the RSU grant.

-13-

DEFENDANT MAIER'S REPLY ISO MOTION TO DISMISS THE AMENDED COMPLAINT

## III.   CONCLUSION

For the foregoing reasons, this Court should grant defendant Donald Maier's motion to dismiss the AC, without leave to amend.

Dated:  November 2, 2020

By     *&#47;s/David A. Schwarz*
             DAVID A. SCHWARZ
             JOHN M. LANDRY
             CHUNG H. CHAN

             Attorneys for DONALD MAIER

-14-

## CERTIFICATE OF SERVICE

At the time of service, I was over 18 years of age and not a party to this action.  On November 2, 2020, I served true and correct copies of the foregoing document, by posting the document electronically to the ECF website of the United States District Court for the Central District of California, for receipt electronically by the parties listed on the Court's Service List.

I affirm under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on November 2, 2020, at Torrance, California.

/s/Elisabeth Walters
Elisabeth Walters

-15-

SMRH:4848-1059-9119.8

DEFENDANT MAIER'S REPLY ISO MOTION TO DISMISS THE AMENDED COMPLAINT