**THE WAGNER FIRM**
Avi Wagner (Cal Bar. No. 226688)
1925 Century Park East, Suite 2100
Los Angeles, CA 90067
Telephone: 310-491-7949
Facsimile: 310-694-3967
*Liaison Counsel for*
*Lead Plaintiff Randy Marker*

(*Additional Counsel on signature page*)

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION

| | |
|---|---|
| MICHAEL CHUPA, Individually and on behalf of all others similarly situated, <br><br> Plaintiff, <br><br> v. <br><br> ARMSTRONG FLOORING, INC., et al., <br><br> Defendants. | Case No. 2:19-cv-09840-CAS-MRW <br><br> **CLASS ACTION** <br><br> **MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF LEAD PLAINTIFF'S UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF SETTLEMENT, PRELIMINARY CERTIFICATION OF SETTLEMENT CLASS, AND APPROVAL TO PROVIDE NOTICE TO THE CLASS** <br><br> Judge:  Hon. Christina A. Snyder <br> Courtroom 8D – 8th Floor <br> Hearing Day: Feb. 22, 2021 <br> Hearing Time: 10:00 AM |

# TABLE OF CONTENTS

PRELIMINARY STATEMENT ...................................................................................1

FACTUAL AND PROCEDURAL BACKGROUND ......................................................2

   I.   Procedural History of the Case.................................................................2

   II.   Negotiation of the Settlement and the Terms of the Proposed Settlement ...............3

ARGUMENT ..........................................................................................................3

   I.   Standards for Preliminary Approval of the Settlement ..............................................3

   II.   Notice Is Warranted as the Settlement Is Fair, Reasonable and Adequate Pursuant to Rule 23(e)(2) ......................................................................................................5

     A.   Lead Plaintiff and Lead Counsel Adequately Represented the Class.....................5

     B.   The Settlement Was Negotiated at Arm's-Length.....................................................7

     C.   The Relief Provided by the Settlement Is Adequate ...............................................7

     D.   Class Members Are Treated Equitably Relative to One Another........................12

   III.   Preliminary Certification of the Settlement Class ..................................................13

     A.   The Settlement Class Meets the Requirements of Rule 23(a) .............................13

     B.   The Settlement Class Meets the Requirements of Rule 23(b)(3) – Predominance and Superiority...............................................................................................................16

   IV.   The Notice Program Satisfies Rule 23, Due Process and the PSLRA Requirements.........................................................................................................17

   V.   Proposed Settlement Schedule ..............................................................................20

CONCLUSION.........................................................................................................21

**TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*Affiliated Ute Citizens of Utah v. United States*,
406 U.S. 128 (1972) .................................................................................................16

*Amchem Prods., Inc. v. Windsor*,
521 U.S. 591 (1997) .................................................................................................16

*Azar v. Blount Intl., Inc.*,
3:16-CV-0483-SI, 2019 WL 7372658 (D. Or. Dec. 31, 2019) .........................12

*Basic v. Levinson*,
485 U.S. 224 (1988) .................................................................................................16

*Blackie v. Barrack*,
524 F.2d 891 (9th Cir. 1975) .................................................................................14

*Cheng Jiangchen v. Rentech, Inc.*,
CV 17-1490-GW(FFMX), 2019 WL 5173771 (C.D. Cal. Oct. 10, 2019) .....................12

*City of Sunrise Gen. Emp. Ret. Plan v. FleetCor Techs., Inc.*,
Civ. A. No. 1:17-cv-02207-LMM (N.D. Ga. Mar. 24, 2020) ...........................1

*Ciuffitelli v. Deloitte & Touche LLP*,
2019 WL 1441634 (D. Or. Mar. 19, 2019) .......................................................12

*Deaver v. Compass Bank*,
No. 13-cv-00222-JSC, 2015 WL 8526982 (N.D. Cal. Dec. 11, 2015).............................12

*Graham v. Capital One Bank (USA), N.A.*,
No. SACV13743JLSJPRX, 2014 WL 12579809 (C.D. Cal. July 29, 2014).................18

*Hanlon v. Chrysler Corp.*,
150 F.3d 1011 (9th Cir. 1998).................................................................................14

*Hefler v. Wells Fargo & Co.*,
2018 WL 6619983 (N.D. Cal. Dec. 18, 2018) ....................................................7

*Howell v. JBI, Inc.*,
   298 F.R.D. 649 (D. Nev. 2014) ...................................................................................13

*In re Advanced Battery Techs., Inc. Sec. Litig.*,
   298 F.R.D.  171 (S.D.N.Y. 2014)................................................................................18

*In re Am. Honda Motor Co., Inc.*,
   No. CV06-1301-CAS(PLAX), 2009 WL 1204495 (C.D. Cal. Apr. 17, 2009) ..............19

*In re Banc of California Sec. Litig.*,
   2019 WL 6605884 (C.D. Cal. Dec. 4, 2019) ................................................................7

*In re Comput. Memories Sec. Litig.*,
   111 F.R.D. 675 (N.D. Cal. 1986) ...............................................................................14

*In re HP Sec. Litig.*,
   No. 12-cv-05980-CRB, 2015 WL 4477936 (N.D. Cal. July 20, 2015) ...................17, 18

*In re Mego Fin. Corp. Sec. Litig.*,
   213 F.3d 454 (9th Cir. 2000)......................................................................................15

*In re NVIDIA Corp. Derivative Litig.*, No. 06-cv-06110-SBA (JCS),
   2008 WL 5382544 (N.D. Cal. Dec. 22, 2008) ..............................................................6

*In re Omnivision Techs., Inc.*,
   559 F. Supp. 2d 1036 (N.D. Cal. 2008) .........................................................................8

*In re Portal Software, Inc. Sec. Litig.*,
   No. 03-cv-5138 VRW, 2007 WL 1991529 (N.D. Cal. June 30, 2007) ..........................7

*In re Silver Wheaton Corp. Sec. Litig.*,
   No. 2:15-cv-05146-CAS(PJWx) (C.D. Cal. Mar. 9, 2020) ....................................10, 17

*In re Syncor ERISA Litig.*,
   227 F.R.D. 338 (C.D. Cal. 2005) ................................................................................14

*In re Syncor ERISA Litig.*,
   516 F.3d 1095 (9th Cir. 2008)...................................................................................3, 4

*Lane v. Facebook, Inc.*,
   696 F.3d 811 (9th Cir. 2012)......................................................................................17

*Larsen v. Trader Joe's Co.*,
   11-CV-05188-WHO, 2014 WL 3404531 (N.D. Cal. July 11, 2014).................................4

*Lo v. Oxnard European Motors, LLC*,
   No. 11-cv-1009 JLS (MDD), 2011 WL 6300050 (S.D. Cal. Dec. 15, 2011) .................10

*McCurley v. Royal Seas Cruises, Inc.*,
   No. 17- CV-00986-BAS-AGS, 2019 WL 3817970 (S.D. Cal. Aug. 14, 2019)..............18

*McPhail v. First Command Fin. Planning, Inc.*,
   No. 05-cv-179-IEG-JMA, 2009 WL 839841 (S.D. Cal. Mar. 30, 2009)........................8

*McPhail v. First Command Fin. Planning, Inc.*,
   247 F.R.D. 598 (S.D. Cal. 2007)..................................................................................17

*Mullane v. Cent. Hanover Bank & Tr. Co.*,
   339 U.S. 306 (1950) .....................................................................................................18

*Tsirekidze v. Syntax-Brillian Corp.*,
   No. CV-07-02204-PHX-FJM, 2009 WL 2151838 (D. Ariz. July 17, 2009).................14

*Vizcaino v. Microsoft Corp.*,
   290 F.3d 1043 (9th Cir. 2002).....................................................................................12

*Wood v. Ionatron, Inc.*,
   No. CV 06-354-TUC-CKJ, 2009 WL 10673479 (D. Ariz. Sept. 28, 2009) ....................4

**Statutes**

15 U.S.C. § 78u-4(a)(7)(A)-(F)...........................................................................................19

15 U.S.C.§ 78u-4(a)(3)(B)(v) .............................................................................................15

**Rules**

Fed. R. Civ. P. 23 ............................................................................................*passim*

**Other Authorities**

*Manual for Complex Litigation* §21.633 ............................................................................19

## PRELIMINARY STATEMENT

Lead Plaintiff respectfully submits that the Settlement is a very favorable result for the Settlement Class, and should be preliminarily approved by the Court. The Settlement provides a recovery of $3,750,000 in cash to resolve all claims in this Action.[1]

Lead Plaintiff seeks preliminary approval of the Settlement so that notice may be provided to the Settlement Class and the Settlement Hearing can be scheduled.[2] Lead Plaintiff respectfully submits that the Settlement warrants preliminary approval given that it is the result of vigorous arm's-length negotiations by experienced counsel overseen by a well-respected Mediator, represents a favorable recovery that falls within the range of approval, and is very likely to meet all of the approval factors required by Rule 23(e) of the Federal Rules of Civil Procedure and Ninth Circuit precedent.

Entry of the proposed Preliminary Approval Order will begin the process of considering final approval by authorizing notice of the Settlement to members of the Settlement Class. A final Settlement Hearing will then be conducted, after the Settlement

---

[1]    All capitalized terms not otherwise defined herein have the same meaning as those in the Stipulation and Agreement of Settlement, dated January 15, 2021 (the "Stipulation"), filed herewith as Exhibit 1 to the Declaration of Avi Wagner ("Wagner Decl."). All exhibits referenced below are attached to the Wagner Declaration.

[2]    In light of conditions resulting from the COVID-19 pandemic, the Settlement Hearing may be conducted either by telephone or remote means at the Court's discretion. *See City of Sunrise Gen. Emp. Ret. Plan v. FleetCor Techs., Inc.*, Civ. A. No. 1:17-cv-02207-LMM, slip op. at 1 (N.D. Ga. Mar. 24, 2020), ECF No. 104 (ordering that, in light of COVID-19, final settlement hearing in securities class action should proceed at date and time scheduled in the notice but be conducted telephonically); *In re Yahoo! Inc. Customer Data Security Breach Litig.*, No. 5:16-md-02752-LHK (N.D. Cal. Mar. 23, 2020), ECF No. 448 (same). If the Settlement Hearing is held telephonically, instructions concerning how Settlement Class Members can participate by telephone will be posted on the Settlement website.

Class has been given an opportunity to object or seek exclusion, so that the Court can make a final determination as to whether the Settlement is fair, reasonable, and adequate.

## FACTUAL AND PROCEDURAL BACKGROUND

### I.    Procedural History of the Case

On November 15, 2019, this securities class action was filed in the United States District Court for the Central District of California on behalf of investors who are now the Settlement Class.

Pursuant to the procedures of the PSLRA, after briefing and oral argument, on March 3, 2020, the Court appointed Randy Marker as Lead Plaintiff, the law firm of Bernstein Liebhard LLP as Lead Counsel, and The Wagner Firm as Liaison Counsel.

On July 2, 2020, Lead Plaintiff filed the Amended Complaint ("Complaint"), alleging violations of Sections 10(b) and 20(a) of the Securities Exchange Act of 1934 ("Exchange Act"), against Armstrong Flooring and the Individual Defendants. On August 17, 2020, Defendants Armstrong Flooring, McWilliams, Rice, and Vermette filed a motion to dismiss the Amended Complaint. On the same date, the other three Individual Defendants each filed separate motions to dismiss the Complaint.  On October 1, 2020 Lead Plaintiff filed an omnibus memorandum in opposition to the four separate motions to dismiss. On November 2, 2020, Defendants filed their respective reply briefs. This Action was settled days prior to the scheduled hearing on the motions to dismiss.

## II.      Negotiation of the Settlement and the Terms of the Proposed Settlement

In late 2020, Lead Plaintiff and Armstrong Flooring began exploring the possibility of a settlement, and engaged Robert Meyer, of JAMS, a well-respected and highly experienced mediator, to assist them in a potential negotiated resolution of the claims against Defendants. The Parties agreed that holding a mediation session prior to a ruling on the motions to dismiss could be beneficial to all parties.  In advance of the scheduled mediation session with Mr. Meyer, Lead Plaintiff and Armstrong Flooring exchanged mediation statements and expert analyses.  A full day mediation session was held on October 19, 2020 before Mr. Meyer. The Parties did not reach an agreement that day, but continued to negotiate through Mr. Meyer. On November 30, the Parties reached a settlement in principle to resolve the Action.

The Parties subsequently negotiated the terms of the Stipulation, which sets forth the final terms and conditions of the Settlement, including, among other things, a dismissal with prejudice of all claims asserted against all Defendants in the Action, along with a comprehensive release of any related claims ("Released Plaintiffs' Claims"), in return for a cash payment of $3,750,000 in cash (the "Settlement Amount") for the benefit of the Settlement Class.

## ARGUMENT

## I.      Standards for Preliminary Approval of the Settlement

As a matter of public policy, settlement is strongly favored, "particularly where complex class action litigation is concerned." *In re Syncor ERISA Litig.*, 516 F.3d 1095,

1101 (9th Cir. 2008); *see also Larsen v. Trader Joe's Co.*, 11-CV-05188-WHO, 2014 WL 3404531, at *4 (N.D. Cal. July 11, 2014) ("Avoiding such unnecessary and unwarranted expenditure of resources and time would benefit all parties, as well as conserve judicial resources"); *Wood v. Ionatron, Inc.*, No. CV 06-354-TUC-CKJ, 2009 WL 10673479, at *2 (D. Ariz. Sept. 28, 2009) ("the extraordinary amount of judicial and private resources consumed by massive class action litigation elevates the general policy of encouraging settlements to an overriding public interest").[3]

The Federal Rules of Civil Procedure require court approval for any class action settlement. This motion for preliminary approval of the Settlement is the first step to final approval, whereby the parties "provide the court with information sufficient to enable it to determine whether to give notice of the proposal to the class." Fed. R. Civ. P. 23(e)(1)(A). Giving notice of the Settlement to the class is justified by providing information "showing that the court will likely be able to: (i) approve the proposal under Rule 23(e)(2); and (ii) certify the class for purposes of judgment on the proposal." Fed. R. Civ. P. 23(e)(1)(B).

Rule 23(e)(2) lists criteria for evaluating the adequacy of a settlement, requiring a review of the likelihood that: (a) Lead Plaintiff and Lead Counsel adequately represented the class; (b) the Settlement was negotiated at arm's-length; (c) the relief provided to the class is adequate, taking into account: (i) the costs, risks and delays of trial and appeal;

---

[3] All internal quotations and citations are omitted unless otherwise noted.

(ii) effectiveness of any proposed method of distributing relief to the class; (iii) terms of any proposed award of attorneys' fees; and (iv) any agreement required to be identified under Rule 23(e)(3)[4]; and (d) the proposal treats class members equitably relative to each other.

As discussed below, the proposed Settlement readily satisfies the Rule 23(e)(2) factors and the Settlement Class is appropriate for certification such that the Settlement should be preliminarily approved, and the Settlement Class should receive Notice of the Settlement.

## II.  Notice Is Warranted as the Settlement Is Fair, Reasonable and Adequate Pursuant to Rule 23(e)(2)

### A.  Lead Plaintiff and Lead Counsel Adequately Represented the Class

Randy Marker was appointed Lead Plaintiff after a finding he was the "most adequate plaintiff" to represent the Settlement Class. *See* ECF No. 31.  Mr. Marker is an individual investor with over two years of investing experience. Throughout the Action, Mr. Marker benefited from the advice of knowledgeable counsel well-versed in shareholder class action litigation and securities fraud cases. Bernstein Liebhard LLP is

---

[4]  Rule 23(e)(2)(C)(iv) requires the disclosure of any agreement in connection with a proposed settlement.  Here, on January 15, 2021, Defendants and Lead Plaintiff entered into a confidential Supplemental Agreement Regarding Requests for Exclusion (the "Supplemental Agreement"). The Supplemental Agreement sets forth the conditions under which Armstrong Flooring has the discretion to terminate the Settlement if requests for exclusion from the Settlement Class exceed a certain agreed-upon threshold.  As is standard in securities settlements, the Supplemental Agreement is kept confidential in order to avoid incentivizing the formation of a group of opt-outs for the sole purpose of leveraging a larger individual settlement. Pursuant to its terms, the Supplemental Agreement may be submitted to the Court *in camera* or under seal. The Stipulation and the Supplemental Agreement are the only agreements concerning the Settlement entered into by the Parties.

among the most experienced and skilled firms in the securities litigation field, and has a long and successful track record in such cases. *See* Exs. 2-3, firm resume. The firm has served as lead counsel in a number of high profile and influential cases. *Id.*

Lead Counsel vigorously litigated the Action since its inception. Lead Counsel, among other things: (i) actively litigated a lead plaintiff motion including participating in a hearing before this Court; (ii) conducted a thorough investigation that included the review of publicly available information regarding the Company and interviews of former employees and third parties; (iii) prepared the amended complaint; (iv) opposed four motions to dismiss; (v) analyzed Armstrong Flooring's mediation statements and exhibits; (vi) analyzed documents produced by Armstrong Flooring in connection with the mediation; and (vii) engaged and consulted with experts concerning damages and loss causation. Throughout the litigation, Lead Counsel explored the strengths and weaknesses of the claims and defenses and developed a thorough understanding of the merits of the claims.

The Settlement was reached only after mediated negotiations between counsel with extensive knowledge and expertise litigating securities fraud class actions. At the conclusion of this process Lead Counsel believes that this is a fair and reasonable settlement. *See, e.g., In re NVIDIA Corp. Derivative Litig.*, No. 06-cv-06110-SBA (JCS), 2008 WL 5382544, at *4 (N.D. Cal. Dec. 22, 2008) ("[S]ignificant weight should be

attributed to counsel's belief that settlement is in the best interest of those affected by the settlement.").

## B.     The Settlement Was Negotiated at Arm's-Length

Courts have long recognized that there is an initial presumption that a proposed settlement is fair and reasonable when it is the "product of arms-length negotiations." *In re Portal Software, Inc. Sec. Litig.*, No. 03-cv-5138 VRW, 2007 WL 1991529, at *6 (N.D. Cal. June 30, 2007). The use of an experienced mediator is an "important factor" supporting a finding that this requirement is satisfied. *See In re Banc of California Sec. Litig.*, 2019 WL 6605884, at *2 (C.D. Cal. Dec. 4, 2019); *see also Hefler v. Wells Fargo & Co.*, 2018 WL 6619983 (N.D. Cal. Dec. 18, 2018) (finding that settlement was the product of arm's-length negotiation where, as here, mediation was conducted by JAMS mediator, Robert Meyer). Here, Lead Plaintiff and Lead Counsel agreed to settle after a rigorous mediation process overseen by a highly regarded and experienced mediator, Robert Meyer.

## C.     The Relief Provided by the Settlement Is Adequate

### 1.     This Settlement Is Well Within the Range of Reasonableness

The $3.75 million Settlement Amount provides a favorable recovery as a proportion of estimated damages for this Action. The Settlement recovers approximately 7% of the $54 million in maximum estimated damages. This percentage is above the median settlement amount as reported by Cornerstone Research, which tracks and aggregates court-approved securities class action settlements. According to Cornerstone

Research, the median settlement was 5.3% of damages for cases settling during a pending motion to dismiss. *See* Laarni T. Bulan and Laura E. Simmons, *Securities Class Action Settlements – 2019 Review and Analysis*, Cornerstone Research (the "Cornerstone Report") at 14, attached as Ex. 4 to the Wagner Declaration. Indeed, courts in the Ninth Circuit have approved settlements that recovered a similar, or smaller, percentages of maximum damages than here. *See, e.g., McPhail v. First Command Fin. Planning, Inc.,* No. 05-cv-179-IEG-JMA, 2009 WL 839841, at *5 (S.D. Cal. Mar. 30, 2009) (finding recovering 7% of estimated damages was fair and adequate); *In re Omnivision Techs., Inc.,* 559 F. Supp. 2d 1036, 1042 (N.D. Cal. 2008) (settlement yielding 6% of potential damages after deducting fees and costs was "higher than the median percentage of investor losses recovered in recent shareholder class action settlements").

This Settlement when viewed as a percentage of maximum recoverable damages is likely even more favorable to the Settlement Class because Lead Plaintiff's $54 million estimate would be subject to formidable challenges. Proving loss causation and damages posed serious risks to recovery for the Settlement Class. The Complaint alleged that three partially corrective disclosures revealed issues that caused material price drops: 1) that the new Go-To-Market Strategy was a failure as the Company's distributors had been forced into roles they were not equipped to handle; 2) the Company was not reinvesting savings from the Go-To-Market Strategy into growing and serving their national and commercial accounts; and 3) the Company was aware that its distributors

were acquiring more inventory than they could sell in 2018 and 2019. While Lead Plaintiff believes each partial disclosure revealed new material information related to the alleged fraud, damages would be cut substantially if the Court found otherwise. In addition, the effects of disaggregating unrelated market information from the price movements on the dates of the disclosures had the potential to reduce damages regardless.

The $3.75 million Settlement Amount is also a favorable recovery when compared to the median settlement amounts of similar securities class action settlements. Cornerstone reports that the median amount for court-approved securities class action settlements was $3.3 million for cases setting within two years of filing and the median amount for settlements during a pending motion to dismiss was $4.9 million. *See* The Cornerstone Report, attached as Ex. 4 to the Wagner Declaration.

The Settlement is also reasonable because it provides the Settlement Class with a prompt and substantial tangible recovery, without the considerable risk, expense, and delay of litigating to completion. Lead Plaintiff was in the midst of opposing four motions to dismiss the Complaint. While Lead Plaintiff believes the Complaint should have been sustained, risks were shown through the motions. If the Complaint was sustained in full (or in part), there was still the risk that a class would not be certified for all potential class members. Defendants would also likely have sought summary judgment and there was no guarantee that Lead Plaintiff would prevail against

Defendants' challenges and, even if he did, how the Court's rulings would affect damages or how the case would be presented to the jury.

These risks aside, discovery would have been protracted and the trial of Lead Plaintiff's claims would inevitably be long and complex, and even a favorable verdict would undoubtedly spur a lengthy post-trial and appellate process. *See, e.g.*, *Lo v. Oxnard European Motors, LLC*, No. 11-cv-1009 JLS (MDD), 2011 WL 6300050, at \*5 (S.D. Cal. Dec. 15, 2011) (addressing preliminary approval and stating that "'[c]onsidering the potential risks and expenses associated with continued prosecution . . . the probability of appeals, the certainty of delay, and the ultimate uncertainty of recovery through continued litigation,' the Court finds that, on balance, the proposed settlement is fair, reasonable, and adequate").

### 2.    The Effective Process for Distributing Relief

The Settlement will be effectuated with the assistance of an experienced claims administrator. The Claims Administrator will employ the same protocol for the processing of claims in a securities class action as approved by this Court in *In re Silver Wheaton Corp. Sec. Litig.*, No. 2:15-cv-05146-CAS(PJWx) Dkt, No. 487 (C.D. Cal. Mar. 9, 2020) (Snyder J.)). Potential class members will submit the Claim Form through the Settlement website or by hardcopy if necessary. Based on the trade information provided by claimants, the Claims Administrator will determine each claimant's eligibility to participate and calculate their respective "Recognized Claim" based on the Court-

approved Plan of Allocation. Lead Plaintiff's claims will be reviewed in the same manner. Claimants will be notified of any defects or conditions of ineligibility and be given the chance to contest rejection. Any claim disputes that cannot be resolved will be presented to the Court for a determination.

After the Settlement reaches its Effective Date (*see* Stipulation ¶ 32) and all applicable deadlines have passed, Authorized Claimants will be issued checks. After an initial distribution of the Net Settlement Fund, if there is any balance remaining in the Net Settlement Fund (whether by reason of tax refunds, uncashed checks or otherwise) after at least six (6) months from the date of initial distribution of the Net Settlement Fund, the Claims Administrator shall, if feasible and economical after payment of Notice and Administration Expenses, Taxes, and attorneys' fees and expenses, if any, redistribute such balance among Authorized Claimants who have cashed their checks in an equitable and economic fashion. Once it is no longer feasible or economical to make further distributions, any balance that still remains in the Net Settlement Fund after re-distribution(s) and after payment of outstanding Notice and Administration Expenses, Taxes, and attorneys' fees and expenses, if any, shall be contributed to a non-sectarian, not-for-profit charitable organization serving the public interest. *See* Stipulation ¶ 30.

### 3. The Anticipated Attorney's Fees and Expenses Are Reasonable

As set forth in the Notice, Lead Counsel intends to request attorneys' fees of no more than 25% of the Settlement Fund and litigation expenses of no more than $75,000,

which may include an application for reimbursement by the Lead Plaintiffs pursuant to the PSLRA. A fee request of 25% is the "benchmark" within the Ninth Circuit, and would be consistent with other settlements approved in the Ninth Circuit. *See Vizcaino v. Microsoft Corp.*, 290 F.3d 1043 (9th Cir. 2002) (fee of 28% awarded)*; Deaver v. Compass Bank,* No. 13-cv-00222-JSC, 2015 WL 8526982, at *11 (N.D. Cal. Dec. 11, 2015) (awarding one third of $500,000 settlement fund); *Cheng Jiangchen v. Rentech, Inc.*, CV 17-1490-GW(FFMX), 2019 WL 5173771, at *11 (C.D. Cal. Oct. 10, 2019) (awarding one third of a $2,050,000 settlement fund); *Azar v. Blount Intl., Inc.*, 3:16-CV-0483-SI, 2019 WL 7372658, at *16 (D. Or. Dec. 31, 2019) (awarding one quarter of a $3,059,000 settlement fund). The basis of Lead Counsel's fee and expense request will be detailed in their upcoming motion requesting fees and expenses.

## D.    Class Members Are Treated Equitably Relative to One Another

The Plan of Allocation, drafted with the assistance of Lead Plaintiff's damages expert, is a fair, reasonable, and adequate method for allocating the proceeds of the Settlement among eligible claimants and treats all Settlement Class Members equitably, as required by Rule 23(e)(2)(D). Each Authorized Claimant, including Lead Plaintiff, will receive a distribution pursuant to the Plan, and Lead Plaintiff will be subject to the same formula for distribution of the Settlement as other Settlement Class Members. *See Ciuffitelli v. Deloitte & Touche LLP*, 2019 WL 1441634, at *18 (D. Or. Mar. 19, 2019) ("[t]he Proposed Settlement does not provide preferential treatment to Plaintiffs or

segments of the class" where "the proposed Plan of Allocation compensates all Class Members and Class Representatives equally in that they will receive a pro rata distribution based [sic] of the Settlement Fund based on their net losses").

## III. Preliminary Certification of the Settlement Class

As part of the Settlement, Lead Plaintiff respectfully requests that the Court preliminarily certify the proposed Settlement Class (as defined in ¶ 1(tt) of the Stipulation).

### A. The Settlement Class Meets the Requirements of Rule 23(a)

#### 1. Rule 23(a)(1): Numerosity

Rule 23(a)(1) requires that a class be so numerous that joinder of all members is impracticable. In securities litigation, courts regularly find the numerosity requirement satisfied with respect to purchasers of nationally traded securities. *See Howell v. JBI, Inc.*, 298 F.R.D. 649, 654-55 (D. Nev. 2014) ("in securities cases, when millions of shares are traded during the proposed class period, a court may infer that the numerosity requirement is satisfied"). Here, throughout the Class Period, Armstrong common stock traded actively on the New York Stock Exchange ("NYSE") under the ticker symbol "AFI." These shares were purchased by thousands of investors, making joinder impracticable.

#### 2. Rule 23(a)(2): Questions of Law or Fact Are Common

Rule 23(a)(2) requires the existence of "questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). The Ninth Circuit construes this requirement

"permissively," and has stated that that "[a]ll questions of fact and law need not be common to satisfy the rule." *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1019 (9th Cir. 1998). Securities fraud cases have long been found to satisfy the commonality requirement. *See Blackie v. Barrack*, 524 F.2d 891, 902 (9th Cir. 1975) ("The overwhelming weight of authority holds that repeated misrepresentations of the sort alleged here satisfy the 'common question' requirement."). In this case, the central questions of whether the alleged misstatements regarding the Go-To-Market Strategy and Armstrong Flooring's inventory were false and misleading, and whether Defendants acted with the requisite mental state, are the same for all class members.

### 3.    Rule 23(a)(3): Lead Plaintiff's Claims Are Typical

Rule 23(a)(3) is satisfied where the claims of the proposed class representatives arise from the same course of conduct that gives rise to the claims of the other class members, and where the claims are based on the same legal theory. *In re Comput. Memories Sec. Litig.*, 111 F.R.D. 675, 680 (N.D. Cal. 1986). Rule 23(a)(3) does not require plaintiffs to show that their claims are identical on every issue to those of the class, but merely that significant common questions exist. *In re Syncor ERISA Litig.*, 227 F.R.D. 338, 344 (C.D. Cal. 2005). Differences in the amount of damages, the size or manner of purchase, type of purchase, and even the specific documents influencing the purchase will not render the claim atypical in most securities actions. *See Tsirekidze v.*

*Syntax-Brillian Corp.*, No. CV-07-02204-PHX-FJM, 2009 WL 2151838, at \*4 (D. Ariz. July 17, 2009).

Here, Lead Plaintiff's claims are typical of those of the Settlement Class. Like other class members, Lead Plaintiff purchased the publicly traded common stock of Armstrong during the Class Period, and claims to have suffered damages.

### 4.   Rule 23(a)(4):  Lead Plaintiff Is an Adequate Representative

Rule 23(a)(4) is satisfied if "the representative Parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). "The proper resolution of this issue requires that two questions be addressed: (a) do the named plaintiffs and their counsel have any conflicts of interest with other class members, and (b) will the named plaintiffs and their counsel prosecute the action vigorously on behalf of the class?" *In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 462 (9th Cir. 2000). Here, Lead Plaintiff has and will continue to represent the interests of the Settlement Class fairly and adequately. There is no antagonism or conflict of interest between Lead Plaintiff and the proposed Settlement Class. Lead Counsel also has extensive experience and expertise in complex securities litigation and class action proceedings throughout the United States. Lead Counsel is well qualified and able to conduct the Action, and have ably and effectively represented Lead Plaintiff and the proposed Settlement Class throughout the Action.[5]

---

5    Accordingly, Lead Counsel satisfies the Class Counsel requirements of Rule 23(g) and has already been approved by the Court to represent the class pursuant to 15 U.S.C.§ 78u-4(a)(3)(B)(v). *See* ECF. No. 44.

**B.      The Settlement Class Meets the Requirements of Rule 23(b)(3) –
Predominance and Superiority**

The predominance inquiry "tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 623 (1997). The predominance requirement is "readily met" in securities class actions. *Id.* at 625.  Here, common questions of law and fact predominate over individual questions because the alleged fraudulent statements and omissions affected all Settlement Class Members in the same manner (i.e., through public statements made to the market).

Moreover, class-wide reliance is established in this Action either through the application of *Affiliated Ute Citizens of Utah v. United States*, 406 U.S. 128 (1972), because the claims are predicated upon omissions of material fact which there was a duty to disclose, or alternatively based on the "fraud-on-the-market" presumption of reliance in *Basic v. Levinson*, 485 U.S. 224, 241-42 (1988). Applying the *Affiliated Ute* or *Basic* presumptions dispenses with the requirement that each Settlement Class Member prove individual reliance on the alleged misstatements and/or omissions. *See id.* Here, where Armstrong Flooring's common stock is traded on the NYSE, a national securities exchange, and was followed by numerous securities analysts and traded at regular substantial volumes, there is sufficient evidence of market efficiency. *See* Complaint ¶ 161.

Further, resolution of this case through a class action is far superior to litigating

(and settling) thousands of individual cases where the expense for a single investor would likely exceed its losses. *See McPhail v. First Command Fin. Planning, Inc.,* 247 F.R.D. 598, 615 (S.D. Cal. 2007) ("class action is the superior method for fair and efficient adjudication" because individual suits would "'clog [ ] the federal courts with innumerable individual suits litigating the same issues repeatedly,'") (alteration in original).

## IV. The Notice Program Satisfies Rule 23, Due Process, and the PSLRA Requirements

Rule 23(c)(2)(B) requires notice of the pendency of the class action to be "the best notice practicable under the circumstances." Fed. R. Civ. P. 23(c)(2)(B). Notice must describe "'the terms of the settlement in sufficient detail to alert those with adverse viewpoints to investigate and to come forward and be heard.'" *See, e.g., Lane v. Facebook, Inc.,* 696 F.3d 811, 826 (9th Cir. 2012).

Lead Counsel proposes to provide Settlement Class Members notice by: (i) mailing a copy of the Postcard Notice to all potential Settlement Class Members who can be reasonably identified and located using information provided by Armstrong Flooring's transfer agent, as well as information provided by third party banks, brokers, and other nominees about their customers who may have eligible purchases; (ii) publication of the Summary Notice in *Investor's Business Daily*; and (iii) dissemination of the Summary Notice on the internet using *PR Newswire. See In re Silver Wheaton Corp. Sec. Litig.,* No. 2:15-cv-05146-CAS(PJWx) Dkt No. 487 (C.D. Cal.) (Snyder J.); *In*

*re HP Sec. Litig.*, No. 12-cv-05980-CRB, 2015 WL 4477936, at *2 (N.D. Cal. July 20, 2015) (finding that procedures for notice which include mailing individual notice and publishing notice satisfy Rule 23, the PSLRA, and constitute the best notice practicable); (iv) publishing the Internet Notice on both the Settlement website and Lead Counsel's website. This proposed notice program is "reasonably calculated under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Mullane v. Cent. Hanover Bank & Tr. Co.*, 339 U.S. 306, 314 (1950). "The use of a combination of a mailed post card directing class members to a more detailed online notice has been approved by courts." *In re Advanced Battery Techs., Inc. Sec. Litig.*, 298 F.R.D. 171, 183 (S.D.N.Y. 2014) (citations omitted); *Graham v. Capital One Bank (USA), N.A.*, No. SACV13743JLSJPRX, 2014 WL 12579809, at *8 (C.D. Cal. July 29, 2014) (approving postcard notice); *McCurley v. Royal Seas Cruises, Inc.*, No. 17- CV-00986-BAS-AGS, 2019 WL 3817970, at *4 (S.D. Cal. Aug. 14, 2019) (same).

In addition to the proposed methods of providing notice, the form and substance of the notice program are also sufficient. The proposed forms of notice describe the terms of the Settlement; the considerations that caused Lead Plaintiff and Lead Counsel to conclude that the Settlement is fair, adequate, and reasonable; the maximum attorneys' fees and expenses that may be sought; the procedure for requesting exclusion from the

Settlement Class, objecting, and submitting claims; the proposed Plan of Allocation; and the date and place of the Settlement Hearing.

The Internet Notice also satisfies the PSLRA's separate disclosure requirements by, *inter alia*, stating: (i) the amount of the Settlement determined in the aggregate and on an average per share basis; (ii) that the Parties do not agree on the amount of damages that would be recoverable by Lead Plaintiff; (iii) that Lead Counsel intend to make an application for an award of attorneys' fees and expenses (including the amount of such fees and expenses determined on an average per share basis); (iv) the name, telephone number, and address of a representative of Lead Counsel who will be available to answer questions; and (v) the reasons why the Parties are proposing the Settlement. *See* 15 U.S.C. § 78u-4(a)(7)(A)-(F).[6]

Thus, the proposed Notice provides all of the required information under the PSLRA. Courts have found that notice substantially similar to that provided for in this Settlement constituted the "best notice practicable under the circumstances," satisfying the requirements of Fed. R. Civ. P. 23(c)(2)(B). *In re Am. Honda Motor Co., Inc.*, No. CV06-1301-CAS(PLAX), 2009 WL 1204495, at *4 (C.D. Cal. Apr. 17, 2009); *see generally Manual for Complex Litigation* §21.633.

---

[6]    Lead Plaintiff also requests that the Court appoint Strategic Claims Services as the Claims Administrator to provide all notices approved by the Court to Settlement Class Members, to process Claim Forms, and to administer the Settlement.

Lead Counsel has carefully drafted the notice provisions of the Settlement to provide the best notice practicable to the Class. The proposed notices, the Internet Notice, the Postcard Notice, and the Summary Notice, as well as the Claim Form (Exhibits A-1, A-2, A-3, and A-4 to the Preliminary Approval Order), are adequate.

## V.   Proposed Settlement Schedule

The Court's entry of the proposed Preliminary Approval Order would, among other things, (i) certify, for settlement purposes, this action as a class action; and (ii) direct notice of the Proposed Settlement to all members of the Class. As such, the Preliminary Approval Order sets a proposed schedule for issuing notice, and deadlines for submitting claims and/or objecting to the Settlement or opting out of the Settlement Class.

Lead Plaintiff proposes the following schedule for notice, final approval hearing and related dates:

| | |
|---|---|
| Postcard Notice Mailed to Class Members (Preliminary Approval Order, ¶ 7b) | Within 20 business days after entry of the order preliminarily approving the settlement ("Notice Date") |
| Summary Notice published (Preliminary Approval Order, ¶ 7d) | Within 10 business days after the Notice Date |
| Final Approval Hearing (Preliminary Approval Order, ¶ 5) | To be determined by the Court, a date no less than 145 calendar days from the entry of the order preliminarily approving the settlement |
| Deadline to request exclusion from the Settlement (Preliminary Approval Order, ¶ 14) | 21 calendar days prior to the Final Approval Hearing |
| Deadline to submit Proof of Claim forms (Preliminary Approval Order, ¶ 11) | 90 calendar days after the Notice Date |

| Deadline for Lead Plaintiff to file papers in support of final approval and application of Lead Counsel for attorneys' fees, reimbursement of expenses, and an award to Lead Plaintiff, and application for approval of the Plan of Allocation (Preliminary Approval Order, ¶ 28) | 35 calendar days before the Final Approval Hearing |
|---|---|
| Deadline for Objections to the Settlement, Plan of Allocation, Attorneys' Fees and Lead Plaintiff Award (Preliminary Approval Order, ¶ 17) | 21 calendar days prior to the Final Approval Hearing |
| Deadline for Lead Plaintiff to file reply papers in support of final approval and application of Lead Counsel for attorneys' fees, reimbursement of expenses, and an award to Lead Plaintiff, and application for approval of the Plan of Allocation (Preliminary Approval Order, ¶ 28) | 7 calendar days prior to the Final Approval Hearing |

## **CONCLUSION**

For the foregoing reasons, Lead Plaintiff respectfully requests that the Court issue an order substantially in the form of the proposed Preliminary Approval Order: (i) preliminarily approving the Settlement; (ii) holding that the manner and forms of notice satisfy due process and provide the best notice practicable under the circumstances, and ordering that Notice be provided to the Settlement Class; (iii) setting a date for the Settlement Hearing; (iv) appointing Strategic Claims Services as Claims Administrator; (v) preliminarily certifying the Settlement Class; and (f) granting such other and further relief as may be required.

Dated:  January 15, 2021          Respectfully submitted,

THE WAGNER FIRM

/s/Avi Wagner
Avi Wagner (Cal Bar. No. 226688)
1925 Century Park East, Suite 2100
Los Angeles, CA 90067
Telephone: 310-491-7949
Facsimile: 310-694-3967
Email:  Avi@thewagnerfirm.com

BERNSTEIN LIEBHARD LLP
Michael S. Bigin (admitted *pro hac vice*)
Laurence J. Hasson (admitted *pro hac vice*)
10 East 40th Street
New York, NY 10016
Telephone: (212) 779-1414
Facsimile: (212) 779-3218
Email: bigin@bernlieb.com
lhasson@bernlieb.com

*Counsel for Lead Plaintiff Randy Marker and Lead
Counsel for Proposed Settlement Class*

## <u>PROOF OF SERVICE BY ELECTRONIC POSTING</u>

I, the undersigned say:

I am not a party to the above case, and am over eighteen years old.  On January 15, 2021, I served true and correct copies of the foregoing document, by posting the document electronically to the ECF website of the United States District Court for the Central District of California, for receipt electronically by the parties listed on the Court's Service List.

I affirm under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.  Executed on January 15, 2021, at Los Angeles, California.

*s/ Avi Wagner*
Avi Wagner