1

**THE WAGNER FIRM**
Avi Wagner (Cal Bar. No. 226688)

2

1925 Century Park East, Suite 2100

3

Los Angeles, CA 90067
Telephone: 310-491-7949

4

Facsimile: 310-694-3967

5

*Liaison Counsel for*
*Lead Plaintiff Randy Marker*

6

7

(*Additional Counsel on signature page*)

8

9

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION

10

11

MICHAEL CHUPA, Individually and on
behalf of all others similarly situated,

Case No. 2:19-cv-09840-CAS-MRW

12

13

Plaintiff,

**CLASS ACTION**

14

v.

**MEMORANDUM OF POINTS AND
AUTHORITIES IN SUPPORT OF
LEAD PLAINTIFF'S UNOPPOSED
MOTION FOR FINAL APPROVAL
OF SETTLEMENT, CERTIFICATION
OF THE SETTLEMENT CLASS, AND
ENTRY OF JUDGMENT**

15

16

ARMSTRONG FLOORING, INC., et al.,

17

Defendants.

18

19

20

Judge:   Hon. Christina A. Snyder
Courtroom 8D – 8th Floor
Hearing Day: July 19, 2021
Hearing Time: 10:00 AM

21

22

23

24

25

26

27

28

# TABLE OF CONTENTS

PRELIMINARY STATEMENT ........................................................................1

FACTUAL AND PROCEDURAL BACKGROUND .....................................2

I.  Procedural History of the Case ..........................................................2

II.  Negotiation of the Settlement and the Terms of the Proposed Settlement ...............3

III.  Preliminary Approval and Notice to the Settlement Class ........................................4

ARGUMENT ..................................................................................................5

I.  Standards for Final Approval of the Settlement ................................5

II.  The Settlement Is Fair, Reasonable and Adequate Pursuant to Rule 23(e)(2) ...........7

A.  Lead Plaintiff and Lead Counsel Adequately Represented the Class .................7

B.  The Settlement Was Negotiated at Arm's-Length ..............................8

C.  The Relief Provided by the Settlement Is Adequate ...........................9

    1. This Settlement Is Well Within the Range of Reasonableness .....................9

    2.  The Effective Process for Distributing Relief ................................12

    3.  The Anticipated Attorneys' Fees and Expenses Are Reasonable ...............13

D.  Class Members Are Treated Equitably Relative to One Another ....................14

III.  Certification of the Settlement Class ...............................................14

A.  The Settlement Class Meets the Requirements of Rule 23(a) ..........................15

    1.  Rule 23(a)(1):  Numerosity ...................................................15

    2.  Rule 23(a)(2):  Questions of Law or Fact Are Common ...........................15

    3.  Rule 23(a)(3): Lead Plaintiff's Claims Are Typical ..................................16

    4.  Rule 23(a)(4):  Lead Plaintiff Is an Adequate Representative ..................17

B.  The Settlement Class Meets the Requirements of Rule 23(b)(3) – Predominance and Superiority ...........................................................17

# TABLE OF AUTHORITIES

**Page(s)**

<u>**Cases**</u>

*Affiliated Ute Citizens of Utah v. United States*,
  406 U.S. 128 (1972) ..................................................................................18

*Amchem Prod., Inc. v. Windsor*,
  521 U.S. 591 (1997) ..................................................................................17

*Azar v. Blount Int'l, Inc.*,
  No. 3:16-CV-0483-SI, 2019 WL 7372658 (D. Or. Dec. 31, 2019) ...............13

*Basic Inc. v. Levinson*,
  485 U.S. 224 (1988) ..................................................................................18

*Blackie v. Barrack*,
  524 F.2d 891 (9th Cir. 1975) ......................................................................15

*Cheng Jiangchen v. Rentech, Inc.*,
  No. CV 17-1490-GW(FFMX), 2019 WL 5173771 (C.D. Cal. Oct. 10, 2019) .............13

*Ciuffitelli v. Deloitte & Touche LLP*,
  No. 3:16-CV-00580-AC, 2019 WL 1441634 (D. Or. Mar. 19, 2019)...........14

*Class Plaintiffs v. City of Seattle*,
  955 F.2d 1268 (9th Cir. 1992)......................................................................6

*Deaver v. Compass Bank*,
  No. 13-CV-00222-JSC, 2015 WL 8526982 (N.D. Cal. Dec. 11, 2015) ........13

*Dukes v. Wal-Mart, Inc.*,
  474 F.3d 1214 (9th Cir. 2007)....................................................................18

*Hanlon v. Chrysler Corp.*,
  150 F.3d 1011 (9th Cir. 1998), *overruled on other grounds by*
   *Wal-Mart Stores, Inc. v. Dukes*,
   *overruling recognized by Castillo v. Bank of Am.*,
  980 F.3d 723 (9th Cir. 2020) ................................................................15, 17

*Hefler v. Wells Fargo & Co.*,
   No. 16-CV-05479-JST, 2018 WL 6619983 (N.D. Cal. Dec. 18, 2018), *aff'd sub nom.*
   *Hefler v. Pekoc*, 802 F. App'x 285 (9th Cir. 2020) .......................................................8, 9

*Howell v. JBI, Inc.*,
   298 F.R.D. 649 (D. Nev. 2014) ...............................................................................15

*In re Banc of California Sec. Litig.*,
   No. SACV 17-00118 AG (DFMx), 2019 WL 6605884 (C.D. Cal. Dec. 4, 2019) ...........8

*In re Computer Memories Sec. Litig.*,
   111 F.R.D. 675 (N.D. Cal. 1986) .............................................................................16

*In re Mego Fin. Corp. Sec. Litig.*,
   213 F.3d 454 (9th Cir. 2000) ...........................................................................6, 17

*In re NVIDIA Corp. Derivative Litig.*,
   No. C-06-06110-SBA(JCS), 2008 WL 5382544 (N.D. Cal. Dec. 22, 2008) ..................8

*In re Omnivision Techs., Inc.*,
   559 F. Supp. 2d 1036 (N.D. Cal. 2008) ....................................................................10

*In re Portal Software, Inc. Sec. Litig.*,
   No. C 03 5138 VRW, 2007 WL 1991529 (N.D. Cal. June 30, 2007) .............................8

*In re Silver Wheaton Corp. Sec. Litig.*,
   No. 2:15-cv-05146-CAS(PJWx) (C.D. Cal. Mar. 9, 2020) .........................................12

*In re Syncor Erisa Litig.*,
   227 F.R.D. 338 (C.D. Cal. 2005) .............................................................................16

*In re Syncor ERISA Litig.*,
   516 F.3d 1095 (9th Cir. 2008) ...................................................................................5

*Larsen v. Trader Joe's Co.*,
   No. 11-CV-05188-WHO, 2014 WL 3404531 (N.D. Cal. July 11, 2014).......................5

*Linney v. Cellular Alaska P'ship*,
   151 F.3d 1234 (9th Cir. 1998).................................................................................6

*Lo v. Oxnard Eur. Motors, LLC*,
   No. 11-cv-1009 JLS (MDD), 2011 WL 6300050 (S.D. Cal. Dec. 15, 2011) ...............11

*McPhail v. First Command Fin. Plan., Inc.*,
    247 F.R.D. 598 (S.D. Cal. 2007) .................................................................. 18

*McPhail v. First Command Fin. Plan., Inc.*,
    No. 05-cv-179-IEG-JMA, 2009 WL 839841 (S.D. Cal. Mar. 30, 2009) ........................ 10

*Officers for Just. v. Civ. Serv. Comm'n of City & Cty. of San Francisco*,
    688 F.2d 615 (9th Cir. 1982) ...................................................................... 6

*Tsirekidze v. Syntax-Brillian Corp.*,
    No. CV-07-02204-PHX-FJM, 2009 WL 2151838 (D. Ariz. July 17, 2009) ................. 16

*Vizcaino v. Microsoft Corp.*,
    290 F.3d 1043 (9th Cir. 2002) .................................................................... 13

*Weinberger v. Thornton*,
    114 F.R.D. 599, 607 (S.D. Cal. 1986) ........................................................ 16

*Wood v. Ionatron, Inc.*,
    No. CV 06-354-TUC-CKJ, 2009 WL 10673479 (D. Ariz. Sept. 28, 2009) ................... 5

**<u>Rules</u>**

Fed. R. Civ. P. 23(a)(2) ................................................................................ 15

Fed. R. Civ. P. 23(a)(3) ................................................................................ 16

Fed. R. Civ. P. 23(a)(4) ................................................................................ 17

Fed. R. Civ. P. 23(e)(2) ........................................................................ 2, 5, 7, 14

1
2

# **PRELIMINARY STATEMENT**

3
4
5
6

Lead Plaintiff respectfully submits that the Settlement is a very favorable result for the Settlement Class and should be approved by the Court. The Settlement provides a recovery of $3,750,000 in cash to resolve all claims in this Action.[1]

7
8
9
10
11
12
13
14
15

On February 22, 2021, the Court preliminarily approved the Settlement pursuant to Rule 23(e)(1) of the Federal Rules of Civil Procedure[2] and authorized Notice of the Settlement to the Settlement Class. In accordance with Rule 23(e)(1), this decision was based on a showing that the Settlement "will likely earn final approval after notice and an opportunity to object" and that the Settlement Class can be certified. *See* Rule 23(e)(1)(B) and 2018 Advisory Notes Rule 23(e)(1).

16
17
18
19
20
21
22
23

Lead Plaintiff and the Claims Administrator provided Notice to the Settlement Class pursuant to the Preliminary Approval Order. On June 14, 2021, the Claims Administrator reported that in addition to timely publishing notice in *Investor's Business Daily* and on the Internet, approximately 15,000 notices were disseminated by mail and email. These notices informed Settlement Class members of their right to object to the Settlement and how to participate in the Settlement. Currently, no Settlement Class members have either

24
25
26
27
28

---

[1] All capitalized terms not otherwise defined herein have the same meaning as those in the Stipulation and Agreement of Settlement, dated January 15, 2021 (the "Stipulation"), filed as Exhibit 1 to the January 15, 2021 Declaration of Avi Wagner. All exhibits referenced herein are attached to the Declaration of Michael S. Bigin filed June 14, 2021.

[2] The Federal Rules of Civil Procedure are referred to herein as "Rule."

opted out of or objected to the Settlement.

Since there is no objection to the Settlement, this memorandum incorporates the Rule 23(e)(1) briefing and details how the Settlement continues to meet the factors relevant to final approval.  This approach comports with Rule 23's intent to "present the settlement to the court in terms of a shorter list of core concerns, by focusing on the primary procedural considerations and substantive qualities that should always matter to the decision whether to approve the proposal." 2018 Advisory Notes Rule 23(e)(2). Lead Plaintiff addressed these core concerns in the Rule 23(e)(1) motion, where Lead Plaintiff "provide[d] the court with all available materials they intend to submit to support approval under Rule 23(e)(2) and that they intend to make available to class members." *Accord* 2018 Advisory Notes Rule 23(e)(1).

There has been no change in circumstances that negatively affect this Settlement since preliminary approval. Accordingly, Lead Plaintiff respectfully requests final approval of the Settlement, Certification of the Settlement Class, and entry of the Judgment in the form attached as Exhibit B to the Stipulation.

## FACTUAL AND PROCEDURAL BACKGROUND

### I. Procedural History of the Case

On November 15, 2019, this securities class action was filed in the United States District Court for the Central District of California on behalf of investors who are now the Settlement Class.

Pursuant to the procedures of the PSLRA, after briefing and oral argument, on March 3, 2020, the Court appointed Randy Marker as Lead Plaintiff, the law firm of Bernstein Liebhard LLP as Lead Counsel, and The Wagner Firm as Liaison Counsel.

On July 2, 2020, Lead Plaintiff filed the Amended Complaint ("Complaint"), alleging violations of Sections 10(b) and 20(a) of the Securities Exchange Act of 1934 ("Exchange Act"), against Armstrong Flooring and the Individual Defendants. On August 17, 2020, Defendants Armstrong Flooring, McWilliams, Rice, and Vermette filed a motion to dismiss the Amended Complaint. On the same date, the other three Individual Defendants each filed separate motions to dismiss the Complaint. On October 1, 2020, Lead Plaintiff filed an omnibus memorandum in opposition to the four separate motions to dismiss. On November 2, 2020, Defendants filed their respective reply briefs. This Action was settled days prior to the scheduled hearing on the motions to dismiss.

## II.   Negotiation of the Settlement and the Terms of the Proposed Settlement

In late 2020, Lead Plaintiff and Armstrong Flooring began exploring the possibility of a settlement, and engaged Robert Meyer, of JAMS, a well-respected and highly experienced mediator, to assist them in a potential negotiated resolution of the claims against Defendants. The Parties agreed that holding a mediation session prior to a ruling on the motions to dismiss could be beneficial to all parties. In advance of the scheduled mediation session with Mr. Meyer, Lead Plaintiff and Armstrong Flooring exchanged mediation statements and expert analyses. A full day mediation session was held on

October 19, 2020 before Mr. Meyer. The Parties did not reach an agreement that day, but continued to negotiate through Mr. Meyer. On November 30, the Parties reached a settlement in principle to resolve the Action.

The Parties subsequently negotiated the terms of the Stipulation, which sets forth the final terms and conditions of the Settlement, including, among other things, a dismissal with prejudice of all claims asserted against all Defendants in the Action, along with a comprehensive release of any related claims ("Released Plaintiffs' Claims"), in return for a cash payment of $3,750,000 (the "Settlement Amount") for the benefit of the Settlement Class.

## III.   Preliminary Approval and Notice to the Settlement Class

On February 22, 2021, the Court preliminarily approved the Settlement pursuant to Rule 23(e)(1) after briefing and a telephonic hearing.

Since that time, the Claims Administrator has implemented the notice program to notify the Settlement Class of their rights. As more fully set forth by the Claims Administrator in the Declaration of Josephine Bravata Concerning: (A) Mailing of the Postcard Notice; (B) Publication of the Summary Notice; and (C) Report on Requests for Exclusion and Objections, notice has been given to the Settlement Class as required by the Preliminary Approval Order. *See* Ex. 2. To date, there have been no requests for exclusion and no objections to the Settlement.

1

## ARGUMENT

2

## I.     Standards for Final Approval of the Settlement

3
4        As a matter of public policy, settlement is strongly favored, "particularly where

5    complex class action litigation is concerned." *In re Syncor ERISA Litig*., 516 F.3d 1095,

6    1101 (9th Cir. 2008); *see also Larsen v. Trader Joe's Co.*, 11-CV-05188-WHO, 2014 WL

7    3404531, at *4 (N.D. Cal. July 11, 2014) ("Avoiding such unnecessary and unwarranted

8
9    expenditure of resources and time would benefit all parties, as well as conserve judicial

10   resources"); *Wood v. Ionatron, Inc*., No. CV 06-354-TUC-CKJ, 2009 WL 10673479, at *2

11   (D. Ariz. Sept. 28, 2009) ("the extraordinary amount of judicial and private resources

12   consumed by massive class action litigation elevates the general policy of encouraging

13
14   settlements to an overriding public interest").[3]

15
16       Rule 23(e) requires court approval for any class action settlement after assessing

17   whether the proposed settlement is "fair, reasonable, and adequate."  Fed. R. Civ. P.

18   23(e)(2).  Under the Federal Rules, a court reviews a settlement using four factors. *Id*.

19
20   These are whether:

21
22       (A)    the class representatives and class counsel have adequately represented the
                class;
23
24       (B)    the proposal was negotiated at arm's length;
25
26       (C)    the relief provided for the class is adequate, taking into account:
27
              i.      the costs, risks, and delay of trial and appeal;
28

---

[3]      All internal quotations and citations are omitted unless otherwise noted.

     ii.    the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims;

     iii.    the terms of any proposed award of attorneys' fees, including timing of payment; and

     iv.    any agreement required to be identified under Rule 23(e)(3); and

(D)    the proposal treats class members equitably relative to each other.

The determination of whether a settlement is fair, reasonable, and adequate is committed to the Court's sound discretion. *See In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 458 (9th Cir. 2000) ("Review of the district court's decision to approve a class action settlement is extremely limited.") (citing *Linney v. Cellular Alaska P'ship*, 151 F.3d 1234, 1238 (9th Cir. 1998)). The Court need not reach conclusions about the merits of the case, in part because the Court will be called upon to decide the merits if the action proceeds. *See Officers for Justice v. Civ. Serv. Comm'n of City & Cty. of San Francisco*, 688 F.2d 615, 625 (9th Cir. 1982) ("[T]he settlement or fairness hearing is not to be turned into a trial or rehearsal for trial on the merits. . . . [I]t is the very uncertainty of outcome in litigation and avoidance of wasteful and expensive litigation that induce consensual settlements."). The Court's discretion in assessing the fairness of the settlement is also circumscribed by "the strong judicial policy that favors settlements, particularly where complex class action litigation is concerned." *Linney*, 151 F.3d at 1238 (quoting *Officers for Justice*, 688 F.2d at 626); *Class Plaintiffs v. City of Seattle*, 955 F.2d 1268, 1276 (9th Cir. 1992) (same).

For the reasons discussed herein, in the Motion for Preliminary Approval of the

Settlement, in the Order Granting Preliminary Approval of the Settlement, and in Lead Counsel's Fee and Expense Application, filed herewith, the proposed Settlement meets the criteria for final approval.

## II.   The Settlement Is Fair, Reasonable and Adequate Pursuant to Rule 23(e)(2)

### A.   Lead Plaintiff and Lead Counsel Adequately Represented the Class

Randy Marker was appointed Lead Plaintiff after a finding he was the "most adequate plaintiff" to represent the Settlement Class. *See* ECF No. 31. Mr. Marker is an individual investor with over two years of investing experience. Throughout the Action, Mr. Marker benefited from the advice of knowledgeable counsel well-versed in shareholder class action litigation and securities fraud cases. Bernstein Liebhard LLP is among the most experienced and skilled firms in the securities litigation field, and has a long and successful track record in such cases. *See* Ex. 4-C. The firm has served as lead counsel in a number of high profile and influential cases. *Id*.; *see also Id*. at Ex. 5-C (securities litigation experience of Liaison Counsel).

Lead Counsel vigorously litigated the Action since its inception. Lead Counsel, among other things: (i) actively litigated a lead plaintiff motion including participating in a hearing before this Court; (ii) conducted a thorough investigation that included the review of publicly available information regarding the Company and interviews of former employees and third parties; (iii) prepared the amended complaint; (iv) opposed four motions to dismiss; (v) analyzed Armstrong Flooring's mediation statements and exhibits;

(vi) analyzed documents produced by Armstrong Flooring in connection with the mediation; and (vii) engaged and consulted with experts concerning damages and loss causation. Throughout the litigation, Lead Counsel explored the strengths and weaknesses of the claims and defenses and developed a thorough understanding of the merits of the claims.

The Settlement was reached only after mediated negotiations between counsel with extensive knowledge and expertise litigating securities fraud class actions. At the conclusion of this process Lead Counsel believes that this is a fair and reasonable settlement. *See, e.g.*, *In re NVIDIA Corp. Derivative Litig.*, No. 06-cv-06110-SBA (JCS), 2008 WL 5382544, at *4 (N.D. Cal. Dec. 22, 2008) ("[S]ignificant weight should be attributed to counsel's belief that settlement is in the best interest of those affected by the settlement.").

## B.    The Settlement Was Negotiated at Arm's-Length

Courts have long recognized that there is an initial presumption that a proposed settlement is fair and reasonable when it is the "product of arms-length negotiations." *In re Portal Software, Inc. Sec. Litig.*, No. 03-cv-5138 VRW, 2007 WL 1991529, at *6 (N.D. Cal. June 30, 2007). The use of an experienced mediator is an "important factor" supporting a finding that this requirement is satisfied. *See In re Banc of California Sec. Litig.*, No. SACV 17-0018 AG (DFMx), 2019 WL 6605884, at *2 (C.D. Cal. Dec. 4, 2019); *see also Hefler v. Wells Fargo & Co.*, 2018 WL 6619983 (N.D. Cal. Dec. 18, 2018) (finding that

settlement was the product of arm's-length negotiation where, as here, mediation was conducted by JAMS mediator Robert Meyer), *aff'd sub nom. Hefler v. Pekok*, 802 F. App'x 285 (9th Cir. 2020). Here, Lead Plaintiff and Lead Counsel agreed to settle after a rigorous mediation process overseen by a highly regarded and experienced mediator, Robert Meyer. Mr. Meyer has been a mediator for over a decade and "is ranked on the exclusive 'National Mediators' List, Chambers USA (2019-2020), where he is recognized for being an 'extraordinarily effective [mediator] because he comes well prepared and his views carry a lot of credibility.'" *See* [Robert A. Meyer, Esq., JAMS Mediator and Arbitrator (jamsadr.com)](.).

### C.   The Relief Provided by the Settlement Is Adequate

#### 1.   This Settlement Is Well Within the Range of Reasonableness

The $3.75 million Settlement Amount provides a favorable recovery as a proportion of estimated damages for this Action.  The Settlement recovers approximately 7% of the $54 million in maximum estimated damages.  This percentage is above the median settlement amount as reported by Cornerstone Research, which tracks and aggregates court-approved securities class action settlements.  According to Cornerstone Research, the median settlement was 4.9% of damages for cases settling during a pending motion to dismiss.  *See* Ex. 3 at 14 (*Securities Class Action Settlements – 2020 Review and Analysis*, Cornerstone Research).  Indeed, courts in the Ninth Circuit have approved settlements that recovered similar, or smaller, percentages of maximum damages than here. *See, e.g.,*

*McPhail v. First Command Fin. Planning, Inc.,* No. 05-cv-179-IEG-JMA, 2009 WL 839841, at *5 (S.D. Cal. Mar. 30, 2009) (finding that recovering 7% of estimated damages was fair and adequate); *In re Omnivision Techs., Inc.,* 559 F. Supp. 2d 1036, 1042 (N.D. Cal. 2008) (settlement yielding 6% of potential damages after deducting fees and costs was "higher than the median percentage of investor losses recovered in recent shareholder class action settlements").

This Settlement when viewed as a percentage of maximum recoverable damages is likely even more favorable to the Settlement Class, because Lead Plaintiff's $54 million estimate would be subject to formidable challenges. Proving loss causation and damages posed serious risks to recovery for the Settlement Class. The Complaint alleged that three partially corrective disclosures revealed issues that caused material price drops: 1) that the new Go-To-Market Strategy was a failure as the Company's distributors had been forced into roles they were not equipped to handle; 2) the Company was not reinvesting savings from the Go-To-Market Strategy into growing and serving their national and commercial accounts; and 3) the Company was aware that its distributors were acquiring more inventory than they could sell in 2018 and 2019. While Lead Plaintiff believes each partial disclosure revealed new material information related to the alleged fraud, damages would be cut substantially if the Court found otherwise. In addition, the effects of disaggregating unrelated market information from the price movements on the dates of the disclosures had the potential to reduce damages regardless.

The Settlement is also reasonable because it provides the Settlement Class with a prompt and substantial tangible recovery, without the considerable risk, expense, and delay of litigating to completion.  Lead Plaintiff was in the midst of opposing four motions to dismiss the Complaint. While Lead Plaintiff believes the Complaint should have been sustained, risks were shown through the motions.  If the Complaint was sustained in full (or in part), there was still the risk that a class would not be certified for all potential class members.  Defendants would also likely have sought summary judgment and there was no guarantee that Lead Plaintiff would prevail against Defendants' challenges and, even if he did, how the Court's rulings would affect damages or how the case would be presented to the jury.

These risks aside, discovery would have been protracted and the trial of Lead Plaintiff's claims would inevitably be long and complex, and even a favorable verdict would undoubtedly spur a lengthy post-trial and appellate process. *See, e.g.*, *Lo v. Oxnard European Motors, LLC*, No. 11-cv-1009 JLS (MDD), 2011 WL 6300050, at *5 (S.D. Cal. Dec. 15, 2011) (addressing preliminary approval and stating that "'[c]onsidering the potential risks and expenses associated with continued prosecution . . . the probability of appeals, the certainty of delay, and the ultimate uncertainty of recovery through continued litigation,' the Court finds that, on balance, the proposed settlement is fair, reasonable, and adequate").

## 2. The Effective Process for Distributing Relief

The Settlement will be effectuated with the assistance of an experienced claims administrator. The Claims Administrator will employ the same protocol for the processing of claims in a securities class action as approved by this Court in *In re Silver Wheaton Corp. Sec. Litig.*, No. 2:15-cv-05146-CAS(PJWx) Dkt, No. 487 (C.D. Cal. Mar. 9, 2020) (Snyder J.). Potential class members will submit the Claim Form through the Settlement website or by hardcopy if necessary. Based on the trade information provided by claimants, the Claims Administrator will determine each claimant's eligibility to participate and calculate their respective "Recognized Claim" based on the Court-approved Plan of Allocation. Lead Plaintiff's claims will be reviewed in the same manner. Claimants will be notified of any defects or conditions of ineligibility and be given the chance to contest rejection. Any claim disputes that cannot be resolved will be presented to the Court for a determination.

After the Settlement reaches its Effective Date (*see* Stipulation ¶ 32) and all applicable deadlines have passed, Authorized Claimants will be issued checks. After an initial distribution of the Net Settlement Fund, if there is any balance remaining in the Net Settlement Fund (whether by reason of tax refunds, uncashed checks or otherwise) after at least six (6) months from the date of initial distribution of the Net Settlement Fund, the Claims Administrator shall, if feasible and economical after payment of Notice and Administration Expenses, Taxes, and attorneys' fees and expenses, if any, redistribute such

balance among Authorized Claimants who have cashed their checks in an equitable and economic fashion. Once it is no longer feasible or economical to make further distributions, any balance that remains in the Net Settlement Fund after re-distribution(s) and after payment of outstanding Notice and Administration Expenses, Taxes, and attorneys' fees and expenses, if any, shall be contributed to a non-sectarian, not-for-profit charitable organization serving the public interest. *See* Stipulation ¶ 30.

### 3. The Anticipated Attorneys' Fees and Expenses Are Reasonable

Consistent with the Notice, Lead Counsel intends to request attorneys' fees of 25% of the Settlement Fund and litigation expenses of no more than $75,000, which will include an application for reimbursement by the Lead Plaintiff pursuant to the PSLRA in the amount of $1,360.

A fee request of 25% is the "benchmark" within the Ninth Circuit, and is consistent with other settlements approved in the Ninth Circuit. *See Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1048 (9th Cir. 2002) (fee of 28% awarded)*; Deaver v. Compass Bank,* No. 13-cv-00222-JSC, 2015 WL 8526982, at *11, *15 (N.D. Cal. Dec. 11, 2015) (awarding 33.33% of $500,000 settlement fund); *Cheng Jiangchen v. Rentech, Inc.*, CV 17-1490-GW(FFMX), 2019 WL 5173771, at *7, *11 (C.D. Cal. Oct. 10, 2019) (awarding 33.33% of a $2,050,000 settlement fund); *Azar v. Blount Int'l, Inc.*, 3:16-CV-0483-SI, 2019 WL 7372658, at *10, *13, *16 (D. Or. Dec. 31, 2019) (awarding 25% of a $3,059,000

settlement fund).  The basis of Lead Counsel's fee and expense request is detailed in their

motion requesting fees and expenses.

### D.    Class Members Are Treated Equitably Relative to One Another

The Plan of Allocation, drafted with the assistance of Lead Plaintiff's damages

expert, is a fair, reasonable, and adequate method for allocating the proceeds of the

Settlement among eligible claimants and treats all Settlement Class Members equitably, as

required by Rule 23(e)(2)(D). Each Authorized Claimant, including Lead Plaintiff, will

receive a distribution pursuant to the Plan, and Lead Plaintiff will be subject to the same

formula for distribution of the Settlement as other Settlement Class Members. *See*

*Ciuffitelli v. Deloitte & Touche LLP*, No. 3:16-CV-00580-AC, 2019 WL 1441634, at *18

(D. Or. Mar. 19, 2019) ("[t]he Proposed Settlement does not provide preferential treatment

to Plaintiffs or segments of the class" where "the proposed Plan of Allocation compensates

all Class Members and Class Representatives equally in that they will receive a pro rata

distribution based [sic] of the Settlement Fund based on their net losses").

## III.    Certification of the Settlement Class

As part of the Settlement, Lead Plaintiff respectfully requests that the Court certify

the Settlement Class (as defined in ¶ 1(tt) of the Stipulation).

### A.   The Settlement Class Meets the Requirements of Rule 23(a)

#### 1.   Rule 23(a)(1):  Numerosity

Rule 23(a)(1) requires that a class be so numerous that joinder of all members is impracticable. In securities litigation, courts regularly find the numerosity requirement satisfied with respect to purchasers of nationally traded securities. *See Howell v. JBI, Inc*., 298 F.R.D. 649, 654-55 (D. Nev. 2014) ("in securities cases, when millions of shares are traded during the proposed class period, a court may infer that the numerosity requirement is satisfied"). Here, throughout the Class Period, Armstrong Flooring common stock traded actively on the New York Stock Exchange ("NYSE") under the ticker symbol "AFI." These shares were purchased by thousands of investors, making joinder impracticable.

#### 2.   Rule 23(a)(2):  Questions of Law or Fact Are Common

Rule 23(a)(2) requires the existence of "questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). The Ninth Circuit construes this requirement "permissively," and has stated that that "[a]ll questions of fact and law need not be common to satisfy the rule." *Hanlon v. Chrysler Corp*., 150 F.3d 1011, 1019 (9th Cir. 1998), *overruled on other grounds by Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338 (2011), *overruling on other grounds recognized by Castillo v. Bank of Am.*, 980 F.3d 723 (9th Cir. 2020)*. Securities fraud cases have long been found to satisfy the commonality requirement. *See Blackie v. Barrack*, 524 F.2d 891, 902 (9th Cir. 1975) ("The overwhelming weight of authority holds that repeated misrepresentations of the sort alleged here satisfy the

'common question' requirement."). In this case, the central questions of whether the alleged misstatements regarding the Go-To-Market Strategy and Armstrong Flooring's inventory were false and misleading, and whether Defendants acted with the requisite mental state, are the same for all class members.

### 3. Rule 23(a)(3): Lead Plaintiff's Claims Are Typical

Rule 23(a)(3) is satisfied where the claims of the proposed class representatives arise from the same course of conduct that gives rise to the claims of the other class members, and where the claims are based on the same legal theory. *In re Computer Memories Sec. Litig.*, 111 F.R.D. 675, 680 (N.D. Cal. 1986). Rule 23(a)(3) does not require plaintiffs to show that their claims are identical on every issue to those of the class, but merely that significant common questions exist. *In re Syncor ERISA Litig.*, 227 F.R.D. 338, 344 (C.D. Cal. 2005). "Differences in the amount of damages, the size or manner of purchase, type of purchase, and even the specific documents influencing the purchase will not render the claim atypical in most securities actions." *See Tsirekidze v. Syntax-Brillian Corp.*, No. CV-07-02204-PHX-FJM, 2009 WL 2151838, at *4 (D. Ariz. July 17, 2009) (citing *Weinberger v. Thornton*, 114 F.R.D. 599, 607 (S.D. Cal. 1986).

Here, Lead Plaintiff's claims are typical of those of the Settlement Class. Like other class members, Lead Plaintiff purchased the publicly traded common stock of Armstrong Flooring during the Class Period, and claims to have suffered damages.

### 4.     Rule 23(a)(4):  Lead Plaintiff Is an Adequate Representative

Rule 23(a)(4) is satisfied if "the representative Parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). "The proper resolution of this issue requires that two questions be addressed: (a) do the named plaintiffs and their counsel have any conflicts of interest with other class members, and (b) will the named plaintiffs and their counsel prosecute the action vigorously on behalf of the class?" *Mego*, 213 F.3d at 462 (citing *Hanlon*, 150 F.3d 15 1020) Here, Lead Plaintiff has and will continue to represent the interests of the Settlement Class fairly and adequately. There is no antagonism or conflict of interest between Lead Plaintiff and the proposed Settlement Class. Lead Counsel also has extensive experience and expertise in complex securities litigation and class action proceedings throughout the United States. Lead Counsel is well qualified and able to conduct the Action, and has ably and effectively represented Lead Plaintiff and the proposed Settlement Class throughout the Action.[4]

### B.     The Settlement Class Meets the Requirements of Rule 23(b)(3) – Predominance and Superiority

The predominance inquiry "tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 623 (1997). The predominance requirement is "readily met" in securities class actions. *Id.*

---

4     Accordingly, Lead Counsel satisfies the Class Counsel requirements of Rule 23(g) and has already been approved by the Court to represent the class pursuant to 15 U.S.C.§ 78u-4(a)(3)(B)(v). *See* ECF. No. 44.

at 625.  Here, common questions of law and fact predominate over individual questions because the alleged fraudulent statements and omissions affected all Settlement Class Members in the same manner (i.e., through public statements made to the market).

Moreover, class-wide reliance is established in this Action either through the application of *Affiliated Ute Citizens of Utah v. United States*, 406 U.S. 128 (1972), because the claims are predicated upon omissions of material fact which there was a duty to disclose, or, alternatively, based on the "fraud-on-the-market" presumption of reliance in *Basic v. Levinson*, 485 U.S. 224, 241-42 (1988). Applying the *Affiliated Ute* or *Basic* presumptions dispenses with the requirement that each Settlement Class Member prove individual reliance on the alleged misstatements and/or omissions. *See id*. Here, where Armstrong Flooring's common stock is traded on the NYSE, a national securities exchange, and was followed by numerous securities analysts and traded at regular substantial volumes, there is sufficient evidence of market efficiency. *See* Complaint ¶ 161.

Further, resolution of this case through a class action is far superior to litigating (and settling) thousands of individual cases where the expense for a single investor would likely exceed its losses. *See  McPhail v. First Command Fin. Planning, Inc.,* 247 F.R.D. 598, 615 (S.D. Cal. 2007) ("class action is the superior method for fair and efficient adjudication" because individual suits would "'clog [ ] the federal courts with innumerable individual suits litigating the same issues repeatedly,'") (alteration in original) (citing *Dukes v. Wal-Mart, Inc.*, 474 F.3d 1214 (9th Cir. 2007).

## **CONCLUSION**

For all the foregoing reasons, Lead Plaintiff respectfully requests that the Court: (i) grant final approval of the Settlement; (ii) certify the Settlement Class, for settlement purposes; and (iii) enter the Judgment in the form attached as Exhibit B to the Stipulation.

Dated:  June 14, 2021

Respectfully submitted,

THE WAGNER FIRM

/s/Avi Wagner
Avi Wagner (Cal Bar. No. 226688)
1925 Century Park East, Suite 2100
Los Angeles, CA 90067
Telephone: 310-491-7949
Facsimile: 310-694-3967
Email:  Avi@thewagnerfirm.com

BERNSTEIN LIEBHARD LLP
Michael S. Bigin (admitted *pro hac vice*)
Laurence J. Hasson (admitted *pro hac vice*)
10 East 40th Street
New York, NY 10016
Telephone: (212) 779-1414
Facsimile: (212) 779-3218
Email: bigin@bernlieb.com
lhasson@bernlieb.com


*Counsel for Lead Plaintiff Randy Marker and Lead
Counsel for Proposed Settlement Class*

## <u>PROOF OF SERVICE BY ELECTRONIC POSTING</u>

I, the undersigned say:

I am not a party to the above case, and am over eighteen years old.  On June 14, 2021, I served true and correct copies of the foregoing document, by posting the document electronically to the ECF website of the United States District Court for the Central District of California, for receipt electronically by the parties listed on the Court's Service List.

I affirm under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.  Executed on June 14, 2021, at Los Angeles, California.

<u>*s/ Avi Wagner*</u>
Avi Wagner